Bland, Chancellor.
This case standing ready for hearing and being submitted, the proceedings were read and considered. Whereupon it is Decreed, that the auditor take an account of the real and personal estate of the late Philip Hammond which came to the hands of the said Elizabeth Hammond, Rezin Hammond, Thomas Hammond, and Charles Hammond, as executors or otherwise of the late Philip Hammond; and of the manner in which the same may have been administered or distributed. And also an account of the debts due and owing from the said late Philip Hammond at the time of his death which are yet remaining unpaid. And that the auditor state said accounts from the pleadings and proofs now in the case, and from such other evidence as the parties may have taken before him, or have taken before any justice of the peace, on giving three days notice as usual, and lay before him.
*310 After which the case was brought before the court to have the creditors of the testator called in, for the purpose of having the assets properly administered, and of making a final settlement, and distribution of the estate.
11th September, 1828.
Bland, Chancellor.—
Ordered, that the creditors of Philip Hammond, late of Anne Arundel county, deceased, file the vouchers of their claims in the chancery office on or before the 17th day of January next., And that' a copy of this order be inserted in some newspaper or newspapers once in each of three successive weeks before the 17th day of' October next.
The object of this suit being to adjust the rights and liabilities-of the respective parties, as claimants under the will of Philip Hammond, deceased, it was obviously liable to abate by the death of any one of them, whose interest did not survive or fall into the common stock for the benefit of any one or all of the others; although as regarded the creditors. of' the deceased, it was to .be treated as a mere creditor’s suit. Therefore, on the death of the plaintiff Philip Hammond, the surviving plaintiffs filed a supplemental bill of revivor against his widow Juliana Hammond, and his infant children Philip Hammond, Marianna Hammond, Harriet Hammond, Edward Hammond, and Cecelia Hammond; who all answered and admitted the facts as stated in the bill.
The auditor reported, that, in consequence of the imperfect state of the accounts and vouchers of the defendant Rezin, who was one of the executors, he had taken unusual pains to prepare his account ; that he, the auditor, had made a statement, to make a report' of which to the court, the affidavit of Rezin-was necessary; that several days had been appointed for him to appear and verify the statement; but he had failed to do so; from which, and his conduct the auditor alleged, that he was convinced he should be unable to report any account unless Rezin should be compelled to attend.
8th Jiugust, 1829.
Bland, Chancellor.
It having been made the duty of the auditor to state such accounts as the Chancellor may direct; and as he has, for that purpose, been clothed with authority to administer an oath to all witnesses' and persons proper to be examined upon such accounts; (a) it necessarily follows, that, here as in England on a reference to a master, where an exe *311 üütor, as in this instance, or other party has been decreed or ordered to account, he may be called before the auditor and examined on oath upon interrogatories in relation to such account. The answers of a party to interrogatories being, in such case, considered in the nature of an answer to the bill, may, in the same way, be excepted to for insufficiency. And such party may be compelled by attachment, if necessary, to attend before the auditor, and to answer as required. (b)
Ordered, that the said Bezin Hammond forthwith attend before the auditor, and give such information and testimony, or make such affidavit as may be deemed pertinent and necessary to enable the auditor to state such an account as he has been directed to state, or the nature of the case may require; provided, that a copy of this order be served on the said Bezin Hammond.
The auditor on the 25th of August, 1829, filed his report of the accounts which' he had stated in obedience to the decree of the 27th of August, 1828, in which he set forth, that the overpayments of Charles, Thomas, and Elizabeth, amounted together to $2,047 29; and that there was due from the defendant Rezin $555 19; that the outstanding claims against the testators, as then shewn, amounted to $3,086 29; that Charles and Harriet claimed to have their legacies charged against the general fund, which, if allowed, would leave the sum of $5,908 39 to be provided for; that, assuming this as the amount to be raised from the estate, he had stated the amount of contribution with which the respective devisees were chargeable; that there was a debt due to the estate amounting to $605 with interest and costs, which had not then been collected; and of the parcel of land devised to be sold for the payment of debts, there remained one hundred and fifteen acres yet to be disposed of; neither of which items had been included in his estimate of the estate.
To this report of the auditor the defendant Rezin excepted; because Charles and Harriet had been allowed their legacies out of the general fund to the prejudice of the other devisees.
The parties Thomas, Charles, Rezin, and Elizabeth, as executors of the late Philip Hammond, by their petition stated, that a judgment had been recovered against them, and their sureties, on their bond, as executors, for the use of JYicholas G. Ridgely for *312 the sum of $471 36, with interest and costs, it being a debt due from their testator; and that Ridgely had sued out a fieri facias against them. Whereupon they prayed that he might be restrained from proceeding at law, &c.
On the 29th of September, 1829, an-injunction was granted as. prayed, \ . •
The plaintiffs, with the leave .of the court, on the 28th of. October, 1829, so amended their bill as to make Jinn Hammond, the wife, and Matthias. Hammond, t Denton Hammond, Susan Hammond, and Jinn Hammond, the infant children of the defendant Rezin; and Harriet Hammond, the wife, with Henry Hammond, Thomas Hammond, and Margaret Hammond, the' infant children' of the plaintiff J.ohn, parties to this suit, on the ground of their having an interest in the .estate of the testator under his will. The adult defendants put in their answers, and the infant defendants answering by their guardian ad litem to this amended bill, admit- . ted all the facts as set forth by the plaintiffs.
On the 7th of November, 1829, the parties filed the following agreement: ‘Whereas there is a cause now depending in the Court of Chancery, for the settlement of the estate of Philip Hammond, deceased; and it is ascertained, that the estate specially devised by said Hammond, for payment of debts, is insufficient, for that purpose; and whereas there'.is some doubt whether the contribution provided for by the will, should be made by the devisees of said Hammond, equally, or in proportion to the value of the property severally devised to them. It is, therefore,, agreed, in order to save expense, that' said, doubt shall be submitted to the Chancellor. And in case the Chancellor should determine that the said contribution shall be borne by the said property in pr'opor-' tion to its value, then the property devised to Thomas Hammond, shall be estimated to be worth $10,000; the property devised to Charles Hammond, shall be estimated to be worth $10,000; the property devised to Henry Hammond, shall be estimated to be worth $10,000; the real property devised to John Hammond, shall be estimated to be worth $2,000; the property devised to, George: W. Hammond, shall be estimated to be worth $10,000; the property devised to Rezin Hammond, shall be estimated to be worth $10,000; the property devised to Matilda Hammond, shall be estimated to be worth $10,000; the property devised to Harriet Ham-mond, shall be estimated to be worth.$10,000; the^property devised to Philip Hammond, Jr. shall be estimated to be worth *313 $10,000; and the property devised to Philip H. Mewburn, shall be estimated to be worth $10,000. It is also agreed, that no advantage shall be taken of any alleged defect in the bill, in not charging, that Charles and Harriet Hammond, are entitled to have their pecuniary legacies raised by contribution.’
22d December, 1829.
Bland, Chancellor.
This case standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
It has been urged, that the sums of money given to Charles and Harriet are merely pecuniary legacies, payable only out of the surplus after debts and specific legacies. It is alleged in the bill and admitted, that the personal estate of the testator is inadequate to pay his debts; hence it follows, that those sums of money given to Charles and Harriet, cannot be paid, unless, like the devises and bequests of the original will, they are to be considered as specific legacies, only chargeable with a proportional contribution for the payment of the debts, which the funds appropriated for that purpose by the testator, was insufficient to pay.
In questions of this kind, it is declared by all the authorities, that the intention of the testator is always to prevail, unless it contravenes some established rule of law. It is evident, from the general character of the testamentary instrument under consideration, that the late Philip Hammond, by his will, had designed to dispose of his whole estate, of every description, in a very especial manner. His wife, each one of his children, and his grandson, are named and provided for, by a donation of what he manifestly had estimated as a due proportion of his properly. And each share is given, in a manner, so carefully guarded, as clearly to shew, that the whole subject had been pondered over and well considered. Whether each one of the dividends, so made, was, in fact, of equal value is of no importance, as regards the present question. After the testator had thus established the proportions, in which the first and chosen objects of his bounty should take, he then gives to five of his slaves their freedom, with small pieces of property for their support during their lives; and then, in conclusion, he provides for his creditors: but, in doing so, he cautiously guards against disturbing the equilibrium he had established among his devisees, by expressly declaring, that in case the fund, so set apart for his creditors, should not be sufficient, £that the property devised to my sons and daughters, and to my grandson, shall contribute in equal proportion, to the discharge of my debts.’
*314 From this clause, and the general tenor of the win, there can be no doubt, that every devise, and every bequest, including the emancipation of his slaves, for the gift of freedom to a slave, is a most precious specific legacy, are all of them specific legacies which can, in no manner, be made abateable or reducible by any deficiency of the testator’s personal estate; but, in case of any deficiency of that which he has designated as the creditors’ fund, the several devisees, charged with contribution, might be compelled to contribute toward the satisfaction of the testator’s debts to the whole amount of the property given to them, before the donations to the wife and freed slaves, who are hot so charged, could be at all molested. Indeed it seems to be admitted, that the intention of the will, to this effect, is so unequivocally clear as not to leave room for the smallest doubt upon the subject.
But the testator, by his codicil, informs us, that he himself had broken in upon the proportionate distribution which he had previously made with so much precisión, and which he had manifested so much solicitude to preserve, by parting with some of the negroes he had given to-his son Charles, and his daughter Harriet, and then says, ‘ I do therefore, in lieu of the said devises, give and bequeath to my said son Charles the sum of $700, and to my said daughter Harriet the sum of $300, respectively.’
From which it clearly appears to. have been the intention of the testator to restore, in all respects, the proportions which had. been thus disturbed; and that thé money, so given, should .take 'the place, and stand in lieu of the negroes in those shares from which they had been withdrawn; and that he intended to declare, that-as the negroes had been given as specific legacies, subject only-to contributions in the event and manner designated, so those sums of money should, in like manner, be deemed and taken as specific legacies, attended with the.like benefits, and subject to the same extent of contingency and incumbrance, and no more..
I-am therefore of opinion, that these sums of money, given to. Charles and Harrietshotlld have been paid by the- executors in ■the first instance, as specific legacies, out of the fund set apart by the testator for. the payment of his debts, as, in fact, not forming any part of it; since it cannot be inferred from any thing said by him, that they were to be paid from any other portion of his estate. And that then each division, charged with contribution, must contribute, as prescribed by the will, to the payment of such debts as remain unpaid from that fund, after those two legacies have been *315 deducted from it. In so far as the executors, into whose hands a sufficiency of assets came to satisfy those two legacies failed to do so, they are chargeable with a devastavit; and consequently, they alone are liable for the whole amount, principal and interest; and the legatees cannot be allowed to take the place of creditors and have the amount raised by contribution from the devisees.
It is, in general, true, that pecuniary legacies bear interest from the end of one year after letters testamentary have been granted, allowing that time for the executors to collect the effects of the deceased, (c) In this instance, there appears to be an additional reason why interest should be allowed from that time on these legacies; and that is, their having been expressly declared to be in lieu of certain specific legacies which, if they had not been withdrawn, should have been delivered immediately, and could have been at once made profitable to the legatees; thus indicating it to have been the intention of the testator himself, that interest should be allowed as a substitute for the profits of the slaves in lieu of which the money was given; since it is in general, true, that where one legacy is substituted for another, the substitute will be attended with the same incidents as the original, (d) I am therefore of opinion that interest on these sums has been correctly charged.
It is alleged, that the whole fund, set apart by the testator for the payment of his debts, will not be sufficient for that purpose: and it is upon the truth of this fact, that the plaintiffs claim to have the assets accounted for by the executors; to have the amount of the unsatisfied claims against the deceased ascertained; and to have the other devisees compelled to contribute to the payment of such debts, according to the terms of the will. Although all the executors, and the legatees Charles and Harriet, as such, with all the devisees who have been charged with contribution by the will, have been made parties to this bill; yet it is not alleged, that the suit has been instituted generally for the benefit of those interested in the correct distribution of the real or personal assets of the testator; or for the benefit of those creditors and others who' may have an interest in the fund appropriated by the testator for the payment of his debts. The bill contains no distinct and express allegation, that the plaintiffs had instituted this suit, as *316 well for the benefit of creditors as of themselves; and yet the case has been hitherto so conducted as if it were by positive allegation and in its nature a creditor’s suit.
The defendants have urged, that there is nothing in the pleadings, as amended and aided by the agreement filed on the 7th of November last, which can warrant these plaintiffs in assuming the position of creditors; or which can give them a right to have their complaint considered as a creditor’s suit, under which they could, as has been done, give notice, in the usual manner, to the creditors of Philip Hammond, deceased, to come in and participate in the distribution of this fund. To answer this objection, and for the purpose of obtaining a clear view of the whole subject, I shall take this occasion to consider the nature of a creditor’s suit more at large, than the questions now presented, may seem to require.
The estate of a deceased person must be first applied to the payment of his debts, leaving the residue only to go, as directed by his will, or as the law has provided in cases of intestacy. But as the person who takes out administration of his estate, in most cases, cannot know who are his creditors, and may not know who are his next of kin; and the administration of his estate may be exposed to great delay and embarrassment; the Court of Chancery has long exercised a most wholesome jurisdiction, in such cases, for the prevention of delay and embarrassment; and for the assistance and protection of the representatives of the deceased, by assuming the administration of his estate, (e) With these views ; and, for the purpose of securing the fund, and of doing equal justice to all, this court will take upon itself, the general administration of the assets of a deceased debtor, either at the instance of one or more of his creditors, (f) or legatees, (g) or next of kin; (h) or on a bill filed by an executor; (i) or a trustee of the testator’s estate, for direction or indemnity in the payment of debts, (j) And it will, in like manner, in some cases, assume the distribution of the estate *317 and effects of a living insolvent debtor among bis creditors, (k) The foundation upon which this jurisdiction seems to rest, is the principle, that equality is equity; and that its proper application requires the interposition of the peculiar powers of a Court of Chancery, (l) as well for the benefit of creditors, as for the protection of the representatives of the deceased debtor; (m) either because the assets of the deceased are, or may, if not placed in safety and correctly administered, be insufficient to satisfy all: or because it is necessary for the legatees, or secondary claimants, who can obtain nothing until the creditors, or primary claimants or incumbrances have been first called in and satisfied; (n) or because the debtor, though alive, being insolvent, has no more than a certain amount to be distributed rateably among his creditors; or has by a deed of composition specially appropriated all his estate and effects for the satisfaction of all his creditors, who all come in accordingly; (o) which property is likely to be misapplied, or wasted by the debtor or holder of it; or that the parties to the deed of composition are too numerous to be made parties to such suit, (p) The sole or principal object of bills in equity for any of these purposes being the satisfaction of creditors, they are emphatically called creditors’ suits; and are, for the most part, governed by rules common to them all. (q)
By the common law, lands in the hands of the heir, were liable to1 bond creditors only, where the' heir was specially bound; and even to that extent, as they had no lien upon the real estate descended, the heir was only personally liable, in respect of and to the value of the real assets descended; and, therefore, a bond creditor could make no claim against such real estate in the hands of a bona fide purchaser for a valuable consideration without notice, (r) But even a bond creditor could not recover his debt of the heir, if he *318 had aliened the land before an action was brought, or of a devisee of his debtor at any time, (s) To prevent this wrong and injury to creditors, it was declared by an English statute, passed in the year 1691, that the heir should be liable to the value of the land descended to, and aliened by him; and that all devises should be void, as against creditors ; who should have the same right to sustain an action of debt against such devisee, that they could have had against the heir, (t) But as the relief, given by this statute, is confined to those cases only where the creditor may recover by action of debt; the common law, in other respects, remains unaltered ; so that no damages can be recovered of a devisee of the land, for a breach of covenant made by the devisor, (u) This English statute has been expressly recognized as one of the legislative enactments of our code; (w) and, consequently, where a creditor’s suit is brought to charge any lands so devised, the heir as well as the devisee, must be made a party; because it is the statute alone which makes the land assets in the hands of the devisee; and that requiring the heir.to be made a defendant at common law, the bill in this court must follow the remedy therein prescribed. (x) But if the bill alleges, that the testator left no heirs. *319 or none who are citizens or residents of this state, then, following the provisions of the act of assembly, as to suits at common *320 law, (y) the creditor may, on stating the fact, proceed against the devisee alone, with the executor or administrator of the deceased, if there he any such personal representative.
But the statute of 1691 is confined to cases, where a debtor devises his real estate away from his creditors, and leaves them to chance to obtain satisfaction of their debts, enriching third persons at their expense* And therefore, the devising of an estate for the payment of debts takes the case out of the statute; and leaves the debt to stand as it would have done before, so that the creditor can come upon the real estate only in such manner as the will directs. The mere inconvenience of the mode prescribed by the testator for the payment of his debts will not bring the devise within the statute ; provided the fund be ultimately sufficient; and the gift of the estate for the payment of debts has been made in an effectual and practicable manner, so as to answer the purpose. (z) In all such cases the real estate thus made liable, is held to have been thereby converted from legal, into equitable assets, because of its being so made assets in equity where they would not be so at law; and also, because of there being no mode of administering such assets but in a Court of Chancery; (a) where, upon principles of equity, it is held, that specialty creditors can only be allowed to *321 come in, pari passu, with simple contract creditors; and moreover, that notwithstanding the infancy of the heir or devisees, the lands may, without allowing the parol to demur, he immediately sold for the benefit of all the creditors, (b) This construction and qualification of this English statute has been virtually affirmed by the act of assembly which authorizes the Chancellor, where lands are devised to be sold for the payment of debts or other purposes, and there is no person appointed to execute the trust; or the person appointed neglects or refuses to do so, to appoint a trustee, to order a sale, and to apply the proceeds accordingly, (c) And although the application under that act of assembly is always made ex parte, yet, if the object be to pay debts, it is treated, in all the subsequent proceedings, as a creditor’s suit; such as ordering notice to be given to the creditors of the testator to bring in their claims and the like, (d)
*322 In England, where a debt is secured by specialty, by which the debtor binds himself and his heirs for the payment of the debt, *323 such bond creditor may file a bill in behalf of himself and other bond creditors against the heir and devisee with the executor or administrator of the deceased, to obtain satisfaction of their claims *324 from the personalty, if sufficient to pay all, or by a sale of the realty, if the personal estate be insufficient, (e) And even if the bill be filed by one bond creditor only for the satisfaction of his own particular debt, the constant course, in England, is to direct an account of all the bond debts of the testator or intestate, with liberty to come in for satisfaction ; without which no decree for a sale can be, for as they have all a lien against the heir, who is bound as well as the ancestor, they are all entitled to receive satisfaction ; and might otherwise sue at law notwithstanding the decree for a sale; but it would be very mischievous should the court suffer another bond creditor, who has not obtained judgment, after a decree for a sale, to proceed against the estate, as the effect of a sale could not be had during the continuance of the levari on the judgment which must be removed in order to a sale, (f) But as bond creditors have an election to sue and obtain satisfaction from the executor, or the heir, at common law, it is not often, in England, that they proceed in equity; unless it be to have a discovery and account of the rents and profits of the realty, or to obtain some other advantage which they cannot have at law. (g)
*325 By a British statute, passed in the year 1732, and which appears to have been introduced and practised under here so early as the year 1740, it is expressly declared, that the real estate of a debtor shall be assets for the satisfaction of all just debts, duties or demands of what nature or kind soever, in like manner as real estates are by the law of England, liable to the satisfaction of debts due by bond or other specialty, and shall be subject to the like remedies for seizing, extending and selling the same, and in like manner as personal estate, (h) From which, it would seem, to be impossible to avoid coming to the conclusion, which has been so perfectly well settled in regard to bond creditors, that a suit, at common law, under the positive provisions of this statute, might be sustained by a simple contract creditor, as well as by a bond creditor, against the heir, grounded merely on the fact of real assets having descended to him. Yet it appears to have been always held, that this statute should not be so construed as to authorize such a suit on that foundation alone by a simple contract creditor; and it has been adjudged accordingly, that a simple contract creditor cannot sustain an action of assumpsit against the heir merely in respect of real assets descended; although he might maintain such an action if the heir had, in respect of such assets, made an expresa promise to pay. (i) The reason of a construction apparently in such direct opposition to the express letter of this statute, requires some-explanation.
At common law, lands were liable in the hands of the heir for the debts of his ancestor, due by specialty, in which the heir was bound; and they were also made liable by several English statutes giving an extent or elegit, which had been adopted here, (j) before the introduction of the statute of 1732, making lands in the colonies liable to be taken in execution for debt. In England a bond creditor, after the death of his debtor, might sue the executor, or the heir separately at common law; or he might file a bill in equity against both, in which suit all the specialty creditors of the deceased might come in and participate. But although the common law, after lands were made liable to be taken in execution for debt *326 by extent, statute staple, and elegit, seems to have relaxed in favour of the creditor so far as to let him in indifferently on the real or personal fund at his election, it provided no means of determining how the burthen should be borne as between the heir or terre-tenant and the personal representative of the debtor. Here, therefore, equity stept in; and considering the common law remedy against the heir, and the statute provisions against the land as instituted only for the sake of preventing the creditor from sustaining a total loss of his debt; and that, therefore, the ancient common law notion, that the land should be considered only as a dernier security for a debt to which the heir became subject on the contract, in respect of real assets, if the personal assets failed, furnished the true principle on which an adjustment ought to be made, between the heir and executor, founded an equity upon that common law notion; and thereupon substituted the heir in the place of the creditor, and fixed the debt on the' personal assets, if sufficient, making, the personal,, as between the heir and executor, exonerate the real estate. In which respect the Court of Chancery, acting in conformity with its principles, that in all cases, where there is a measuring cast between an executor and an heir at law, held,, that the latter should have the preference. Therefore, although a creditor by specialty may, at law, sue either the heir or executor, and shall have the benefit of his- security against the one or the other, at his election; yet if the heir or devisee be charged in debt, where the executor has assets, the former may ultimately compel the latter, in equity,, to pay the debt; unless he can shew some special exemption by the act of his testator upon ‘ which he ought to be discharged, (k)
After the adoption here of the statute of 1732, subjecting lands to the payment of debts, the phraseology of the writ of fieri facias was altered so as to authorize the levying of it upon the goods and chattels, lands and tenements, of the debtor; and the statute was thus directly put into operation against living debtors according to its very letter. But it was soon perceived, that a statute, so extensive in its bearing, could not be, in any similar way, literally applied to the estates of deceased debtors in the hands of their heirs, without creating much confusion in the administration of such estates; and without putting it in the power of each sim *327 pie contract creditor to have the estate collusively seized and sold, in fraudulent exclusion of other creditors ; or so as to operate injuriously upon the interests of others, and particularly upon the heir by compelling him. to seek reimbursement from the personal estate, which was the primary fund for the payment of debts. And therefore, those principles of equity by which the rights of bond creditors had been so far modified and controlled as, in many cases, to do equal justice to all creditors; and so as, at once, to the full value of the personalty, to protect the realty in the hands of the heir, were so followed out, in the construction of this statute, as not to permit a simple contract creditor to maintain an action at ■common law, at all, against the heir merely in respect of the real assets descended; but to compel him to go immediately into .a court of equity against the heir, together with the personal representative of his deceased debtor, so as to enable the heir to protect himself, without any circuity of judicial proceeding; and to save the realty, by having the personal estate first applied to the .satisfaction of the debts; and to do justice to all the creditors by-allowing them to come in according to their respective priorities; or for their due proportions. The adoption of these principles, and the giving of this construction to this statute, necessarily threw the administration of all real assets into the Court of Chancery ; and gave a new and very enlarged scope to a creditor’s suit.
Such must have been the course of proceeding, in all cases, under this statute, after the death of a debtor, as well where his heir was of full age, as in those cases where he was a minor; (l) for, if it were not so, then a simple contract creditor, as he was not allowed to sue at law, could,.before the year 1818, have had no recourse against the real assets in the hands of adult heirs in any way whatever; since prior to that time, the only act of assembly in relation to the matter, being merely intended to prevent delay in proceeding against infants, (m) this British statute which had made such real estate assets for the payment of debts, would have been, thus far, virtually nullified. (n) This matter has, how *328 ever, been put to rest by a positive legislative enactment, which declares, that the previous laws in relation to the sale of real *329 estates held by infant heirs or devisees shall be extended to defendants of fall age. (o)
*330 Formerly, in equity as well as at law, where a suit was brought against an infant heir, or against coparceners, any one of whom *331 ■was an infant, in respect of the real estate descended, the parol demurred; or, in other words, the further prosecution of the suit *332 was stayed, until the infant attained full age ; (p) which privilege had been, by our law, extended to all infants who claimed by pur *333 chase in like manner as to those who claimed by descent- (q) Hence, as it would seem, the guardian of an infant could not, at the *334 instance, and for the benefit of a bond creditor of his ward’s ancestor, be compelled in equity to account for the rents and pro *335 fits of the real estate descended; (r) probably, because those rents and profits were allowed to the heir as a support during his minority ; and as a means of preparing for his defence when he should attain his full age; or, because, upon feudal principles they were to be otherwise disposed of. (s) And therefore, after lands here had been made liable to the payment of debts, by the statute of 1732, no decree for the sale of it could be obtained for that purpose *336 against the heirs or devisees of the debtor so long as any one of them remained under age; until, by an act of assembly, the court was authorized, where lands possessed by an infant were chargeable with the payment of money, and therefore, liable to a decree for sale, to pass such a decree- with the consent of the guardian of the infant heir; (t) which delay and consent were in some particular cases dispensed with by special legislative enactments, (u)
After which it was, by a general law, declared, that in case an action at common law should be brought, in which the title to real estate was involved, which action should abate by the death of either plaintiff or defendant, and such title should' descend or be devised to an infant, the action should not be tried during the minority of such infant, unless his guardian or next friend should satisfy the court, that it would be for his benefit to have it tried, (w) And it was further provided, that, in case there should not be personal estate sufficient to pay the debts of the deceased, the heir or devisee, being of full age, or upon his arrival at the age of twenty-one, should, to the value of the land descended, pursue the same rules, in payment of the debts of the deceased, as were prescribed by law for executors or administrators, (x) Thus, in effect, constituting the adult heir or devisee of the deceased an administrator of his real assets.
But still, as in actions at law by bond creditors against infant heirs or devisees, as original defendants, the parol must demur; and as creditors by simple contract, or where the heir of the debtor was not bound, could only sue in equity to obtain satisfaction -from the real estate of their deceased debtor, where, as at law, the parol was allowed to demur in favour of infant heirs or devisees, to the great hindrance and delay of creditors, it was therefore, declared, that if any person should die without leaving personal estate sufficient to discharge his debts, and should leave real estate to descend, or which he had devised to a minor, the Chancellor might, upon the application of a creditor of the deceased, if he should deem it proper, after the minor had been summoned, and appeared by guardian, and the parties had been heard, and the justice of the claim had been fully established, order such real estate to be sold for the payment of the debts due by the deceased. (y)
*337 But, although, according to all general principles, every part of the real estate of a debtor in the hands of his heir should be held applicable to the payment of his debts ; yet it seems to have been unsettled, at common law, how far estates in remainder or reversion were to be considered as assets present or future. And formerly here, as in England, a notion prevailed, that such estates could not be sold in the first instance, (z) But in equity such *338 estates, whether dependent on a term for years, an estate for life, or an estate tail, are deemed to be of some value; and therefore, *339 ought to be sold immediately for the benefit of creditors, without waiting for the particular estate to fall in; and such is now the *340 practice here as well as in England; (a) and in affirmance of such a course of proceeding, the like power has been given to the Court *341 of Chancery to sell such estates in remainder or reversion belonging to minors as estates in possession. (b)
*342 Hence it appears, that by the operation of these last mentioned acts of assembly, and which, it is clear, from a consideration of *343 the then existing law, could have had, and were always understood to have had no other object, that the privilege formerly *344 granted to infants, of allowing the parol to demur until they attained their full age, has been totally abolished as regards creditors’ suits in equity; (c) since the Chancellor has been thereby directed, on the indebtedness of the deceased ancestor or devisor being established, and the insufficiency of his personalty being made to appear, to cause his real estate to be sold and conveyed by a trustee to the purchaser; (d) notwithstanding the minority of the heirs or devisees, (e) And consequently, the pretext, that of allowing the parol to demur, for depriving the creditors of the rents and profits of their deceased debtor’s real estate in favour of his infant heirs or devisees, having been thus abrogated, an account of such rents and profits may now be called for from the infant as well as from the adult heirs and devisees of a deceased debtor; (f) upon the same ground, that his executor or administrator may be made to account for the increase and profits of his personal estate, (g) So that in all cases, where it appears that the realty must be responsible, a receiver may be put upon it, where necessary, for the purpose of taking care of its rents and profits for the benefit of the creditors. (h)
To enable a creditor to sue on behalf of himself and all others who stand in the same relation with him to the subject of the suit, it must appear, that the relief sought by him is, in its nature, beneficial to all those whom he undertakes to represent; (i) and that *345 the object of the bill is not merely to establish any existing priorities among them as creditors, (j) A mortgagee or a vendor holding an equitable lien, claiming merely as such, has no common interest with the creditors at large; and therefore, cannot be allowed to represent them by suing on their behalf, and having them called in to participate in a suit, the sole object of which is to obtain the benefit of such a lien, by which the whole subject in controversy is claimed, and may be entirely borne away. (k) As where the plaintiff alleged, that he was the vendor of a tract of land, for which a part of the purchase money was still due, which land had descended to the defendants as heirs of the vendee; and that the personal estate of the deceased purchaser was insufficient to pay his debts. The truth of all which was admitted; and the administrator by his answer prayed, that the balance of the proceeds of sale, after paying the plaintiffs, might be put into his hands to be applied to the payment of the debts of the deceased. But this prayer of the administrator was rejected; upon the ground, that no sufficient foundation had been laid to authorize the court to treat the case as a creditor’s suit, and to assume the administration of the assets of the deceased for the general benefit of his creditors. (l)
But, in so far as a mortgagee or the holder of a vendor’s lien has a claim beyond the extent of such lien; because of the deficiency of the premises to pay the debt; or because of some other claim, in addition to such debt, which there is not a sufficiency of personal estate to satisfy, he may, in respect of such claim, sustain a creditor’s suit by thus blending two distinct causes of suit, in only one of which the other creditors have a common interest. As where a vendor, in addition to a balance of the purchase money, set forth a large claim as due to him on another account, to pay which he alleged, that the personal estate of the deceased was insufficient; the case was treated as a creditor’s suit; because, as regarded such additional claim the plaintiff had an interest in common with the other creditors who he undertook to represent; and for whose general benefit it was necessary that the court *346 should assume the administration of all the assets of the deceased debtor, (m)
And there are likewise instances in which a creditor’s suit may be engrafted upon another suit; which, in its origin and object, had no relation whatever to a case of debtor and creditor; or in which the only object was to enforce a lien, such as a mortgage or vendor’s lien, for the- payment of a single debt. As where a mortgagee had filed a bill against the heirs of a mortgagor to obtain a sale of the mortgaged realty for the payment of his debt; or where a bill had been filed to obtain a partition of an intestate debtor’s real estate; or where the real estate of a deceased debtor had been, or was about to be sold under the special provisions of an act of assembly; (n) or where in any such case, a share of the proceeds of sale was about to be awarded and paid to parties as heirs or devisees of a deceased debtor, (o) any creditor of the deceased may come in, by petition, for himself and on behalf of the other creditors, without calling in his executor or administrator as an additional party to such pending suit, and have the surplus, or the whole proceeds of sale; or the share to which the deceased debtor may be entitled; and which then remains subject to the control of the court, applied in satisfaction of his debts; upon which all the proceedings are taken together as forming one creditor’s suit, as to the whole, or the particular share, and are so treated accordingly through all its subsequent stages. (p) The object of the secondary proceeding, in such instances, being to intercept the assets, and prevent their misapplication is, in effect, a prayer for relief against the proceedings in the original suit; and is a kind of engraftment of a scion of a different species upon a then growing stock, (q)
*347 As to who may or must be made parties to a creditor’s suit, the general rule is, that all persons having an interest in the object of the suit, ought to be made parties. But as this rule results from a consideration of the advantage which all persons must have in the entire settlement of the matter in litigation, it is founded on convenience; and is therefore made to yield in cases of necessity, or where it would be attended with any inconvenience which may be safely avoided; upon the ground of their being a common interest among creditors, which any one of them may sufficiently represent; and to avoid the great inconvenience of making all of them parties, any one has been allowed to file a bill for himself, and in behalf of all others of his co-creditors. But, as regards the defendants to a creditor’s suit, the general rule would lead, in administering the assets of a deceased person, to taking notice of his credits, and following his estate beyond his personal representatives; and, consequently, to the bringing forward of his debtors; yet the practice of the court has prescribed bounds to the inquiry; and accordingly the rule is to stop short at the personal representatives of the deceased, unless the justice due to the plaintiffs, or the peculiar circumstances of the case, should require others to be called in. (r)
The personal estate being the primary and natural fund for the payment of debts, must be first resorted to, even for the satisfaction of debts due to the state, as well as to individuals, so far as it remains and can be found, (s) And if that estate be insufficient, there can, with propriety, be no other person than the executor or administrator of the deceased, made defendant to a creditor’s suit. But if the bill alleges, or it can be shewn, that the deceased debtor left no personal estate, or that it had been exhausted or wasted, or by any means become insufficient for the payment of the debts of the deceased; and that he left real estate, then all the heirs and *348 devisees must be made parties to enable the creditors to obtain satisfaction out of such real assets, (t) Owing, however, to our law of partible inheritances, much inconvenience arises, in some cases, from the rule, that all the heirs and devisees must be made parties; which the legislature has endeavoured to remove, by requiring the heir, at common law only, to be summoned; and allowing an order of publication against the rest, (u) But although it is, in general, necessary to have the executor or administrator before the court; either as a plaintiff, asking direction and indemnity, or as a suing creditor; (w) or as a defendant, to have an account of the personal estate, that it may be first applied as far as it will go; yet if the debtor left no personal estate whatever, and that fact plainly appears in the case; or the personal estate left by him, was of so little value, that no one had taken out letters of administration ; (x) which fact of there having been no letters of administration may be sufficiently shewn by a certificate of the register of wills of the county in which the debtor died; (y) or if the executor of the deceased debtor be dead and insolvent, a creditor’s suit may be sustained against the heirs and devisees of the deceased debtor alone, without making his personal representatives defendants, (z)
If the deceased debtor at the time of his death, was a partner with others, then, upon the allegation of that fact; and because of his assets having been so, during his life-time, mixed up with the property of others, his surviving partners, upon whom the whole had devolved, must be also made parties, in order, that the plaintiffs may have an account of the personal estate entire; and so obtain, from the surviving partners, that which properly forms a part of the assets of the deceased, (a) Where the bill charges, that by collusion between the executor or administrator of the deceased, and some third person the assets have been misapplied or wasted, such third person will be held liable; and, therefore, should be *349 made a party, in order to obtain a decree against him; (b) so too, where the executor is insolvent and has not the means to sue, or will not act, a creditor’s suit may be brought against him and other persons accountable to the estate, (c) And where, after the death of a debtor, his personal estate had passed into the hands of his executor or administrator, who died without accounting for such assets, the executor or administrator of the deceased executor or administrator becoming thereby, as it were, a representative of the first deceased debtor, in respect of the assets which had thus come to the hands of his testator or intestate; and being so liable to that extent, should be charged and made a party accordingly, together with the surviving executor, or the administrator de bonis non of the first deceased; not, however, upon the ground, that an executor of an executor is entitled, here as in England, to administration de bonis non of the first deceased ;(d) but because of there being, in respect of such assets, a privity and a mediate representation of, and indebtedness to the first deceased, (e)
In a creditor’s bill against the representatives of a deceased debtor, it was formerly not unusual to describe particularly the real estate of which the deceased debtor died seized; but as it may,in most cases, be impracticable for a creditor to do so, it has been held to be unnecessary to set forth any description of the deceased’s real estate, (f) But it is usual, and in most cases necessary, in such bills, to set out with a qui tam allegation, that “ your orator, A. B., of-r county, as well on behalf of himself, as of other the creditors of C. D., late of-county, deceased, who shall come in and contribute to the expense of this suit, that the said C. D. being, in his life, and at the time of his death, seized in fee simple of a considerable real estate,” &c. (g) Whence it would seem, that the other creditors should always be called in to participate as co-plaintiffs ; but when they do come in, they are thenceforward considered as parties to the suit; (h) and may be regarded as taking the position of either plaintiffs or defendants as their in *350 terests or the nature of the case may require, (i) And as it must appear, in all cases, where a creditor undertakes, by a creditor’s suit, to represent the interests of others, that the relief sought is, in its nature, beneficial to those others, it follows, that where a creditor may sue either for his own claim alone, or as well in behalf of others as of himself, that he should, by an express averment in his bill, make his election to sue in the one way or the other; (j) and where he has sued merely in his own name, but can only obtain the relief he seeks by suing as well in behalf of the other creditors as himself, his. bill must be amended to that effect before or at the hearing, (k) But, in general, it is the nature of the case which gives to it the character of a creditor’s suit; for an allegation in the bill, that the plaintiff sues as well for himself as other creditors, will not alone justify its being treated as a creditor’s suit where the case does not warrant it; nor will the omission of such an. allegation prevent its. being so considered, where the nature of the case is such as to require the creditors to be called in. (l)
The establishment of the whole, or a part, of the claims of all, or of some one or more of the originally suing creditors, is the first point to be determined. In all cases, it is indispensably necessary that the plaintiff should sustain the facts- of his case, either by proof, or by the admission of his opponents; for, otherwise he can have no standing in court, nor any right to sue, whatever may be the law arising out of such facts. If, therefore, the claim of the plaintiff be denied by all, or any one of the defendants, it must be proved, (m)
A guardian ad litem of an infant defendant, being appointed by the court for the purpose of having the proceedings substantiated against him, so that justice may be done to the plaintiff, (n) like a solicitor, becomes thereby so far one of the guardians of the lis, that he is bound to have it conducted with as much fairness and benefit to the infant as the nature of things will permit, (o) It is *351 Ms duty to use all proper diligence in answering for the infant; (p) and in seeing that the proofs are correctly taken and brought in; (q) and he will be held liable if guilty of any fraud, misconduct, or negligence; (r) generally speaking, the infant will be bound by the consent of such a guardian, as well as by that of his solicitor in relation to the regular conduct of the suit, (s) But where, after evidence had been taken under an original bill, an amended bill was filed, making infants parties, their guardian ad litem was not allowed to consent to the reading of such evidence against them; (t) nor has such a guardian any power to execute a release for the purpose of giving competency to a witness ; (u) nor is he allowed, merely as such, to receive any money which, in that suit, may be awarded to the infant; (w) or, in any way to bind the interests of the infant by a consent, operating as a contract, in relation to matters intended to sustain the claim of the plaintiff; or to supply a defect in the merits of the plaintiff’s case, which do not constitute a part of the regular proceedings in the suit. Yet, if there be no apparent and just ground of defence, such a guardian may consent to a decree againt the infant, (x) An infant defendant, however, who always answers by his guardian ad litem, who alone swears to the answer, cannot be bound by'any admission in his answer so made; it amounts to nothing; it cannot be read against him; and for that reason, where he admitted the claim by such an answer, it was, nevertheless, deemed necessary to read the proofs to see that the plaintiff had made out his ease; and even where such proof might readily be produced, the parol was allowed to demur until the infant attained his full age. (y)
*352 These principles of law and equity operated very prejudicially against creditors who had no other means of obtaining satisfaction of their claim than from the real estate of their deceased debtor in the hands of his infant heir or devisee; and therefore, it was, by an act of assembly, declared, that a decree for a sale of the real estate for the satisfaction of any claim against it might be obtained by the consent of the guardian of the infant heir or devisee, (z) Thus, in effect, giving to the answer of an infant, by his guardian, in all creditors’ suits, and suits by mortgagees, the force and operation of an adult defendant in so far as to authorize the immediate sale of the realty without allowing the parol to demur, (a) By a subsequent legislative enactment it was declared, that if any person should die without leaving personal estate sufficient to discharge the debts by him due, and should leave real estate, the Chancellor, after summoning the minor heir or devisee, and his appearance by guardian to be appointed for that purpose, and to answer and defend for him; and on the justice of the claim of the creditor being fully established, might order the real estate to be sold for the payment of the debts due by the deceased. (b) Thus virtually, abolishing the infant’s privilege of having the parol to demur, and of shewing cause when he attained his full age; and so placing it in the power of the Court of Chancery, at once, to compel him to do justice to the creditors of his ancestor or devisor, by divesting him of the privilege of alleging his minority as a means of obstructing, for a time, the regular course of justice.
It having been thus put upon infant defendants, in such cases, to defend their interests immediately, and as effectually as they can, by a mere guardian ad litem, who has been expressly authorized to consent to an immediate sale of the real estate; the answer of an infant by his guardian, in all such cases, must be taken to be as conclusive against him as if he had answered as an adult, (c) And as a creditor, who comes in under a decree, may have his claim allowed upon affidavit,, if it be not expressly denied and contested ; so a creditor, suing as an original plaintiff, may obtain a decree on a similar authentication of his claim, unless it be expressly denied and put in issue by the answer of an adult or infant defendant; otherwise a plaintiff creditor would be made, to encounter greater difficulties than one who came in under the de *353 cree. (d) Such has always been held to be the true construction and necessary consequence of those legislative enactments ; for, if it were not so, they would have removed no obstructions, nor given to creditors any additional facilities whatever in recovering satisfaction of their debts from the real estate of their deceased debtor, in the hands of his infant heirs or devisees, (e)
*354 The next point to be established in a creditor’s suit against the representatives of a deceased debtor to enable his creditors to ob *355 tain satisfaction by a sale of his real estate, is the insufficiency of his personal estate to pay his debts. If that fact be denied, an ae *356 count must be taken of the personalty; and the creditors must be notified to file the Touchers of their claims, so that that fact may be *357 determined before there can be a decree for a sale of the realty; or, even if the insufficiency of the personal estate be to some *358 extent- admitted, not denied, or established, still, for the benefit of the heirs or devisees, the creditors may be notified to bring in their *359 claims in order to ascertain what proportion of the real estate must fee sold, (f) If, on thus taking an account of the personal estate, it should be clearly shewn to be abundantly sufficient to satisfy all the creditors of the deceased, then the suit may, thenceforward, be confined to the administration of the personal estate alone, continuing the personal representatives only as defendants, and dismissing the bill as against the- heirs. But, it is the habit of the court, where the insufficiency of the personal estate is admitted or shewn, and it thus foresees that the real estate must be sold, to decree a sale of it immediately without setting the case down for final hearing- (g)
The establishment of some claim of a creditor, and the insufficiency of the personal estate to discharge the debt due by the deceased, thus shewn, or not denied by the heirs, being the foundation on which a decree for a sale of the realty must rest; and without which it could not have been passed, such a decree, therefore, necessarily establishes the validity of such claim, and the insufficiency of the personalty, without leaving those matters open to any further question by any of the immediate parties to it. (h) And as the coming in, under such decree, implies a submission to it, no creditor, who thus comes in, can be allowed to impeach it; except on the ground of fraud among the original parties to it; and in so far as it injuriously affects his interests, by making a wrong disposition of the property, (i) If a part only of the claim of the plaintiff be sustained, the decree should specify what part has been established; and how much has been finally rejected, or is to be allowed to stand over to be again brought forward, upon further proof, with the claims of other creditors; but if no such specification be made, then it must be assumed, that the decree has finally established the validity of all the claims of the several plaintiffs, (j) And although the personal estate may not be suffi *360 cient to pay all; yet if it appears, that there is still a portion of it to be accounted for, and distributed, then the same decree, which ■directs a sale of the realty, should also require the executorj[or administrator to account for the personalty; and, if the creditors have not been previously called in, the same decree should moreover direct the trustee appointed to make the sale, to give them notice, at the time of advertising the real estate for sale, to file the vouchers of their claims in the chancery office.
Such a decree virtually takes possession of the property and vests it in the court, for the purpose of distribution; (k) and, consequently, the court may thenceforward exercise over it all such control and authority as may be necessary for its beneficial preservation. If it cannot be immediately sold, it may be rented, or .disposed of in the mean time, to the best advantage; (l) the committing of any waste upon it, maybe prohibited by injunction; (m) or a receiver may be put upon it to collect and take care of its rents ■and profits, (n) The trustee appointed to make the sale, being the mere agent of the court; (o) it is the court who must be regarded -as the vendor; and as the holder of the vendor’s equitable lien, (p) The trustee, without incumbering the report of his proceedings, with any thing more than a concise reference to the decree; and a brief averment, that he had, in all respects, complied with its directions ; or if not, with a statement of the way in which he had departed from those directions, should clearly and distinctly set forth the date and terms of the contract of sale which he had made with the purchaser, naming him ; and which contract he thus submitted to the court for its confirmation or rejection.
So soon as the court has, by a decree, assumed the general administration of the assets, it will on motion or petition; (q) and without, as formerly, a second bill filed for that purpose, (r) interpose by injunction; and stop in its progress, to judgment, an action at law, brought by any creditor for payment of his debt; (s) and *361 although the name of such creditor was, without his consent, inserted in the bill filed on behalf of all the creditors of the testator; (t) or to restrain an action brought by a lessor against an executor, as executor, for a breach of covenant to repair; since the fact of a breach, and- the damages may be as well ascertained by the auditor as by a jury, (u) And the like injunction may be obtained, not only where the bill is filed by creditors; but also where it is filed by an executor to have the directions of the court for the execution of the will, and to be indemnified; (w) or for the same purposes, by trustees of the testator’s estate; (x) or where it is filed by a residuary or other legatee; (y) and the injunction may be obtained on the application of an executor, where the bill is filed by creditors; (z) or by trustees; (a) or on the application of a creditor plaintiff, the bill being filed by creditors against the executor ; (b) or on the application of a legatee, by whom the bill is filed against the executor, (c)
But, in granting an injunction, in cases of this kind, in order to protect the real or personal representatives from pressure at law, the court is always careful not to exclude creditors, proceeding at law, from.the benefit of their diligence, by which' they have established a right to be satisfied, either out of the assets of the deceased, or de bonis propriis of the representative; a right which, in some cases, the conduct of the representative will confer on them, and in others their activity; and will not indulge creditors who have lain by to the extent of depriving the diligent of the fruits of their diligence. (d) And, therefore, an injunction may be obtained to shelter assets against execution under a judgment against the heir or executor ; (e) as where after a decree to account, a creditor proceeds to trial at law, and there obtains a verdict; (f) or where *362 after such decree, the executor suffers judgment by default; (g) although so far as a judgment may affect the executor’s own property, the court will not interfere to protect him. (h) ■ And if a bond creditor has got a judgment against the executor or heir, before the decree, then after the decree, although such creditor may come in and prove accordingly, as a judgment creditor, against the personal, or the real estate in the hands of the executor or heir; yet the court will, on application, grant an injunction to prevent him from taking out execution against the assets, (i)
The principle upon which an injunction rests in such cases, is, that substantially, a bill by a creditor, in behalf of himself and all others; or a suit by any one, in which all the creditors may be represented, and allowed to come in to obtain satisfaction, is considered as making all of them parties to it; and that the decree is in the nature of a judgment for them all; and, therefore, the court, to prevent difficulty, confusion, and injustice; and to sustain its jurisdiction, thus assumed over the administration of the estate, will never permit another suit to be instituted for the same object, with the same parties, and directed to -the same relief. If the relief in the first suit can be extended ; if expense can be saved by incorporating with it any proceeding which will avoid the necessity of a second bill, there is an obvious propriety in not permitting another suit to go on. But a second suit may be rendered necessary either, by collusion in the former suit; or by its having- left out some principal matters of charge; or by its having omitted, from ignorance or negligence, some important ground of relief, (j)
Such an injunction may, however, in some cases be made an instrument of fraud and injury to the whole body of the creditors, by persons, who have more interest in forbearing than urging their demands against the representatives of the deceased, so managing it as to leave the representatives in almost as undisturbed enjoyment of the assets as before the bill was filed. To prevent such an abuse of its authority, the court, when asked for such an injunction, may look into the answer of the executor or administrator and see what amount he admits to be in his hands; or if he has not there stated *363 it, may order him to make affidavit of the amount, and to bring into court that, if any, which he so admits to be in his hands. Yet it is not an absolute rulé of the court to refuse an injunction, unless there- is an affidavit stating the assets in the hands of the personal representative. Or, should a case arise, of assets wasted by a personal representative, from the neglect of- the solicitor, by whom the suit was conducted, the court would hold him responsible ; (k) or should there be any improper delay by the original plaintiff, any one, who has been allowed to come in as a creditor or party, may be -permitted to take his place, and prosecute the suit. (l) For, although a plaintiff, who sues on behalf of himself and all other persons of the same class, as he acts upon his own mere motion, and at his own expense, retains the absolute dominion of the suit, until another has been admitted as a co-plaintiff, or until a decree to account, and may dismiss the bill at his pleasure; yet, after another has been admitted as a co-plaintiff, or a decree has been passed, he cannot, by his conduct, deprive other persons of the same class, who thus become actors, of the benefit of the suit if they think proper to prosecute it. (m)
I am, therefore, of opinion, that this is, in effect, and may properly be considered as a creditor’s suit; although it is not expressly alleged to have been instituted for the benefit as well of the creditors of the testator, as of these plaintiffs; and that the. order directing notice to be given to the creditors of the late Philip Hammond to bring in their claims, was, in every respect, proper; and must have the effect and operation of allowing a satisfaction to be awarded to those creditors who shall come in as thus warned,- and of making a distribution of the residue of the estate among the respective claimants. And, moreover, that the injunction granted on the 29th of September last, to prevent the creditor, Ridgely, from proceeding at law on the judgment he had obtained against these executors, was proper and well warranted by the nature of the case.
In order to ascertain who are creditors, and also, where necessary, who are the next of kin of the deceased, the court directs public notice to be given by advertisements in newspapers, or *364 otherwise, subject to the restrictions of the act of assembly, (n) , in those quarters where creditors and next of kin are most likely to be found, calling on them to come in and file the vouchers of their claims in the chancery office, usually within four months from the day appointed for the sale of the real estate. And when that time has expired, it being Considered that the best possible means have been taken to ascertain the parties really entitled, the auditor is then, and not befofe, allowed or directed to make a statement and distribution of that amount of the personalty, if any : and of the proceeds of the sale of the realty, .after the sale has been finally ratified, among the claimants. It is, however, obvious, that the parties really entitled may never have seen or heard of the advertisements, or of the suit; and, therefore, it would be the height of injustice, that the proceedings of the court, wisely adopted with a view to general convenience, should have the effect of conclusively applying the fund unequally and wrongfully; or of transferring the property of the true owner to one who had no right to it. And, therefore, the court will, at any time before it has actually parted with the fund, upon the application of a claimant, let him in, and send the case again to the auditor, to have the' distribution recast at his expense; except, indeed, as to small claims, which can be satisfied out of the accruing interest of the purchase money of the real estate which had been sold, without incurring the expense of a re-statement, (o)
If, however, a part only of the- fund remains in court, such part will be charged with no more, than its due proportion, leaving the *365 claimant to seek satisfaction for the residue from the next of kin, legatees, heirs or devisees to whom the other shares of the iund had been actually paid. But after the court has actually parted with the whole fund, upon a bill filed by a creditor, next of kin, heir, or devisee against those alleged representatives of the deceased, among whom the property had been distributed, the court will, upon proof of no wilful default on the part of such creditor, next of kin, heir or devisee; nor any want of reasonable diligence, compel the next of kin or distributees to pay or restore to such plaintiff that to which he may appear to be justly entitled, (p) But if the whole estate has been distributed and actually paid over to the creditors of the deceased, or in so far as it had been so actually paid away, then, as such creditors cannot be made to refund, claimants of, and under the deceased debtor, who may thereafter come in, can take nothing by their application; not upon the ground, that their claims are without foundation ; but because by their negligence they have lost all means of relief, (q)
A publication warning all claimants, unknown to the court, to come in and file the vouchers of their claims against the estate, is a constructive notice, upon which it is presumed to be safe to proceed to make a distribution of it among all those who then, after such notice, shall have come in and made claim. That, however, cannot apply to a legatee, or any other claimant who then fails to come in and assert his right, but whose title appears upon the face of the proceeding; and who must, therefore, have a proportional share of the fund set apart for his satisfaction, (r)
Should a claimant find it necessary, for any purpose advantageous to himself, to introduce any matter, not apparent upon the face of the voucher of his claim, he may be permitted to do so by petition ; or if the relief he seeks cannot be so obtained he may file a cross bill, (s) But the most usual way for a creditor to come in is by merely filing the voucher of his claim with such an affidavit *366 annexed as is required for authenticating such a claim in the Orphans Court, (t) The meaning of which practice is, that a person should not come here, and claim a debt without giving that assurance, that it is due, which arises from his affidavit; which also, if the debt be contested, affords a protection against the conclusion from other evidence, that it is due, when the contrary may be within the knowledge of the party himself; (u) and moreover, because of its being proper to follow the rule prescribed for the Orphans Court, under similar circumstances, in order that there may be a consistency in the administration of justice. But if the claim be contested, as it may, by a plaintiff, a defendant, or any one who has been allowed to come in, and whose interest may be affected by it, no attention is to be given to the affidavit, the claim must be established by full proof as on issue joined before a jury; or it will be rejected. The admission of, or even a judgment against an executor or administrator can be of no avail against the heir or devisee, (w) And if all the original parties to the suit should waive the statute of limitations, still it may be relied on by any one who comes in, and may have an interest to protect by relying on the statute, (x)
In general no claim can be considered as a debt due by the deceased ; and, as such, entitled to be paid out of his estate, but that which he owed-at the time of his death, and was then, or thereafter payable; and the balance only of such a claim, for which the deceased was then liable, is the amount to be satisfied in whole, or in due proportion, (y) Where the assets are sufficient to pay all the creditors of the deceased; or where there is an ample solvent fund, it cannot be necessary to attend to the order in which the debts are satisfied, or to adjust any apportionment among them; since nothing can be awarded to the next of kin or legatees, heirs or devisees of the deceased, or to the debtor himself until all his creditors have been satisfied to the full amount of their respective claims, principal and interest; for if a creditor is entitled to any interest it is as much a debt as the capital itself, (z)
*367 A statement liquidating the amount due to each creditor, inclusive, or exclusive of interest, must always be made, in a creditor’s suit, according to the nature of each claim. And therefore, it is necessary, in all such suits, that the nature of the claim for interest, and the mode of computing it should be attended to, in order, that a correct distribution may be made, even where the fund may be sufficient to pay all; and more particularly so where, the estate being insufficient, the several claimants can only be satisfied in part and in due proportion.
Interest on money is defined to be the compensation which the borrower pays to the lender for the profit which he has an opportunity of making by the use of the money; part of that profit naturally belonging to the borrower who runs the risk, and takes the trouble of employing it; and part to the lender who affords him the opportunity of making the profit. (a) According to this definition, it is only that part of the interest which belongs to the lender, and which he may legally sue for and recover, that is now, and so often becomes the subject of judicial consideration.
In England, according to the principles of the common law, interest was not allowed upon a sum certain, payable at a given day. The action of debt being the only mode of recovering a sum certain, except where there was a breach of covenant; and, in that action, the defendant being commanded to render to the plaintiff the debt, or shew cause, the. payment of the specified debt, without any thing more, answered the action and put an end to the suit. And thus, interest forming no proper part of the original debt at law, it was held to be created only by the nature of the security. This general rule, it is said, prevents acts of kindness from being converted into mercenary bargains; and, by making it the interest of traders to press for payment, thereby checks that pernicious extension of credit which is so often ruinous to both parties. (b) But in debt upon a bond, with a condition to pay a lesser sum, the defendant was authorized by a statute to make satisfaction by the payment of the lesser sum with inte *368 rest, (c) And, in many other cases, where there is either an express or implied contract or usage of trade requiring interest to be paid, as on negotiable notes and the like, the English courts of common law give interest down to the day of signing the judgment. (d) And so too, where there has been a wrongful withholding of the debt, the jury is permitted to bring in a verdict allowing interest in the shape of damages for the detention of the money. But, in general, no interest is ever given, by the English courts, upon mere simple contract debts, as for goods ■ sold and delivered, &c. (e) A plaintiff is- not suffered to sue out execution, in any case, for more than the whole amount awarded to him by his judgment; yet if his judgment be not satisfied, he may bring an action of debt upon it, in which the whole accumulated amount of it, constituted of the principal and interest of the debt, or the damages assessed, and the costs, considered as one entire debt will be allowed to carry interest until the signing of judgment in such action, (f)
In Maryland interest on money is not only given in all cases where, in England, it would be awarded, to the creditor; but, in many other cases where, according to the English law, he would not be allowed to recover any thing in the nature of interest for the detention of. his money. It is 'here given by the court, or left to the jury, as in some cases in England, to give or not, at their pleasure, in almost all kinds of cases; (g) as on a claim for rents and profits ; (h) for rent; (i) for the value of goods replevied; (j) for the value of land not conveyed according to contract-; (k) for money which had been actually used; (l) for the balance due on an account stated; (m) for a sum of money which the defendant, *369 by his receipt, promised to return ‘when called on to do so (n) and the like. By an English statute, passed in the year 1705, and adopted here, it is declared, that, in an action on a bond, with a condition for the payment of a lesser sum, the defendant may plead the payment of the principal and interest due by the condition in bar; or may, pending the suit, bring such principal and interest into court in satisfaction of the debt, (o) And, by a legislative enactment of the provincial government, it was declared, that the courts of common law might assess damages and give final judgment in all actions of the case upon assumpsit, whether the same should be entered upon default, demurrer, or confession without a writ of inquiry. (p) Under this authority, and in accordance with the English, practice, the court itself, in all actions upon bills of exchange and promissory notes; and, in some other cases, where interest was allowed in the shape of damages, calculated the interest, added it to the principal, and gave judgment for the whole amount thus found due. (q) This provincial law having been repealed by an act confined, by its terms, to cases after an interlocutory judgment where the plaintiff was entitled to a writ of inquiry; and where thé damages sustained could not be ascertained without the intervention of a jury; (r) the courts still continue to exercise the power, as formerly, in actions on bills of exchange, and the like, of calculating the interest, and entering up judgment for the whole, thus ascertained, and costs, (s)
In the year 1760, it was declared, by the court of King’s Bench, of England, that nothing could be more agreeable to justice, than that interest should be carried down to the actual payment of the money, (t) Yet notwithstanding the obvious correctness of this position, owing to the strict forms by which the courts of common law were tied up, interest has never, in England, been carried down farther than to the day of signing judgment; nor here until lately, and that only exclusively of costs. Although it had always been the course of the courts of equity, as well in England as here, in ordering tbe payment of money, on which interest was *370 allowable, to direct interest to be carried down to the time of the actual payment, or the bringing of the money into court. (u)
It has -been declared by an act of assembly, that, in all actions brought for the penalty of any bond or contract, the jury may, under the direction of the court, upon the plea of payment or performance, find what sum of money is really due to the plaintiff; upon which judgment shall be entered for the penalty to be released upon the payment of the sum so found due, and interest on the same until paid and costs, (w) So that, under this act, the plaintiff may, as in an action of debt upon a judgment, recover further interest, except on the costs, upon the aggregate amount of his judgment, and have his execution thereon levied accordingly. As for example, if the debt really due was $100, with $30 interest, the jury would be directed to find a verdict for $130, upon which judgment would be entered with interest on the same from the day of signing the judgment until paid. (x) It had also become usual, in the courts of common law, in actions of debt, assumpsit, &c. where the defendant confessed judgment, to enter it for the amount claimed in the declaration, with a memorandum at the foot of the judgment, that it should be released on the payment of the whole sum then due, with interest thereon from that day until paid, and costs of suit, (y) After which it was enacted, that all judgments by default, and in all cases where a verdict should be given, the judgment thereon should carry interest in the same manner as in cases of a confession of judgment, (z)
Equity, in this respect, follows the law; or, rather has always pursued a similar course, and allows interest in all cases where, under like circumstances, it might be recovered at law. (a) And therefore, as a judgment here, as in England, always had the effect of converting the interest then due into principal, so that, in an action of debt, interest might be recovered upon the whole amount; and as such subsequent interest may now be levied here under a fieri facias, (b) So upon the whole amount awarded by an *371 order or decree of this court, subsequent interest is, to the same extent, and in like manner, recoverable. The auditor, in a creditor’s suit, always makes a statement of the claims of the creditors, allowing interest to each, if entitled to it; and, the aggregate thus shewn, is considered as the liquidated debt then due to each; and an order confirming such a statement, is a judgment of the court in favour of each creditor, which, like a judgment at law, converts the interest into principal. Interest is, therefore, to be computed from that time forward upon the aggregate amount, (c) So that it may be regarded as a general rule, here as in England, that where a debt is liquidated by an auditor’s statement confirmed, the whole carries interest from the date to which such confirmation relates; and so toties quoties, as any new statement may be made. (d) And if the debtor should appeal; and the judgment *372 below should be affirmed, here as in England, the appellate court may, according to the express provisions, and the spirit of several *373 legislative enactments, add the interest which had accrued upon the judgment below to its aggregate amount, and direct the whole *374 to carry interest from the time of the affirmance until paid, (e) In England interest is allowed upon the whole amount of the debt, *375 thus ascertained by a judgment at law, or an order in equity, although a large part of such amount should be constituted of *376 costs; (f) on which costs, as a separate claim, no interest would he allowed, (g) But here, as our acts of assembly have not made *377 the costs a part of that judgment debt upon which subsequent interest is to be computed until paid, no interest has been allowed *378 to a creditor upon his costs; although the trustee of the court always has a due proportion of interest awarded to him on the *379 amount allowed to him as commission by the order confirming the auditor’s report, (h)
*380 This judicial conversion of the interest into principal, has, in some respects, the appearance of allowing compound interest, *381 and of being in fact usurious; but it is not so. (i) Compound interest is the annual or periodical conversion of interest into prin *382 eipal, so that the whole may carry interest to the end of the next year or period, and so on. The contracting for which originally would be deemed illegal, (j) But where the interest is converted into principal by a judgment at common law, or by an order of this court, it is because of the whole being found to be then due as an entire debt, which is so judicially required to be paid, on which, if the debtor fails to pay as commanded, he must, thenceforward, he charged with interest upon the whole amount so adjudged to be due. (k) And upon similar principles, on a hill to foreclose, or redeem a mortgage, if, by the decree, the mortgagor is allowed a certain time to redeem, by the payment of principal, interest and costs down to a specified day; and if he fails to do so, the interest will be added t<f the principal, and the whole will, thenceforward bear interest. (l)
*383 Interest is always allowed on debts secured by a mortgage; and where an account is stated, with the knowledge of the mortgagor, and the whole amount, principal and interest, is paid by an assignee of the mortgagee, with the assent of the mortgagor; such aggregate amount of principal and interest, shall bear interest in fa.vour of the assignee. And so too, where the principal and interest has been paid by a surety, he shall have interest upon the whole, (m) Such a conversion of interest into principal in favour of an assignee of a mortgagee, a surety, and the like, is founded upon an express, or implied contract between the parties, as to a separate or single transaction; and is not considered illegal, as it would be, if done under an original contracting, for the compounding of interest, or for'a periodical conversion of the interest into principal. (n)
On a bill for an account and the like, by a creditor to obtain payment from his debtor; or on a bill to recover a legacy, the subsequent interest is computed, not upon the aggregate amount found due at the time of the decree; but on the principal only, from the time the debt was liquidated, or became payable, until it is paid or brought into court, (o) The rule for computing interest, in all cases, where the debt carries interest; and the debtor has made partial payments, is, that the interest is calculated from the time the debt became payable, down to the day of the first paymentand the interest is added to the principal, then the payment is deducted from the whole; and if such payment satisfies the whole interest and a part of the principal, then the interest is calculated upon the balance of the principal to the day of the second payment, from the whole of which the second payment is deducted, &c. But if the first payment does not discharge the whole interest, then after applying it to the satisfaction of so much of the interest, the interest is calculated upon the principal only, until the day of the second payment, which is deducted from the whole amount, and- so on. So that in no way is any interest calculated and paid upon interest. (p)
But where the estate of the deceased, or insolvent debtor is in *384 sufficient to pay his debts; the personal credit having ceased, and all hope of obtaining payment, by the personal exertions of the debtor, having come to an end, the estate, as in cases of bankruptcy in England, is treated as a dead fund, as a kind of shipwreck, in which there can only be a salvage of a part to each creditor, (q) Under such circumstances, it has long been the practice of this court, as the best method of settling the proportions among the creditors, to have a statement made by the auditor, of the aggregate amount of the principal and interest of their respective claims, as of the day of the sale of the real estate, which, when confirmed, operates as a judgment in favour of each from that day. And, as, in all cases, where the estate is sold on a credit, the purchase money is made to bear interest from the day of sale; the aggregate amount, thus found due to each creditor, is that amount upon which a proportional dividend of the proceeds of the estate is to be awarded to each, with a similar proportion of the interest which may be paid on the purchase money. So that, where the creditors of an insufficient estate, have been delayed by a sale for their satisfaction on a credit, they may have the interest, on the dividends of their respective claims, met and reimbursed by the interest arising from the purchase money of the estate sold, (r)
If any one of the creditors has received a part of his claim from the estate of the debtor, he cannot be allowed to obtain any thing more, until the other creditors have received satisfaction in the same proportion; (s) but a mortgage creditor, after having exhausted the mortgaged estate by a sale, may come in against the other estate of his debtor for the deficiency, pari passu with the other creditors. (t) This, however, does not extend so far as to compel any creditor to bring back into hotchpot any payment he may have fairly received, (u) An heir or devisee was allowed formerly to retain, for the same reason, that an executor or administrator was allowed to retain an amount equivalent to the satisfaction of his debt, in preference to others, (w) But as it has been declared, that the claim of an executor or administrator shall only *385 stand on an equal footing with other claims of the same nature; (x) and as it had been previously declared, that an heir or devisee should pursue the same rules in the payment of debts out of the real assets as were prescribed for an executor or administrator; (y) it would seem to follow, that the claim of an heir or devisee should now, in like manner, be held to stand only upon an equal footing with all other claims of the same nature; and be allowed to retain only for a due proportion, (z)
Here, however, it may be well to observe, that although it is directed, by an act of assembly, that all judgments against the deceased shall be first discharged, if the assets be sufficient; but if not, and there be more judgments than one, a proportionable division of the assets shall be made among them, in affirmance of the common law, as to the personalty, (a) and then, it is further declared, by the same act of assembly, that, in case there be not personal estate sufficient, the heir or devisee shall pursue the rules and directions aforesaid, in the payment of the debts of the deceased; and that all courts of law and equity shall observe those rules and directions. (b) Yet as nothing is said, in that legislative enactment, as to any lien upon the real or personal estate; and, as it would be impracticable, in many cases, to satisfy judgments in due proportion only; and at the same time sustain the liens of mortgagees and vendors, it has been always held, that notwithstanding what is said in that act of assembly, all liens upon the realty must remain in full force; and that the rules therein laid down can only apply where no such lien exists on the personal estate by a fieri facias actually delivered to the sheriff; or on the real estate by a mortgage or judgment made or recovered in the life-time of the deceased. (c) And, consequently, since the real estate of a debtor, has been made liable to the payment of his debts by statute ; and can only be properly applied in payment of them, after his death, in a court of equity, that estate can only be regarded as legal assets, not having been raised where there were none before; and, therefore, must be administered accordingly, subject to all the legal and equitable liens, preferences and priorities of those creditors who may be entitled to obtain satisfaction from them, (d) That is, they must be first applied in discharge of all costs, so as thus to *386 make the creditors contribute in due proportion to the expense of the suit; (e) next in the payment of the public dues, taxes and levies; then in discharge of each mortgage, equitable lien, (f) and judgment according to its respective priority; recollecting, that the lien and priority of a mortgage is confined to the principal sum particularly mentioned and expressed, to be secured thereby; (g) and after that in payment of the creditors in due proportion; to the satisfaction of all which the real estate has been made alike liable, by statute, without preference. (h)
No man can be compelled to institute a suit for the recovery or establishment of his rights; because, as to the disposition of his own peculiar rights and property, his will stands for a law. But no one can be permitted either to use, or to neglect to use,, his rights to the prejudice of others. Hence, if a prior mortgagee attempts to use his incumbrance as a protection of the property of his debtor, it will be deemed a fraud upon the other creditors; and his lien will be postponed until the injured and junior incumbrances have been satisfied. And so, too, where a creditor has a lien upon a' particular fund, which has been previously mortgaged or incumbered, he may come here and redeem the property from such prior incumbrance, so as not to permit him to neglect to establish and receive his debt to the prejudice of others, who have an interest in the proper application' of the surplus.- (i) The personal estate of a deceased debtor must be first applied in payment of his debts, and then distributed among his next of kin or legatees; and where his personal estate is insufficient to pay his debts, a right accrues to all his general creditors -to have his real assets administered in equity for their benefit, because of their having a lien upon them, as against his heirs and devisees, arising from the statute which subjects real estate to, the payment of debts, (j) which they have no other Vay of making available than in a court of equity, (k) And, therefore, a next of kin, legatee, heir, or devisee, having an interest therein,' has a right to redeem any outstanding incumbrance upon those assets; or, in other words, to bring all who have a prior, or equal claim, upon them here as parties, to have their rights adjusted and satisfied, so as to clear the *387 estate, that the surplus may be distributed among the next of kin, legatees, heirs, or devisees, of the deceased. (l)
Hence, although it is clear that a creditor cannot be deprived of any lien he may hold upon property in a suit to which he is not a party; (m) yet, if he should attempt to proceed upon his lien to *388 enforce payment, and thus to obstruct or pervert the administration of the assets, after a decree to account for. that purpose, he may be enjoined, and so compelled, to come here to obtain satisfaction; (n) first, however, deducting the costs of the suit here, which has been thus made to enure to his' benefit, from the fund brought in, and which may be thus ‘ exhausted by his lien, (o) But, where the claim of a creditor, who voluntarily comes in under •the decree, is contested, the costs of such contest are not charged upon the estate to the prejudice of other creditors, (p) If a mortgagee, a vendor, holding an equitable lien, or a judgment creditor, having a general lien, fails of refuses to come in, the property may be sold subject to his lien, leaving it unimpaired; so that he may have the same remedy against the estate as before the decree and sale.' (q) But, although such a creditor cannot be compelled, merely on the usual notice to creditors’,-to come in and receive satisfaction in discharge of his lien, yet, any other creditor, upon the general principles of the court in the administration of assets, may, by an original, amended, or supplemental bill, make him a party to a creditor’s suit, so as to have his incumbrance cleared away, and the surplus applied for the benefit of the general creditors. (r) And this may be done, not only at the instance of any one who is then an actual creditor of the deceased, but by one who, from the peril in which he stands, as executor, administrator, or surety, has a right to be substituted for, and to take the place of an actual creditor. As where certain property was charged by will with the payment of á particular debt, which the devisee, taking under the-will, failed to pay, the executor of the devisor was allowed, by a bill quia timet,- to compel the devisee to pay in order- to save the personalty of the' devisor; (s) or where a judgment had been obtained against the surety on a bond, such surety, before he had paid any part of the debt, was permitted to file a bill against the representatives of the deceased, and to have the realty sold for the satisfaction of his principal’s debt to save himself harmless. (t)
*389 In the case under consideration, it is clear, that the creditors of the late Philip Hammond could only obtain satisfaction from his real estate in the manner in which his will directs; and that they could only enforce payment in that mode by a bill to which the heirs, devisees, and executors, were parties ; because, by the will a sufficiency of assets for the payment of all the debts of the testator have been lawfully passed into their hands. But the devisees and legatees, under the will of Philip Hammond, deceased, take an estate or interest which they have a right to have disencumbered and protected from the charge imposed upon it, either by means of the funds placed in the hands of his executors for that purpose, or that the incumbrance should be adjusted and reduced to its proper proportions, and lowest amount, by a contribution from all the devisees charged with contribution. In this respect, these devisees stand in the condition of junior mortgagees, or simple contract creditors, who have a right to redeem, or to have all superior incumbrances satisfied and removed, so as to give them the full benefit of the surplus. But, from the manner in which they take and hold, they have no means of ascertaining whether there are, in fact, any creditors or not; or if there are any, who they are, and the amount due to each, which has been left unpaid out of the fund set apart by the testator for their satisfaction. Unless they are permitted to have their complaint for all these purposes considered and treated as a creditor’s suit, and the creditors of the testator notified to come in, establish their claims, and receive satisfaction, they can, in no way, disengage their respective portions from the incumbrance charged upon it; the cloud that has been thus suspended over them may long remain, or, at some future day, burst upon them to their ruin.
The next difficulty is, as to the proportions in which these devisees are to contribute. It has been contended, that the testator having given to each one of them what he, at least, considered as portions of equal value, must therefore have intended that they should contribute share and share alike. But I understand the testator differently.
As I have before remarked, it is perfectly evident that the testator had adjusted the divisions and distribution of his estate with great deliberation and care; and by the very act of setting apart a separate fund for the payment of his debts, he strongly indicated an intention, that the relative value of the divisions he had made, should not be disturbed. The language used in the codicils, giv *390 ing the sums of money to Charles and Harriet, shews that by placing those sums in lieu of the negroes he had disposed of, he meant to restore, so far, that previously adjusted apportionment, which he himself had interfered with. But this is not all; for, as if determined that even his creditors, whose rights he knew he could not absolutely control, should not break down the equilibrium which he had established among those objects of his bounty, by taking from one more than from another, he declares, that in case the fund set apart for the satisfaction of his creditors should not be sufficient, that then ‘ my executors pay the balance of my debts from my estate generally, and from the rents and profits; and I request and will that they give bond for their payment, and that no administration on my estate be had in the ordinary manner, but that the property devised to my sons and daughters, and my grandson, shall contribute in equal proportion to the discharge of my debts;’ that is, in equal proportion, having regard to the actual value of each portion so charged. That this was his intention is clear, from another view of the matter. It must be admitted, that the testator meant, in all events, to give something to each one of those devisees ; but if their portions were of unequal value, as they are admitted to be, and they were notwithstanding to contribute share and share alike, then it is clear that if the amount of debts were large, the.portion of one might be wholly exhausted, and he might ultimately get nothing, and yet leave a large donation to the others. I am therefore of opinion, that the contribution must be in due proportion to the actual relative value of the whole property given to each one of these devisees. (u)
But to adjust this proportion, the principal of the sums of money given to Charles and Harriet must be taken into the estimate as parcels of their respective portions; and after those sums, principal and interest, have been charged against the executors who received the assets, and first taken from the fund set apart by the testator for the payment of his debts, as being in fact not properly a part of it, the whole of the residue must be applied, as far as it will go, to the discharge of the testator’s debts; and then the several devisees must contribute, as'specified, towards the payment of the debts which shall then appear to be unsatisfied.
But it is said, that there remains about one hundred and fifteen acres of land, parcel of the creditors’ fund, as yet unsold; conse *391 quently the amount to be made up by contribution from the devisees, cannot be adjusted and determined until that has been sold, and the proceeds brought in and applied in satisfaction of the debts.
It is also represented, that some of the executors have overpaid. According to the course of the court, in such cases, the executor takes the place of the creditor whose claim he has thus satisfied, and is allowed interest accordingly. I see nothing erroneous in the mode of charging interest as stated in the accounts reported by the auditor.
Whereupon, it is Ordered, that the exceptions to the auditor’s report be over-ruled, and the case is hereby again referred to the auditor, with directions to state an account accordingly, after the whole fund set apart by the will and codicil shall have been applied as therein directed; which may be effected either by a sale of so much of it as yet remains undisposed of, under a decree to be passed for that purpose, or by having it disposed of and adjusted by consent.
After which, the parties having adjusted some of the matters in controversy by an agreement filed in the case, the auditor made a report of the amount with which each of the devisees was chargeable, as contributors to the sum necessary to be raised to meet the amount of claims against the estate, and the case was again submitted to the court.
4th February, 1830.
Bland, Chancellor.
This case standing ready for hearing, and being submitted, the proceedings were read and considered,; whereupon it is Decreed, that the auditor’s report of the 28th of January last, and his additional report of this day, be, and the same are hereby in all respects ratified and confirmed.
And it is further Decreed, that the complainant Thomas Hammond, on or before the first day of March next, bring into this court the sum of $240 37|, with interest thereon from the said 28th of January last; that the defendants Philip Hammond, Marianna Hammond, Harriet Hammond, Edward Hammond, and Cecidia Hammond, who are the children of Philip Hammond, Jr. deceased, on or before the first day of March next, bring into this court the sum of $555 28f, with interest thereon from the 28th of January last; that the defendant Rezin Hammond, on or before the first day of March next, bring into this court the sum of $1,377 98f, with interest thereon from the 28th of January last; that the complainant John Hammond, on or before the first day of March next, *392 bring into this court the sum of $555 28|, with interest thereon from the 28th of January last; that the defendant Matilda Hammond, on or before the first day of March next, bring into this court the sum of $555 28f, with interest thereon from the 28th of January last; that the defendant Harriet Hammond, on or before the first day of March next, bring into this court the sum of $145 93f, with interest thereon from the 28th of January last; that the complainant George W. Hammond, on or before the first day of March next, bring into this court the sum of $555 28f, with interest thereon from the 28th of January last; and that the defendant Philip Hammond Mewbern, on or before the first day of March next, bring into this court the sum of $555 281, with interest thereon from the 28th of January last.
And in case the parties aforesaid, or any of them, shall fail to bring into court the sums or sum of money so as aforesaid decreed to be brought into court by them, him, or her, respectively, in manner as aforesaid, it is further Decreed, that the real and personal property devised by the last will and testament of Philip Hammond, Sr. deceased, to the persons or person so making default, or such parts or part thereof as maybe necessary, be sold for the purpose of raising the sums or sum of money decreed to be brought in by the persons or person so making default respectively; that Thos. S. Alexander, of the city of Annapolis, be, and he is hereby appointed trustee to make the said sales, See. Sec.
And in pursuance of the agreement of the parties, filed on the 16th of January last, and of the additional agreement entered into on the 2d instant, it is further Decreed, that the complainants Thomas Hammond and Charles Hammond, and the defendant Elizabeth Hammond, as executors and trustees of the late Philip Hammond, Sr. deceased, by a good and sufficient deed, to be executed, acknowledged, and recorded agreeably to law, convey unto the defendant Rezin Hammond, and his heirs and assigns, the real estate in the said agreement mentioned, and therein described as the residue of the real estate of the said Philip Hammond, Sr. deceased, yet undisposed of by his executors, and consisting of a part of a tract of land called Abington, and supposed to contain about one hundred and fifteen acres and twenty perches of land; and the said real.estate shall thereupon be held by the said Rezin Hammond, and his heirs and assigns, free, clear, and discharged from all claim of the parties to this suit, or any or every of them; but in ea¡?e the said Rezin Hammond shall fail to bring into court *393 the aforesaid sum of money with interest, as herein before ordered to be brought in by him, or any part thereof, the said trustee, Thomas S. Alexander, be, and he is hereby authorized and empowered to make sale of the said parcel of land called Abington, upon the terms, and in the manner, and for the purposes herein before prescribed.
Robert Welch, of Ben. and Isaac Holland, administrators of Barrett, by their petition stated, that they had recovered a judgment against the defendant Elizabeth, as executrix, upon which there was due $395 05, to secure the payment of which a judgment obtained against Charles Ridgely, by the executors of this testator, was, in October, 1828, entered for the use of the petitioner Welch ; that since that time the amount of this last mentioned judgment had been collected by these executors and brought into this court. Whereupon the petitioners prayed, that the amount due on their judgment might be ordered to be paid to them out of the moneys so brought in.
25th February, 1830.
Bland, Chancellor.
The judgment against Charles Ridgely, was assets in the hands of the executors, and as such could not be applied exclusively by them to the satisfaction of any one of the creditors of their testator, after the decree to account in this case; but it appears that the use was entered, in this instance, some time after that decree; therefore, it is Ordered, that the aforegoing petition be, and the same is hereby dismissed, with costs.
The trustee, Alexander, reported, that being under an impression that the infant defendant Philip H. Mewbern, had no means of raising the sum which he had been ordered by the decree to pay; and, at the instance of his guardian, he had sold a part of his personal estate, which the trustee submitted to the consideration of the court. After a publication of the usual order nisi, this sale was finally ratified. The amount which some of the other parties were ordered to contribute not having been brought in as ordered, the trustee, Alexander, further reported, that he had made sale of a part of the property devised to the plaintiff John and his children; of a part of that devised to the late plaintiff Philip and his children; and of that parcel of land described in the decree as the residue of the tract yet undisposed of by the executors. And he subsequently reported, that he had sold a part of the real estate devised to the *394 defendant Rezin and his children; and a part of that which had been devised to the plaintiff George W. Hammond. These sales were all finally ratified, and the proceeds having been collected, were applied in full satisfaction of all the creditors of the testator; the contributions charged upon the several devisees were finally adjusted, and the estate entirely cleared and settled.

 1785, ch. 72,a. 17.

 2 Fowl. Exch. Prac. 247; I Newl. Chan. Prac. 325.

 Maxwell v. Wettenhall, 2 P. Will. 26; Pearson v. Pearson, 1 Scho. & Lefr. 11.

 Chatteris v. Young, 6 Mad. 31; S. C. 3 Cond. Cha. Rep. 72.

 David v. Frowd, 7 Cond. Chan. Rep. 8.

 Douglas v. Clay, 1 Dick. 393; Paxton v. Douglas, 8 Ves. 520 ; Terrewest v. Featherby, 2 Meriv. 480 ; 1798, ch. 101, sub ch. 8, s. 7; 1802, ch. 101.

 Brooks v. Reynolds, 1 Bro. C. C. 183; Drewry v. Thacker, 3 Swan. 544; Jackson v. Leaf, 1 Jac. and Wal. 229; Clarke v. Ormonde, 4 Cond. Chan. Rep. 47.

 Waite v. Temple, 1 Cond. Cha. Rep. 162; Greig v. Somerville, 4 Cond. Cha. Rep. 453; Conway v. Green, 1 H. & J. 151; 1718, ch. 5, s. 3; 1798, ch. 101, sub ch. 14, s. 6.

 Perry v. Phelips, 10 Ves. 39.

 Leech v. Leech, 1 Cha. Ca. 249; Brooks v. Reynolds, 1 Bro. C. C. 183.

 Atherton v. Worth, 1 Dick. 373; Downes v. Thomas; 7 Ves. 206; Weld v. Bonham, 1 Cond. Cha. Rep. 361; Gray v. Chaplin, 1 Cond. Cha. Rep. 454; Newton v. Egmont, 6 Cond. Cha. Rep. 265 ; Strike’s case, 1 Bland, 94; Williamson v. Wilson, 1 Bland, 430.

 Martin v. Martin, 1 Ves. 211.

 Kenyon v. Worthington, 2 Dick. 669; Perry v. Phelips, 10 Ves. 40; Drewry v. Thacker, 3 Swan. 543.

 Clarke v. Ormonde, 4 Cond. Cha. Rep. 47.

 Atherton v. Worth, 1 Dick. 375.

 Downes v. Thomas, 7 Ves. 206; Weld v. Bonham, 1 Cond. Cha. Rep. 361; Gray v. Chaplin, 1 Cond. Cha. Rep. 451; Williamson v. Wilson, 1 Bland 430.

 It has been provided by a late act of assembly, that in certain cases, a creditor’s bill may be filed against a corporation, 1832, ch. 306, s. 4

 1 Eq. Ca. Abr. 149; Coleman v. Winch, 1 P. Will. 777; Mathews v. Jones, 2 Anstr. 506; Craig v. Baker, ante 238.

 Solley v. Gower, 2 Vern. 61; Plunket v. Penson, 2 Atk. 291; Ex parte, Moreton, 5 Ves. 449; Bac. Abr. tit. Heir and Ancestor, F.

 3 W. & M. c. 14.

 Wilson v. Knubley, 7 East. 128.

 1797, ch. 113.

 Gawler v. Wade, 1 P. Will. 99; Galton v. Hancock, 2 Atk. 432.
Orchard v. Smith. — This bill was filed on the 31st of August, 173S, by John Orchard, Robert Pearle, William Cumming, and Jonathan Davis, against John Smith and Mary his wife, and Peter Hoggins. The bill states, that Gunder Erickson, deceased, being, in his life-time, possessed of a considerable real and personal estate, and being, at the same time, indebted to sundry persons, in order to pay his debts, in case his personal estate should fall short, on the 17th of March, 1728, by his last will devised as follows: ‘ It is my will and desire, that a certain tract of land belonging to me, lying on Rock Creek, called Norway, containing six hundred and thirty acres ; and another tract of land containing two hundred acres, called Garden’s Delight; likewise two houses and lots in Nottingham, in Prince George’s county; and my right to a house and lot in Queen Ann Town, all be sold in order to discharge the debts I owe;’ and then appointed his wife,, the defendant Mary, his sole executrix; that in a short time thereafter he died; that she, Mary, caused the will to be proved; but renounced the administration thereof; whereupon letters of administration, with the will annexed, were granted to the defendant Hoggins, who acted as such accordingly; that the deceased was indebted to the plaintiff Orchard, in the sum of.£13 Is. 6d. current money; to the plaintiff Pearle, in the sums of 4,246 lbs. of tobacco, and £28 5s. Od.; that they severally sued the administrator Hoggins, who pleaded that he had fully administered, whereupon they obtained judgments against him therefor, when assets should come to his hands; that the deceased was-indebted to the plaintiff Cumming, in the sum of 2,638 lbs. tobacco; that *319 the defendant Mary afterwards married the defendant Smith; who have hitherto refused to sell the said lands, unless thay be compelled and justified in doing so by a decree of this court. Whereupon it was prayed, that the said lands, or so much thereof might be sold, as would be sufficient to pay the deceased’s debts and the costs and charges of the person empowered to sell the same.
On motion of the defendant Hoggins, by his solicitor, it was Ordered, that the said name of Peter Hoggins be struck out of the said bill of complaint.
The defendants Smith and wife, by their answer, admitted that Gunder Erickson, deceased, did make his will, as in the bill mentioned, and that on the defendant Mary’s renouncing the executorship, administration was granted to Peter Hoggins; that the said Erickson, by his will, devised to the defendant Mary, in fee simple, half of the tract of land on which he lived, in lieu of her dower, which she accepted as such ; that after the marriage of these defendants, the plaintiff Cummings, and Eobert Tyler, bond creditors of the deceased, sued these defendants, as devisees, and recovered judgments against them, by virtue whereof they paid to the said Cumming 3,357 lbs. tobacco, and to the said Tyler 9,602 lbs. tobacco ; that the defendant Mary, was ready to do what the court should direct for the sale of the said land, and had not refused to do what was right therein, consistent with her security and safety as trustee; but these defendants insisted that the bond debts, due from the deceased, which they had paid, together with the costs, should be allowed to them out of what should be raised by a sale of the said lands; that they were strangers to, and ignorant of, the claims of the plaintiffs against the deceased; and therefore no more should be allowed to those creditors than what might appear to be justly due ; and these defendants hoped that, as the defendant Mary was only a trustee involuntary, the costs and charges expended by them in this suit might be paid to them, in the first place, out of the moneys arising from the sale of the lands devised to be sold.
May, 1739. — It was Ordered, in presénce of the counsel on both sides, that there should be a hearing of the said cause the next court on bill and answer.
30th October, 1739. — Ogle, Chancellor. — This case coming on to be heard in presence of counsel on both sides, the complainant’s bill and the defendant’s answer thereto being read, appeared to be as the same, are hereinbefore recited and set forth.
Whereupon it is Decreed,, that the lands and premises mentioned in the said bill to be devised for payment of the debts of the said Gunder Erickson be accordingly sold by the master to the best bidder, and that the master for that purpose give public notice, by causing printed advertisements to be set up in the most public places, of such intended sale; and also, that the said master cause public notice, in like manner to be given, that all the creditors of the said Gunder Erickson should come in and prove before the said master their respective debts, before the 28th day of February, or that, in default thereof, such creditors will be excluded from any share or proportion of the produce arising by the sale of the said lands and premises, and this court doth further Decree, that the money or tobacco arising by such sale shall be applied by the master, in the first place, for the payment of the complainants’ and defendants’ costs of this suit; and all other necessary charges and expenses in the sale of the said lands and premises, and performance of this decree; and in the next place, to the payment of all debts whatsoever due from the said Gunder Erickson, in proportion, which shall be proved before the said master, before the 28th day of February; and then, if any money or tobacco shall remain, after payment of the said, costs, charges, and expenses and debts, the same shall be applied for the payment of *320 the said 3,357 lbs. tobacco, and 9,602 lbs. of tobacco, and the costs of suit mentioned in the said answer of the defendants John Smith and his wife; and if any surplus shall, after such several payments, remain, the same shall be subject to the further directions of this court. And this court doth further Decree, that the said John Smith and his wife shall, upon oath, produce before, and leave with, the master, what title deeds they, or either of them, may have in their, or either of their possession relating to the said land and premises; and that the said Mary Smith, as executrix named in the will of the said Gunder Erickson- shall execute, according to law, such deeds and conveyances of the lands and premises to the purchaser or purchasers thereof as to the said master shall seem proper; so that the same shall not contain any clause or warranty to affect, bind or charge the said defendant Mary Smith, or any estate belonging to her, in her own right; and that the said Mary Smith be indemnified therein by virtue of this decree; and that all parties, as well as any creditors, have leave to apply, from time to time, to this court for further directions in the execution of this decree.
After which, the case having been again brought before the court,
February, 1740. — Ogle, Chancellor. — Upon motion, it is Ordered, that- the creditors of Gunder Erickson have further time till the 26th of March next to prove their respective debts before the master. — Chancery Proceedings, lib. J. R. No. 4,fol. 89 to 94, and 163.

 1797, ch. 113.

 Hughes v. Doulbin, 2 Cox, 170; S. C. 2 Bro. C. C. 614; Pow. Mortg. 69, 325.

 2 Fonb. 403.

 Newton v. Bennet, 1 Bro. C. C. 136; Lingard v. Derby, 1 Bro. C. C. 311; Powell v. Robins, 7 Ves. 209; Bailey v. Ekins, 7 Ves. 322; Shiphard v. Lutwidge, 8 Ves. 26; Leigh and Dal. Equ. Conver. 10, 13.

 1785, ch. 72, s. 4.

 Ex parte Margaret Black, 1 Bland, 142, note.
Ex parte, Boone. — This petition was filed by Charles Boone and others on the 13th of May, 1791; it states that the late Stephen Boone, by his last will, had directed his lands to be sold, and the proceeds to be divided among the petitioners; but had appointed no person to make the sale. Whereupon it was Decreed, that a trustee be appointed, &c. &c. who made and reported a sale accordingly.
25th January, 1792. — Hanson, Chancellor. — Ordered, that the report of Gabriel Duvall, trustee for the sale of the real estate of Stephen Boone, deceased, be approved ; and that his proceedings, and the sale therein mentioned, be approved, ratified, and confirmed; unless cause shall be shewn to the contrary on or before the fifth day of next February term.
No cause having been shewn, the case was submitted to the court.
9th June, 1792. — Hanson, Chancellor. — Ordered, that the sale be absolutely ratified, &c., and that the said trustee may assign any of the bonds by him taken, on the said sale, to such person or persons as is or are entitled to an assignment agreeably to the decree of this court, and the will of the said Stephen Boone.
Upon the petition of Margaret Howard, and the exhibit, therewith filed, the case was again brought before the court.
9th June, 1795. — Hanson, Chancellor. — Ordered, that Gabriel Duvall, trustee for the sale of the real estate of Stephen Boone, deceased, do assign and deliver unto John Merriken, the guardian of the said Margaret Howard, appointed by the Orphans Court of Anne Arundel county, the bond taken by the said trustee, on the sale of the said estate, of Gassaway Watkins, with Zachariah Duvall and Ephraim Duvall, sureties for the principal sum of five hundred pounds, dated 22d July, 1791; and that the said trustee assign the said bond to the said guardian in trust for the said Margaret Howard, after having endorsed the same, if required, with the affida *322 vit by law required, for enabling the said Merrilcen to support an action at law on the said bond, in his own name.
Ex parte, Tongue. — This petition, filed on the 1st of February, 1794, states, that the late Richard Cowman died seized of certain real estate, a part of which he directed to be sold for the payment of his debts; and appointed his executors Ann Cowman, Thomas Tongue, and Joseph Cowman, with power to sell, &.c.; that Ann Cowman is dead; and that a sale is necessary to pay the debts of the deceased. Whereupon it was prayed that a trustee be appointed to make sale, &c.
10ft July, 1794. — Hanson, Chancellor. — On the said petition, and the last will and testament of Richard Cowman, therewith exhibited, it is Decreed, that the petitioners, Thomas Tongue and Joseph Cowman, be, and they are hereby appointed trustees for selling the lands of the said Richard Cowman, which, by the said last will and testament, the executors are authorized to sell; and that they, or the survivor of them, in case of the death of either, have full authority to sell such part of the said lands as they shall think necessary; and that the manner and course, &c. (in the usual form, concluding thus) And the said trustees or trustee, at the time of giving notice of the sale, shall give the like notice to the creditors of the said Richard Cowman, to exhibit their claims, with the vouchers thereof, to the Chancellor, within three months from the time fixed by the said trustees or trustee for the first sale.
After which, a sale was made, reported, and ratified accordingly.
Exporte, Bebby. — On the fourteenth of May, 1796;'Jeremiah Berry filed his petition to have a trustee appointed to sell the real estate of the late Benjamin Berry, according to the provisions of his will. A decree was passed accordingly, on the same day, appointing Edward Nicholls trustee for that purpose; who, after having sold a part of the estate, left this state, went to England, and had not returned. Whereupon, the purchaser, John S. Brooke, by his petition, prayed that another trustee might be appointed to convey the land to him, &c.
14ft May, 1803. — Hanson, Chancellor. — The Chancellor has considered the petition of John Smith Brooke, this day filed; and it appears to him, that, if the facts therein stated, be true, justice requires that the prayer of the petition ought to-be granted, by appointing a trustee in the room of the trustee who hath gone out of the jurisdiction of this court. Relief, indeed, might perhaps be obtained on Brooke’s filing a bill against the heirs of Benjamin Berry, stating every thing which hath taken place under and since the decree; but it appears to the Chancellor notwithstanding, that the appointment of another trustee not being injurious to any party Whatever, unless to the absent trustee, who ought, long since, to have completed his trust ought to be made; the Chancellor being authorized to appoint a trustee or trustees.
It is Decreed, that Alexander C. Magruder be, and he is hereby appointed trustee, with full power to do any act which, by the decree in this cause, the said Edward Nicholls is authorized to perform, and which he hath not performed; and particularly, that the said Magruder, on the said Brooke’s pdying to him the purchase money, with interest, of the land of Benjamin Berry, to the said Brooke, by the said Nioholls sold, or producing to him to be here filed, receipts in writing for the said purchase money, with interest, from the parties entitled, by the order of this court, to receive the said money when here brought in, shall, by a good deed, ac *323 knowledged, and to be recorded according to law, convey the said land to the said Brooke, as by the original decree, Nicholls is directed to convey. Provided, that, before the said Magruder shall act as trustee, he shall file a bond to the state of Maryland, executed by himself, and at least one surety, approved by the Chancellor, in the penalty of eighteen hundred dollars, conditioned for the faithful performance of the trust reposed, or hereafter to be reposed in him by the Chancellor; and provided, too, that if the said Nicholls hath not departed out of the jurisdiction of this court, every thing herein contained shall be null and void. In case the said Magruder be authorized to complete, and shall complete the said trust, he shall be allowed a commission of five per cent, on the amount of the sale. And whereas the quantity of the land sold to Brooke is uncertain, the said Magruder is hereby authorized to ascertain the same, and whatever reasonable expense is by him incurred, in so doing, shall be allowed.
And it is further Ordered, that the sale made by the said trustee Edward Nicholls, be absolutely ratified, no cause having been shewn, &c. although notice, &c. And it is Ordered, likewise, that the auditor of this court state the application of the money arising from the sale, agreeably to the directions of the said Berry’s last will, deducting first the costs of suit and a commission of one and a half per cent, to the aforesaid trustee, who, it appears, hath left the state without completing his trust. Before the auditor can state as aforesaid, he must ascertain from proof, who are the persons entitled to said money.
Ex parte, Zimmekman. — This petition, filed on the 6th of July, 1802, states that the late George Beckenbaugh, by his last will, directed that his wife and children should be supported out of the rents and profits of his real and personal estate, until his real estate could be sold to advantage, without loss to his wife and children; that the proceeds of the personal estate are wholly insufficient' for the support of the widow and children ; that the land might be then advantageous!y sold; but that no person had been appointed to make the sale. Whereupon it was prayed that a trustee might be appointed to make the sale, &c.
6th July, 1802. — Hanson, Chancellor. — Decreed, in the usual form, that the land be sold, &c.
After, which, a sale was made, reported, and ratified accordingly.
Ex parte, Conway. — This petition, filed on the third February, 1803, stated that the late George Conway, by his last will, directed ‘ that said executrix shall make over and convey unto whomsoever may become a purchaser of fifty acres of land, it being part of a tract or parcel of land called and known by the name of Aldridge, beginning, ike., and apply the money arising thereby as the rest of my personal estate, heretofore • mentioned.’ And, after some legacies, he gave all the remainder of his personal estate to be equally divided amongst his five children, &c. The petition further stated that the executrix died without having made sale, &c.
3d February, 1802. — Hanson, Chancellor. — Decreed, that the land, in the proceedings mentioned, be sold, and that Thomas Cromwell be appointed trustee to make the sale, &c.
A sale wa3 accordingly made and reported.
*324 16th April, 1803. — Hanson, Chancellor. — Ordered, that the sale be absolutely ratified, notice, &c. &c., and that the auditor make a distribution of the money according to the will of said Conway, filed in this cause, subject to the control of the Chancellor.
After which, the trustee brought into court the sum of £228 15s. 0d. arising from the sale of the said estate.
20th April, 1803. — Hanson, Chancellor. — Ordered, that the register receive the same, and, with the treasurer’s leave, deposite it in the Western Shore Treasury, to be applied agreeably to the order this day passed. Whatever there may be paid for interest is to be divided among the persons entitled to receive the principal.
N. B. The money lodged is, 3 bank notes of $20; 12 of $5; 20 of $10; and 290 silver dollars, which is equal to £228 15s. Oí?.
The auditor, having made and reported a distribution of the proceeds of sale, the case was again submitted.
23d April, 1803. — Hanson, Chancellor. — Ordered, that the money arising from the sale of the real estate of George Conway be applied agreeably to the auditor’s report ; that is to say, that there be paid to each of the five heirs therein mentioned, or his or her legal representatives, the sum of £40 11s. lOd.; and that the residue be applied to the discharge of costs and commission, &c., agreeably to the auditor’s statement. If one of the five heirs be dead, and the others are his representatives, the part of the deceased is to be divided among the others.

 Joseph v. Mott, Prec. Chan. 79; Anonymous, 3 Atk. 572; Mould v. Williamson, 2 Cox, 386.

 Marten v. Marten, 1 Ves. 214.

 Curtis v. Curtis, 2 Bro. C. C. 633.

 5 Geo. 2, c. 7; Davidson’s Lesee v. Beatty, 3 H. & McH. 612; Lands in England have been since made liable for simple contract debts, by a statute passed in the year 1834, 3 and 4 W. 4, c. 100; Calvert on parties, 152; Ram. on assets, 226; Putnam v. Bates, 3 Cond. Cha. Rep. 355.

 Preston v. Preston, 1 H. & J. 366; Lodge v. Murray, 1 H. & J. 499; Gist v. Cockey, 7 H. & J. 135.

 Kilty Rep. 143, 144, 151; 1715, ch. 23, s. 6.

 Powel Mortg. 777, 779; Armitage v. Metcalf, 1 Cha. Ca. 74; Wolstan v. Aston, Hardr. 511; Clifton v. Burt, 1 P. Will. 680; Edwards v. Warwick, 2 P. Will. 175; Galton v. Hancock, 2 Atk. 435.

 Cox v. Callahan, ante 51, note.

 1785, ch. 72, s. 5.

 Tyson v. Hollingsworth. — This bill was filed, on the 25th of May, 1801, by Nathan Tyson and others, creditors of Thomas Parkin and Francis McKenna, partners trading under the firm of Parkin Sr McKenna, against Jesse Hollingsworth and Rachel his wife, Susannah Goodwin and James Carey. The bill states that the firm of Parkin & McKenna had contracted debts to a consiííérabie amount with the plaintiffs, as appeared by the promissory notes .of the-firm therewith exhibited; that *328 Thomas Parkin, by his last will, devised all his estate, real and personal, to the defendant Rachel, his mother, and appointed her his executrix, and soon after died ; that she was, at that time, above twenty-one years of age; and on her refusing to act as executrix, letters testamentary, with the will annexed, were granted to the defendant Susannah; that, afterwards, Francis McKenna made his last will, by which he appointed the defendant James Carey, his executor, and soon after died; upon which the defendant Carey, qualified as his executor. The bill further states, that Thomas Parkin and Francis McKenna, at the time of their death, were considerably indebted, as appeared by the accounts of the defendant James Carey, passed before the Orphans Court, and exhibited as a part of the bill; and that all their partnership effects and personal estate were insufficient to discharge their debts; and that the whole of their partnership effects, and their personal estate, had -been exhausted in the payment of his debts; and that there remained then, due from the estate of Parkin & McKenna, to the plaintiffs, a considerable sum of money; that the testator Francis, left no real estate; that the testator Thomas, held, at the time of his death, ten shares of bank stock, which had passed into the hands of his administratrix, the defendant Susannah; that he had died unmarried, and without issue, seized of real estate; but left no brother or sister of the whole or half blood; nor any issue of a brother or sister; nor did he leave a father; and that his mother, who was his heir at law, claimed the real estate left by him, as his devisee; and had taken possession, and received the rents and profits thereof accordingly. Whereupon it was prayed the defendants Jesse and wife might account for the rents and profits of the real estate; that the defendants Susannah and James, might account for the personal estate of their respective testators, and that the real estate devised to Rachel might be ordered to be sold, &c.
The defendant Carey, by his answer, said that he had passed an account as executor, before the Orphans Court, and distributed a large amount m payment of debts due from the firm of Parkin & McKenna, leaving considerable sums still due, &c.
The defendants Hollingsworth and wife, and Susannah Goodwin, by their answer, objected to the accounts of the defendant James Carey, as passed by the Orphans Court, in many particulars; and averred that, if all the effects had been fully accounted for, and applied by him, there would have been assets sufficient to pay all; or, at least, leaving a small balance due; and they say they do not know, or admit, that the debts stated in the bill are due; and they put the plaintiffs upon the proof thereof. These defendants admit the other facts as set forth in the bill, &c.
A commission was issued to take testimony, and returned with sundry depositions, documents, and admissions of the parties; from all which, the indebtedness to the plaintiffs was established substantially as charged; but the insufficiency of the personal estates of the deceased debtors; or of the separate personal estate of Thomas Parkin, deceased, was in no other manner averred in the bill than as stated above, or shewn by the proofs, than by the accounts of the defendants Carey and Goodwin, which they had passed before the Orphans Court.
SOth December, 1803. — Hanson, Chancellor. — This cause standing ready for hearing, and being appointed, with notice to all parties, to be heard this day; and the counsellor the defendants being absent; and the cause being thereupon submitted by the complainant’s counsel, the bill, answers, exhibits, depositions, and all other proceedings were, by the Chancellor, read and considered,
Whether or not, in case of a deficiency of assets in .the hands of the executor or administrator, this court can decree a sale of a real estate devolving on a person of *329 full age, hath heretofore been considered doubtful. In fact, there has been no such decree in this court. And in one case, where creditors, several years since, filed a bill against the heir of full age, who, by his answer, expressed his willingness to have the land sold for paying all the creditors, the Chancellor refused to execute the power. He has since often reflected on the subject, and thought that, in that case, he might be wrong. For, inasmuch as an executor or administrator is suable in this court, on the ground of discovery, and land is, in this state, liable for all debts, as well as the personal estate, there seems no reason wherefore an heir should not be sued on the same ground. Indeed, this very case shews the propriety of this court exercising the jurisdiction. Here is a dispute between the executor of one partner and the administrator of the other partner, and an heir and devisee, as well as between them all and the creditors: and if the creditors were referred to a remedy at law, it would be almost, if not altogether, impracticable to obtain it. But here, if the Chancellor be right in his present opinion, the remedy is easily attainable; all parties being compellable to account, in order to shew what is the amount of real and personal assets, as well as to shew what are the just claims against the deceased; and the interference of this court being obviously to the advantage of all parties.
It is Decreed, that the defendant James Carey, shall account for the personal assets in his hands, as executor of Francis McKenna, surviving partner of Parkin &, McKenna, both in the right of the said McKenna alone, and of McKenna as surviving partner aforesaid. That the said Susannah Goodwin, as administratrix, with the will annexed, of Thomas Parkin, shall account for the assets in her hands. That the auditor of this court shall state the said accounts, &c. He shall state the several claims of the complainants, &c.
And inasmuch as it appears that the claims of the complainants, although not yet precisely ascertained, will require a sale of the real estate in the bill mentioned, and the complainants have expressed their wish and consent, that the Chancellor decree an immediate sale; it is further Decreed, that the said two parts of the said two tracts of land, together with the improvements thereon, be sold; that Samuel Chase, jun. be and he is hereby appointed trustee for the said sale, &c. &c.
The trustee, on the 15th of May, 1804, made sales of parts of the real estate, as directed by this decree ; which sales, with the consent of the parties, were, on the 11th of October, 1804, finally confirmed; and the trustee was directed to give notice, by advertisement, to the creditors of Thomas Parkin, deceased, and of Parkin & McKenna, to file the vouchers of their claims in the chancery office, on or before the 15th of February then next. After which, the auditor reported a statement of the claims which had been brought in and established, with interest upon each up to the day of sale, leaving a large deficiency in the proceeds of sale. Upon which, a further sale was ordered.
On the 19th of November, 1804, the defendants Hollingsworth and wife, by their petition, stated that the decree had been passed in their absence; that they had no knowledge of the dormant claims against the testator Parkin; that the personal estate was sufficient to pay all; and that the last order for a further sale had been obtained by surprise. Whereupon they prayed to be heard; and that no further sale might be made, &c.
20th November, 1804. — Hanson, Chancellor. — It is true that the decree was passed *330 in the absence of Hollingsworth’s counsel; but it was because his counsel did not attend the appointment which had been made; and because the suit, after some delay, was submitted, without argument to the Chancellor. The Chancellor, on revision of the papers, conceives that he was perfectly correct in decreeing the real estate of the deceased to be sold; and likewise in ordering a new sale. It appears that the claims, fully established, exceed the amount of the sales several thousand dollars, and that no opposition was made by the defendants to a second sale; and that the-said petition contains the only objection which has been made to the proceedings. The Chancellor saw no reason then, wherefore the second sale should not take place. However, on the petition of the said Hollingsworth, it is Ordered, that the sale advertised by the trustee, Samuel Chase, be postponed until further order.
As Mrs. Hollingsworth is the sole representative of Mr. Parkin with respect to both real and personal estate; and as whatever surplus of the money arising from the sale of either would belong to her, the Chancellor did not hesitate to do justice to the creditors, by passing such a decree as would provide effectually for the discharge of their claims, without injury to the defendants. Indeed he conceived that his decree was calculated to benefit the defendants, full as much as the creditors of Parkin. Suppose, for illustration, actions at law, brought by the creditors. On the papers in this cause, it is by no means clear, that when the decree was passed, the Chancellor had any power over the bank shares. If the defendants wish to apply them to the payment of Parkin’s debts, they, most assuredly, can do so of their own accord. Dormant claims are such as have not been announced to the debtor, or person chargeable with them. It is not proper to call a claim against Parian dormant, merely because it was not exhibited in this court until it was called for. In short, the Chancellor is fully satisfied of the propriety of all his proceedings in this cause, prior to the petition aforesaid. If the proceeds of the sales, already made, with what the defendants shall voluntarily apply, shall be inadequate to the discharge of all the claims here exhibited and established, the Chancellor must assuredly do his duty in directing a new sale.
On the first of February, 1805, Jesse Hollingsworth and wife filed a bill here against these plaintiffs, Nathan Tyson and others, for the purpose of having the sale of the real estate, made under this decree, annulled. The defendants answered, the case was brought to a hearing; and the bill was dismissed by a decree of this court; which decree was, on appeal, affirmed by the Court of Appeals, on the ground that the defect in a certain deed, which formed an essential link in the chain of title, had been cured by the act of 1S07, ch. 52, just then passed, and while the case had been held under advisement by that court. 2 H. & J. 230.
After which, the trustee who had been appointed to malee the sale, by his petition, referring to this suit, and exhibiting a copy of the decree of the Court of Appeals, prayed that the decree of the 30th of December, 1803, might be executed.
14th January, 1808. — Kilty, Chancellor. — In regard to that part of this petition which relates to the personal estate, the Chancellor is, at present, under the impression that the decree for account of the personal estate will comprehend all the assets on hand at the time of the decree, and since received up to the time of taking the accounts. The decree being confirmed, the auditor will, of course, proceed to take the accounts, after giving notice as directed thereby; and on his report it will appear what assets are unaccounted for; and such decision will be made thereon as may appear proper. The trustee will, on the affirmation which has taken place, proceed, *331 of course, to the collection of the money due on the sales which have been made. As to that part of the petition which is for a further sale, there might be sufficient-evidence among the papers to justify an original order or decree for such further sale. But, inasmuch as by the order of the late Chancellor, of the 20th November, 1804,-the sale therein mentioned was postponed till further order, and was not delayed» solely by the appeal, it appears proper that the parties should be heard in support of and against the petition for the said postponement, by Hollingsworth and wife, of the 19th of November, 1804. The present petition for a further sale,-will, therefore, be heard, on application, on the first day of the ensuing February term: Provided a-copy thereof, and of this order, be served on the said Jesse Hollingsworth,-or either' of his counsel, appearing in the suit, before the first day of February next.
On the 29th of January, 1808, Elisha Tyson, John Heslip and others, by their' petition, stated that they had each of' them purchased a part of the real estate in the' proceedings mentioned, the title to which had been drawn in question by the bill' filed on the first February, 1805, by Hollingsworth and wife; that they had purchased upon a representation, and in confidence, that they should obtain a good title, which could not have been made to them until after the deed had been made good by the act of 1807, ch. 52; that if they had had possession, and had improved the same before that time, they must have done so at their own risk; in consequence of which, they had not taken possession of, or improved, the property so purchased by them, or derived any benefit therefrom; but that they were then willing to keep it; provided they were not compelled to pay interest on the purchase money, which the trustee threatened to malee them pay. Whereupon they prayed relief, &c.
30fh January, 1808. — Kilty, Chancellor. — The Chancellor cannot decide a matter which may be so important as to the principle and the amount on the petition as it stands. There must be either a petition or a bill, making the creditors, who were complainants in the suit, parties, as well as the trustee.
On the 2d of March, 1808, the auditor made a report, in which he says that he had stated an account between the estate of Parkin So McKenna and the trustee; that he had charged the said estate, with the amount of claims in account No. 1, including interest to the 15th of May, 1804, the time when the said sales were made, and interest on the aggregate then due to this day, and the trustee’s commission; and that he had credited the estate with the amount of sales to this day, as directed by the trustee;’ and there appears to be the sum of $3,871 deficient in discharging the said debts from the sales of the real estate, besides the payment of the costs arising in this court, as per account No. 2 more fully appears. He further says that he had stated another account between the said estate and the trustee, charging the said estate with the amount of claims, as stated to the 15th of May, 1804, and' interest on the principal sums then due on each claim, to this day, and the trustee’s commission; and credited the amount of sales and interest as aforesaid; and there is a deficiency, by this mode of statement, of $2,287 99, as per account No. 5 more fully appears. The auditor further says that he had examined the accounts produced by the defendant Carey, the executor of McKenna; and stated an account between the said executor and the estate of Parkin & McKenna, to shew the assets which came to his hands; and there appears a balance of $4,491 83 in his hands, of the personal estate ; for which sum there has been no order of the Orphans Court for the application thereof, as per account No. 6 more fully appears. That of the said executor’s accounts No. A. *332 and B. appear to have been settled by the Orphans Court, where he has been allowed a commission on $50,852 27, amounting to $5,085 84. That exhibit C, is an account wherein he is charged with additional sums received, amounting to $4,427 67; and he charges the estate with a dividend paid $18 41 ¡ and the sum of $105 37 for disbursements for which he has produced receipts; except for the two first items amounting to $9 37; and it is to be observed, that out of the sums contained in this account, there has not been any commission allowed the said executor, &c.
To this report of the auditor the plaintiff excepted, impeaching the correctness and validity of the claims of several creditors. And they also excepted to the account of the defendant Carey, the executor; because he had been allowed a commission of ten per cent, on the payment of debts due from the said estate, which amounted to $5,085 84; and yet the auditor had given him credit for the following sums of money, to which he was not entitled either in law or equity. The sum of $17 30 paid for drayage and postage. The sum of $176 paid James Winchester as a fee. The sum of $5 paid Yundt & Brown for advertisement. The sum of $8 37 paid for copies. $90 paid John Purviance as a fee; and $6 paid sundry printers.
On the 3d of March, 1808, the defendants Hollingsworth and wife, by their petition, objected to this report of the auditor; because, by one statement, he had allowed interest on interest, from the 15th of May, 1804, to this time. That, by another statement, it appeared that the deficiency for payment of debts was only $2,287 99. That there appeared to be a balance in the hands of the defendant Carey, of $4,491 83, -which was more than sufficient to pay the deficiency, as shewn by either statement. Whereupon it was prayed that the defendant Carey, might be directed to bring into court, or pay into the hands of the trustee appointed to make sale of the real estate, under the decree of the 30th of December, 1803, the sum of $3,871, which would be sufficient to meet any deficiency; and that the balance of money and properly in the hands of the defendant Carey, might be paid over to the defendant Goodwin, the administratrix, who was also the trustee, to whom all the property of the defendant Eachel, had been conveyed in trust for her benefit.
3d March, 1808. — Kilty, Chancellor. — The Chancellor has taken up the above exceptions, on the motion of the counsel for Hollingsworth and wife, James Carey being in court, and apprised thereof. He is of opinion that the sum of $176 and $90 ought not to have been allowed in the manner they are charged by the Orphans Court. By the former law the court might have allowed five per cent, on the debts collected, so as to cover all extra expenses; but this was discretionary. For the defence of suits, and even the legal costs, could not be allowed without a certificate from the court; and the only mode seemed to be a contribution of the persons interested, for extra expenses. Considering the amount of the commission, in addition to these reasons, the auditor is directed to strike out these charges, retaining the others herein excepted to, and to state the balance accordingly.
With regard to the petition of Hollingsworth and wife, it does not appear to be conformable to the decree to order the money to be paid to the trustee, by James Carey. But he is directed to pay into this court, that is, to the register, at present, the sum of $3,871, part of the balance in his hands, subject to the further order of *333 the court, with liberty to pay in the residue. The other part of the petition to be decided on further consideration.
Soon after which, the case was again submitted for further directions,
8th March, 1808. — Kilty, Chancellor. — In this suit, in which there was a decree for the sale of the real estate of Parkin, the Chancellor, on the application of the counsel for the parties interested in the residue thereof, and on the submission of the trustee, being also the counsel for the complainants, has examined the several accounts stated by the auditor, and considered the exceptions to them.
He is of opinion that the account with the trustee, No. 5, which was stated by desire of the counsel for the defendants, is not conformable to the established practice of the court, and that justice does not require a departure from that practice so as to confirm that statement. The Chancellor is further of opinion, that the account with the trustees, No. 2. would be entirely conformable to the established principles and practice, if the amount of the claims and commissions had not exceeded the amount of the sales. The reasons for the practice are obvious. The bonds taken on the sale, being on interest, that interest ought to be applied to the interest accruing on the aggregate of the debts due at the time of sale; because, if the sale was for ready money, it could, at once, be applied to discharge those debts; and the estate, by this practice, pays no more interest than it receives. But, in account No. 2, the interest charged, as per account No. 3, is $6,770 47; and the interest computed, as due from the purchase, to the same day, is only $6,256 87 ; making a loss or difference of $513 60. All difficulty would have been avoided if the claims had been previously ascertained, or if the amount of the sales made had been sufficient to meet or exceed -them, together with the costs and commissions. As the business stands, the Chancellor is of opinion that the deficiency to be provided for by a further sale; or, in the first place, by tbe sum due from James Carey, as executor, of McKenna, is to be ascertained by stating an account or accounts, on the principle of the one which is prefixed to this order, which deficiency will be $3,357 40. The claimants and the trustee being considered, at present, as entitled to interest in proportion to that which is due from the purchasers. The above deficiency will be taken as principal, to bear interest from the time of the payments made from the first Sale, if a second sale should be necessary. But if the purchasers should succeed in getting a deduction of the interest, a different order must be made; and therefore it does not appear necessary that the accounts should be stated at this time, unless requested by either parly. The costs of the suit are to be taken out of the next sale, or the sum in the hands of James Carey.
After which, by consent, much additional testimony was taken, returned and filed: upon all which the case was again brought before the court, and the petition, filed on' the 29th of January, 1808, was again particularly presented for consideration.
12th July, 1808. — Kilty, Chancellor. — It is now represented that there will be a sufficiency from the payment made by James Carey, as executor of McKenna, to satisfy all the creditors; and it is stated, as an amendment to this petition of the purchasers, that Hollingsworth and wife are solely interested; and they are prayed to be made parties thereto. The trustee does not appear to consider himself bound, as such, to take any measures as to this petition; but has agreed in support of it as *334 counsel for the petitioners. No answer has been put in by Jesse Hollingsworth and wife; but the petition has been approved by counsel on their behalf; and there is an agreement as to the testimony to be read on the hearing. At the present term the said petition was argued, and has since, together with the testimony taken, and the proceedings under the bill filed on the 1st of February, 1805, as far as they related thereto, been considered.
The Chancellor is of opinion that the relief prayed for in the said petition ought not to be granted. The cases which were cited to shew the practice in England, are not considered as applicable to sales under the decree of this court, in which the purchase money is directed to be secured by bonds bearing interest from the day of sale; and in which the possession is generally delivered; and even in cases where possession has not been obtained until the removal of the crop, that circumstance has not been viewed as a bar to the payment of interest, without an express agreement to that effect. But the purchasers have been supposed to regulate their prices accordingly. There may be cases in which a reduction of the interest might be ordered or decreed, as where the possession could not be obtained, and the injury could be estimated with certainty. But, in such cases, the steps taken by the parties, the time of their application, and all other circumstances, would be taken into consideration; and with regard to the actual possession, the person who held it might, probably, be made to account for it, and make up the deduction to the other party.
In this case, the purchasers have not been deprived of the possession j nor have Jesse Hollingsworth and wife been benefitted by it. Without giving any opinion as to the merits of their claim, it may be said that they had a right to submit it to the decision of this court; for which, as far as the purchasers were incommoded by being made parties to the suit, they might have been recompensed in the allowance of their costs. It appears, also, some injury or loss may have been sustained by them in consequence of uncertainty as to their title which the said suit occasioned, and the influence which it had as to the improvements; but it is considered! that it was in their power, by a timely application, to have got rid of this inconvenience by getting released from their purchases ; or, at least, that they ought to have made-their application, at that time, by bill or petition, instead of resting their claims: upon the statements made in their answers. And upon such a bill or petition, their title to relief, and the manner of granting it, might have been examined and decided. It is true, they stated in their answer that they had, by the conduct of the complainants Hollingsworth and wife, been deprived of the benefit of making any improvements on the lots so purchased; and they prayed that they might not be compelled to pay interest on their respective purchases; on which part of their answer no order was taken.
The agreement for taking the testimony is certainly a very favourable one for the petitioners, as they are enabled to give evidence on their own behalf, and to state, not only the facts which took place, but their opinions and determinations as to the property, some of which could be known only to themselves. But while the fullest credit is given to the facts which are thus admitted in evidence, the Chancellor cannot ground his decision on their statement of their willingness to relinquish their purchases rather than pay interest; or, on the impressions which they have taken up on the subject. And although there is in the testimony, a difference in the cases, so that the relief, prayed, if extended to some, might not be given to others, yet there is not, in any of them, such a plain ground of equity as would justify the *335 court in talcing off the interest from the debt which they contracted; nor is there sufficient evidence to entitle the petitioners to a partial relief; their claim to which cannot, with any certainty, be said to arise from the situation in which they were placed. The circumstance of the loss falling on Hollingsworth and wife, and not on the creditors, does not appear so material as to outweigh the objections which have been stated. And their conduct, in instituting the suit, not having been accompanied with any actual disturbance of the possession, could not, with justice, make them liable to so considerable a loss. The loss or injury to the purchasers was, in some degree, occasioned by their own fears, which, the event has proved, were not well founded; and they ought not to have the benefit, as far as it is such, of retaining their purchases without paying interest on the sum contracted to be paid. It is to be observed, also, that they might have paid, or offered to pay, the money into court; and that, notwithstanding the evidence respecting the readiness of the purchasers to make payment, it is not shewn that they kept the money dead by them ; and it is presumed that the use of money is generally, if not always, worth the interest of it.
It is, therefore, adjudged and ordered, that the said petition be dismissed, but without costs.
On the next day the case was again brought before the court for further directions.
13th July, 180S. — Kiltst, Chancellor. — The said petition being decided on, the auditor is directed to proceed in stating the accounts. The order of the 8th of March last was predicated on the ground of a further sale being necessary for the payment of the claims; but it being represented that the sum paid in, on account of the personal estate, will be sufficient to satisfy the creditors, in addition to the sale already made, that circumstance may, possibly, make some difference; and the auditor is, therefore, not restricted to the form or to the principles laid down in the order of the 8 th March, in stating the accounts; except that the account No. 5, which was stated by desire of the counsel for the defendants, is to be rejected. The auditor will state the claims excepted to by Mr. Hollingsworth, in the same manner as if passed, for the present; because there will be a sufficiency to pay all the other creditors; and those claims can be hereafter decided on. The auditor will take into the account the money paid in by James Carey, as executor of McKenna, observing that the interest on so much of the claims must cease at the time of that sum being paid in, which will appear in the proceedings.' The accounts, when stated to be reported to the court, for further orders.
The auditor reported accordingly. Some matters appear to have been adjusted by compromise, and the case seems to have soon after terminated. — Chancery Proceedings, 1803, fol. 699 to S77; S. C. 1 H. &. J. 469.

 1818, ch. 193, s. 2.

 Co. Litt. 290; Scarth v. Cotton, Cas. Tem. Talb. 198; Chaplin v. Chaplin, 3 P. Will. 368.

 1721, ch. 14, s. 2; 1729, ch. 24, s, 16.

 Creed v. Colville, 1 Vern. 172; March v. Bennett, 1 Vern. 428; Waters v. Ebrall, 2 Vern. 606; Ward v. Cecil, 2 Vern. 712; Scarth v. Cotton, Cas. Tem. Tal. 198.

 Markal’s Case, 6 Co 4; Plasket v. Beeby, 4 East. 485; Chaplin v. Chaplin, 3 P. Will. 368.

 1773, ch. 7; Pue v. Dorsey, 1 Bland, 139, note.

 1784, ch. 82.

 1785, ch. 80, s. 2.

 1785, ch. 80, s. 7.

 1785, ch. 72, s. 5; 1789, ch. 46. 1794, ch. 60, s. 2; 1799, ch, 79, s. 4 ; Baltzell v. Foss, 1 H. and G. 506.

 Charles v. Andrews, 9 Mod. 151; Bac. Abr. tit. Heir and Ancestor, I; Ram. on Assets, 152, 168.
Hindman v. Clayton. — This was a creditor’s bill, filed on the 18th of August, 1792, by James Hindman and others, against Richard E. Clayton and others, alleging that the late Solomon Clayton was indebted to the plaintiffs; that his personal estate was insufficient to pay his debts; and that his real estate descended to his children and heirs. Whereupon it was prayed that the real estate be sold, &c.
The infant defendants, answering by their guardian ad litem, admitted the insufficiency of the personal estate of their late father; and that he was indebted to the two plaintiffs, as they charged in their bill; (the amount claimed by one of them was, however, left blank in the bill and answer,) that their father did not die seized of the several tracts of land in the bill stated; but only of a fee in remainder, expectant upon an estate for life, &c.; that their grandmother Hannah Clayton is the tenant for life in the aforesaid lands, and is willing and agreed to join in the conveyance of the aforesaid part of a tract of land, called Neglect, for the benefit and advantage of these defendants; provided the creditors of their father Solomon Clayton will consent to wait for the balance of their claims until it can be raised out of the profits of the other lands above mentioned, which expectant estate these defendants humbly apprehend it would be greatly to their disadvantage to sell during the continuance of the particular estate.
31si January, 1794. — Hanson, Chancellor. — This case standing ready for decision, and being submitted on the bill, exhibits and answer, and the same, with all other proceedings, being, by the Chancellor, read and considered, and it appearing to him proper to exercise the discretion vested in him by law, in refusing the relief prayed by the bill, and that the proposal made by the defendants is fair and reasonable, and the Chancellor being satisfied of the insufficiency of the personal estate of their deceased father; and the claim of James Hindman, one of the complainants, being established to his satisfaction.
It is Decreed, that all the right, title and interest which hath descended from, or been devised by, the said Solomon Clayton, to the defendants in and to part of a tract of land in Queen Ann’s County, called Neglect, be sold for the payment of his just debts ; provided that Hannah Clayton, who appears, from the answer aforesaid, to be tenant for life thereof, shall first convey to the trustee hereafter by this decree appointed, and his heirs, all her right, title and interest therein and thereto, in trust to the intent that he shall sell the same agreeably to the directions hereof, and for the purposes herein mentioned, &c. (Peter Edmondson appointed trustee to make the sale, &c.) He shall then, provided the said Hannah Clayton shall make the said conveyance, and not otherwise, give notice by advertisement, inserted at least three weeks successively, in some convenient newspaper, and set up at convenient public places, of the time, place, manner and terms of sale; and, at the same time, and in the same manner, he shall give notice to the creditors of the said Solomon Clayton, to exhibit, within three months from the time of notice, their claims, and all the vouchers thereof, to the Chancellor.
*338 The plaintiff James Hindman, by his petition, stated that Hannah Clayton, grandmother of the defendant, in whom was an estate for life in the lands which had descended from the said Solomon Clayton to the defendants, was then dead, &c.
29th March, 1794. — Hanson, Chancellor. — Ordered, that Peter Edmondson, the trustee, shall, in case the said Hannah Clayton be dead, proceed to the execution of the trust reposed in him, in the same manner as if the said Hannah had made to him the conveyance in the said decree mentioned; and shall, in all respects, observe and follow the directions of the said decree. And it is further Ordered, that, in case the sale of the tract of land called Neglect, shall not produce a net sum sufficient to discharge the just claims exhibited, or to be exhibited to the Chancellor, the said trustee shall proceed to make sale of such part as may be necessary for that purpose of the residue of the real estate, of which the reversion or remainder descended from or hath been devised by the said Solomon to the defendants, or any of them; and which, by the death of the said Hannah, the right of possession hath devolved on the said defendants, or any of them. And the trustee, in making such second sale, shall proceed in the manner prescribed for the tract of land called Neglect; that is to say, the manner and terms of such second sale shall be the same as is prescribed for the first sale; and the trustee shall proceed as prescribed in the said decree with respect to the notice, return, bringing money into court, and conveyance of the property sold, &c.
After which it was stated, that the death of Hannah Clayton had taken place since the date of this order.
10//t May, 1794. — Hanson, Chancellor. — Ordered, that the trustee for the sale of the said Solomon’s real estate shall proceed in the same manner as if the said Hannah had died before the date of the said order; provided she be now dead.
The trustee made and reported a sale in the. usual form, which sale was on the 10th of December, 1794, absolutely ratified. And Robert Walters having filed the voucher of his claim No. 7, he thereupon submitted it for a decision.
\iih December, 1794. — Hanson, Chancellor. — Passed on a supposition, or rather a conclusion, that the executor and Orphans Court, are satisfied of the fairness and legality of the claim.
The vouchers of the claims of sundry creditors who had come in, having been submitted, with an application of the trustee for further directions.
8th January, 1795. — Hanson, Chancellor. — Claims against the estate of Solomon Clayton, deceased, established to the Chancellor’s satisfaction. The dates added to the names, are the dates from which interest is to be calculated.
Samuel Earles’ representatives,.... £91 16s. 5id. May 1, 1791.
James Harris,...... 9 15s. 0d. Oct. 28, 1792.
John Watson, . . . . 2 2s. 9d. Nov. 5, 1792.
Robert Walters, as he has received £9 4s. 0d. which is the interest for 2 years 51 days, that length of time is deducted from the time from which interest was originally chargeable, viz.
24th January, 1788,..... 71 15s. 5id. March 15, 1790.
£175 9s. 8d.
*339 Claims not established; the vouchers which the parties probably are possessed of not being produced.
Clement Sewell, (bond copy,) . £-52 4s. Sid. Aug. 1, 1784.
Isaac’ Wikoff, do. 52 2s. 4d. Aug. 1, 1799.
Esther Hindman, (supposed bond,) 25 18s. 4d. Sept. 15, 1789.
Do. do. account, . 18 5s. lid. Aug. 18, 1792.
£148 10s. 10£d.
Total of claims, as follows, . £324 Os. 6£d. without interest.
James Hindman, as administrator, &c. has a bond for £112 11s. 6Id. endorsed with receipts for £2 17s. 3d. and £5 9s. 10Id.; and also by amount of taxes, the sum not mentioned. So that the amount of his claim cannot be precisely ascertained, although his claim was the foundation of the decree. William Hemsley, one of the complainants, says in the hill, that the deceased was indebted to him by bond, &c. leaving blanks for the sum. The answer admits this blank claim. If the solicitor has the bond, he never has produced it. The neglect of creditors to send their vouchers, or of their counsel to produce them, is a source of much trouble to the Chancellor. In the present case, it seems, the trustee has received money, and the Chancellor cannot direct the application, unless he gives a preference to those whose claims are ascertained; and if he does this, it is more than probable, that clamours will ensue. He must, however, do this, unless the creditors shall think proper to produce, within a short time, the proofs by which their claims are to be supported. It is the Chancellor only who is to decide ; and, therefore, the original papers are to be lodged in the chancery office. There can, indeed, be no good reason wherefore a creditor, whose claim is allowed, and is to be satisfied, should retain the bond, note, or other thing on which his claim is founded.
By all decrees for sale, &c. the money arising from the sale, is directed to be brought into court. And this part of the decree is not only conformable to the provisions of the law, giving the Chancellor jurisdiction, but is meant for the security of those interested in the decree, in case they cannot settle the matter without bringing the money into court. This, however, is seldom done; and the receipts in writing, of the parties to whom the money is to be paid, when brought into court, are admitted instead of money; that is to say, when the claims are passed by the Chancellor, to be fully paid, or a dividend is struck by the Chancellor, the trustee may pay the money in the country, take receipts and lodge them in chancery instead of so much money.
In answer to the application of Mr. Edmondson, the trustee, this day received, the Chancellor can only say, that if a purchaser, under a decree of this court, for the sale of lands on credit, for the payment of debts, tenders the purchase money on the day of sale, and tenders the same immediately after the Chancellor’s ratification of the sale he ought not to be charged with interest. The Chancellor cannot, with propriety, give any opinion or direction on any ex parte statement, relative to a particular case.
Eor the reasons already stated, the Chancellor cannot, at present, ascertain the sum to be raised by a further sale of Solomon Clayton’s estate. • He will proceed to pass an order on the 2d of March next, for the application of the money received or to be received, on the sale already made; and it is hoped, that before that day the creditors will produce their proof.
*340 After which, some of the creditors submitted their claims upon their vouchers for adjudication and allowance.
13ft My, 1795, — Hanson, Chancellor. — Being satisfied of the justice of the claims of William Hemsley and Peregrine Tilghman, against the deceased, to the amount of £1,061 15s. Sd. including interest to this day, after deducting the payments; it is Ordered, that there be paid to the said claimants, out of the money arising from the sale of the real estate of the said deceased, the aforesaid sum of money, or that the said sum, or a part thereof, if assigned, be deducted from the purchase money due on the said sale, or credited to the purchaser.
Alter which the trustee stated, that it was highly probable, that the whole estate would be insufficient to satisfy the creditors of the deceased.
July, 1795. — Hanson, Chancellor. — The order of the 13th instant was passed, under the impression, that the estate of Clayton would be more than sufficient to discharge all his debts. It is now stated by the trustee, that it is uncertain, whether or not the part remaining to be sold will raise money enough to supply the deficiency of the first sale. The Chancellor, therefore, does not conceive it safe to discharge the whole claim, or even the whole of the net product of the first sale, the gross amount whereof is only £7S0, the sum of £540.
We the undersigned, creditors of Solomon Clayton, deceased, do hereby consent and agree, that Peter Edmondson, trustee, shall convey, in fee simple, unto Henrietta M. Clayton, widow of the said Solomon Clayton, the home plantation on which Mrs. Hannah Clayton lately dwelt, upon her, the said Henrietta, giving bond with surety to the said Peter Edmondson to pay him, to the use of the creditors, at the rate of three pounds per acre for the said plantation, upon the same terms the Honorable Chancellor of Maryland decreed the land of the said Solomon Clayton, called Neglect, to be sold. James Hindman, William Hemsley, Peregrine Tilghman, M. Earle, Cornelius Sewell, Esther Hindman.
15ft August, 1795. — Hanson, Chancellor. — Ordered, That Peter Edmondson, trustree for the sale of the real estate of Solomon Clayton, deceased, be, and he is hereby, authorized to dispose of the home plantation on which Mrs.Hannah Clayton lately dwelt, at private sale, in the manner and upon the terms mentioned in a paper this day filed, and subscribed by sundry creditors of the said deceased; and that the said trustee having so made sale, report the same, &c.
The trustee, on the 20th of February, 1796, in the form of a letter addressed to the Chancellor, reported, that he had sold the home plantation to Henrietta M. Clayton for £3 per here; that he had had the tract surveyed and found it to contain 1894 acres, and amounted to £567 7s. 6d. — which sale was on the 26th of April following, ratified and confirmed; after which, the case was submitted for further directions.
28ft March, 1796. — Hanson, Chancellor. — Ordered, that the Chancellor, on the first Tuesday in June, will proceed to decide on each of the following claims against the estate of the said Clayton, viz: the claim of Cornelia Sewell, Esther Hindman, Henrietta Braceo, and James Earle; provided, respectively, that a copy of this order be served on the claimant at any time before the fifteenth day of May next.
*341 Edward. Harris, and Thomas Airey and wife, by their petition filed on the 16th of December, 1796, exhibited a claim against Solomon Clayton, deceased, as having died, seized of land which had descended, or been devised to him by his father, Edward Clayton. They alleged, that the said Edward Clayton, with three other persons, became security in a bond for Elizabeth Harris and George Garnet, executors of Thomas Harris, father of the said Edward Hams, and the wife of the said Thomas Airey; that there was due to them, from the said executors, a large sum for filial portions; that the executors not having discharged the said claim, a suit was instituted against the said Hannah on her bond, and judgment obtained by default ; that she died, having fully administered, &c.; that then Michael Earle administered on the goods not, &c. of Edward Clayton, and died, having fully administered; that they had revived the judgment against him, and endeavoured to execute a writ of inquiry; that at length the damages were ascertained at September term, 1795, to £ 1,084 and costs; that as there is no personal estate of Edward Clayton, the lands in the hands of his grandchildren, which have come to them from him, are liable; that Solomon, their father, to whom the said lands from Edward had descended, had no personal estate; that they are entitled to be preferred to the proper creditors of the said Solomon; that they had not exhibited their claim before money had been paid to the said proper creditors; but as there is a balance in the trustee’s hands of £682 8s. 6d., they claim it in virtue of that title to preference.
20Wt March, 1800. — Hanson, Chancellor. — The claims of these petitioners, when their petition was filed, were then laid before the Chancellor who found their proofs defective, and suggested what was necessary to bring the merits of the case fairly before him. The papers have since been laid before him several times, but he always has found them defective. He has this day examined every paper filed relative to the claim, and it appears to him that several papers which had been filed are now wanted, and it is not in his power to decide according to its merits. He regrets the great delay which has taken place in this cause. From the inattention of the claimants against Solomon Clayton, and the unwillingness of the Chancellor to let them suffer from that inattention, or ignorance, it had happened that the proceeds of the sales had not been fully applied before the said Harris and Airey exhibited their claim; and the Chancellor then doubted whether or not they were not too late, a great part of the said proceeds having been paid away to only a part of the claimants. On this head he is not yet satisfied.
He now thinks proper to make a list of the papers filed in support of the claim, [Here follows a description of the papers.]
It does not appear, from the proofs, that the land sold to Mrs. Clayton at £3 per acre ever belonged tp Edward Clayton. If it did not, it is not answerable for Edward Clayton’s debts, and neither the petitioner, nor Mr. Hemsley, have a right to be paid from the proceeds of the sale of any but part of Neglect, which is expressly devised to Solomon by Edward.
There is no proof relative to the circumstances of George Garnet, or the two other securities, William Clayton and Nathan Wright. When claims are exhibited against an infant’s estate, and it appears that the debt was due from the deceased and another, or others jointly, it has been the Chancellor’s uniform practice to allow only the just proportion to come out of the infant’s estate. The practice is founded *342 on this consideration: that on an application by creditors for the sale of an infant’s estate, it is a matter of sound discretion, whether or not the Chancellor will decree a sale. He is governed by circumstances. In case of a debt due from the ancestor or devisors jointly with another who is solvent, the Chancellor might say, I will not decree a sale, or I will not suffer you to receive your debt from the infant’s estate; because you have it in your power, or had it in your power, since the ancestor’s or devisor’s death, to recover your whole claim from the other debtor. But the Chancellor conceived that to avoid circuity of action, and do justice to all, it was proper to charge the infant only his just proportion, or to admit the claim against the estate for only a just proportion. Were Garnet, William Clayton, and Nathan Wright all insolvent? Was one of them solvent, and the others not? Have any steps been taken to recover from them ? It is certain, perhaps, that they are now protected by the act of limitations; but is this a reason wherefore Edward Clayton’s estate is to be charged with the whole ?
It would have been more satisfactory to the Chancellor to have had the claim exhibited to him in the beginning, instead of the petitioners prosecuting a suit at law against the administrator de bonis non. He is not even clearly satisfied how the claim has been ascertained against that administrator.
The Chancellor is under the impression, that he long since suggested verbally the points in this case; and the proofs which were necessary. He is under an impression, that besides other papers, which are now missing, was the argument in writing of counsel. However, he has now fully explained his ideas, and suggested his doubts and wishes to have all the proof which can be obtained, to hear the counsel, and to put an end to the case as speedily as possible. He has not yet had it in his power to deeide on the true merits.
It is now proper to say something of the claim of William Hemsley and Peregrine Tilghman. Solomon Clayton having, as is proved to the Chancellor’s satisfaction, passed a bond to them, in consideration of a debt due from Edward Clayton, they did not thereby lose their lien on Edward Clayton’s land, but gained an additional security, and all Solomon’s lands are liable. As to the land coming from Edward Clayton, they are to be preferred to all the creditors, except the present petitioners. As to Solomon’s land, if any there be, which did not come from Edward, they are on a footing with other creditors. The petitioners, having a claim against Edward’s estate only, can have no title to be paid out of that part of Solomon’s land, if any there be, which did not come from Edward.
The case was again brought before the Chancellor by the trustee for further directions, and praying that his trust and the whole proceedings might be brought to a close.
8th March, 1805. — Hanson, Chancellor. — No cause has ever been before the Chancellor in which he has had so much trouble in examining the proceedings, and malting statements and orders, and instructions in writing, in order that the merits of the several claims might be brought fairly before him. He has suffered great uneasiness on account of that delay which has taken place, which may appear to be unaccountable, but which has been owing to the negligence, inattention, or ignorance, or all combined of the parties themselves. In the beginning all the claims exhibited were merely against Solomon Clayton, as if the debts were originally due from him. Had that been the case the proceeds of the sale would have been properly divided amongst the claimants in due proportion, and a considerable part of *343 each claim would have been discharged. As matters then stood, the Chancellor directed several payments to be made out of the money in the hands of the trustee. But, before the dividend was actually struck, a claim was exhibited on the part of Dr. Harris and Mrs. Airey for money due from the estate of Edward, the father of Solomon Clayton, from whom the land came to the said Solomon. Of this claim the Chancellor had never been apprised. They claimed a preference to the proper creditors of Solomon Clayton. But, inasmuch as money had been paid away, before they came into court, they professed themselves, by counsel, willing to take only the money remaining in the hands of the trustee.
After this Messrs. Hemsley and Tilghman required also a preference, on account of their claim having been founded on a debt originally due from Edward, the father. It appeared likewise, that the debt to James Anderson, was originally due from the said Edward. By far the greater part of the delay in the case has arisen on the part of Dr. Harris, whose petition was not accompanied with the necessary vouchers to establish all the points, on which his claim against the estate and the title to preference were supposed to be founded. In the course of several years, his papers have several times been laid before the Chancellor and as often found defective ; although the. Chancellor had stated his ideas, and even given full directions in writing.
The Chancellor must here refer to a statement and remarks made in writing on the 20th day of March, 1800; in which he states the practice and principles of this court, relative to joint debts, due from a person deceased, whose land, in the hands of infant heirs or devisees, is sold under a decree of this court. And he conceives, that agreeably to those principles, Dr. Harris and Mrs. Airey ought not to be allowed more than one-third of their claim, supposing even that there were enough to pay all the creditors of Edward, the father of Solomon, the son.
The trustee now comes, and applies to the Chancellor, anxious to discharge himself of the money, and to complete his trust; and under all circumstances the Chancellor thinks proper to have the business closed with as little further delay as consistently maybe.
It is Ordered, that the auditor state an account dividing in due proportion to the amount of their claims, amongst Edward Harris and his sister Mary Airey, and Messrs. Hemsley and Tilghman the money arising from the sale, after deducting the costs of suit, and the trustee’s commisson of £ 112 IOs. in which is included near £30, for surveying, advertising, &c. and the expense of several necessary journeys or voyages; and deducting too £45 paid to Ringgold in part of his claim. Dr. Harris and sister to be allowed for one-third of their claim. Hemsley and Tilghman, for their whole claim. Hindman to be allowed only for his claim as representative of James Anderson.
N. B. Inasmuch as it was plainly the fault of the said claimants in not shewing their title to preference, that £45, which was less than one-half of his claim, was paid to Ringgold, the Chancellor conceives it just, that the loss of the said sum should be proportionably borne amongst them. Had it not been for the preferences, it is certain, that each claimant would have drawn one-half of his claim ; and as dividends would have been struck before the payment to Ringgold, had not vouchers been wanting in some cases, and the precise amount of some claims uncertain. The Chancellor thought it improper to let the money lie useless; as would have been the case, if the claim of Harris and Airey had not been exhibited soon after ,the preference claimed. It was indeed fortunate that a proportionable sum was not *344 paid to each proper creditor of Solomon Clayton. Whether or not, the money can be recovered from Ringgold, the Chancellor will not give his opinion.
In obedience to this order, the auditor made and reported a statement distributing the proceeds accordingly; upon which the case was again brought before the court.
14th March, 1805. — Hanson, Chancellor — Ordered, that the money arising from the sale; great part whereof hath been long in the trustee’s hands ready to be paid, he, and it is hereby directed to be applied according to the above statement; and that the receipts in writing of any person entitled to receive the said money, be'admitted here in the place of so much money; and that, under the circumstances of the case, the trustee Peter Edmonson, be not answerable for any interest which he had not received from a purchaser. Provided nevertheless, that he without reasonable delay either deposite the said principal money in court, or receipts in writing as aforesaid for money already paid, or to be paid agreeably to the foregoing statement.

 Tyndale v. Warre, 4 Cond. Cha. Rep. 100.

 1790, ch. 38.

 Boucher v. Bradford, ante 222.

 1785, ch. 72, s.7.

 Powys v. Mansfiield, 9 Cond. Cha. Rep. 445.

 Co. Litt. 113, a. 236, a; Lancaster v. Thornton, 2 Burr, 1031; Yates v. Compton, 2 P. Will. 311; Bedford v. Leigh, 2 Dick. 709; Silk v. Prime, 1 Bro. C. C. 140, note; Curtis v. Curtis, 2 Bro. C. C. 633; 1798, ch. 101, sub. ch. 12, s. 9.

 Will. Exrs. 1012.

 Sweet v. Partridge, 2 Dick. 696; Jones v. Pugh, 8 Ves. 71.

 Good v. Blewitt, 13 Ves. 397; S. C. 19 Ves. 336; Burney v. Morgan, 1 Cond. Ch. Rep. 185; Gray v. Chaplin, 1 Cond. Cha. Rep. 451; Spittal v. Smith, 5 Cond. Cha. Rep. 275.

 Newton v. Egmont, 6 Cond. Cha. Rep. 265; Calvert on Parties, 220.

 Sumner v. Kelly, 2 Scho. and Lefr. 398; Burney v. Morgan, 1 Cond. Cha. Rep. 185; Gray v. Chaplin, 1 Cond. Cha. Rep. 454; David v. Grahame, 2 H. & G. 94.

 Ellicott v. Welch, ante 242.

 Bedford v. Leigh, 2 Dick. 707; Charles v. Andrews, 9 Mod. 153 ; Shephard v. Lutwidge, 8 Ves. 29, note; Jarrett v. Rider, 9th July, 1829.
Washington College v. Graves. — It was alleged, that the mortgaged real estate was insufficient to pay the mortgage debt; and that the whole estate, real and personal, of the deceased mortgagor, was insufficient to pay his debts. Whereupon it was prayed, that the whole, including his unincumbered real estate, might be sold to satisfy the mortgage and other creditors. The facts being admitted, the case was considered and treated as a creditor’s suit; and on the 26th of June, 1830, Decreed, accordingly, that the real estate in the proceedings mentioned be sold, &c.; and that notice be given to the creditors of the deceased to file the vouchers of their claims, &c. M. S.

 1785, ch. 72, s. 12; 1816, ch. 154; 1818, ch. 133; 1831, ch. 311.

 Lewis v. Lewis, 27th April, 1829, M. S.

 Fenwick v. Laughlin, 1 Bland, 474; (Gaither v. Welch, 3 G. & J. 264.

 Park. His. Co. Cha. 506.

 Holland v. Prior, 7 Cond. Cha. Rep. 22.

 Magna Charta, c. 18 ; Killy’s Rep. 205; 2 Inst. 18 and 32; Evelyn v. Evelyn, 2 P. Will. 664, note; Mogg v. Hodges, 2 Ves. 52; Bootle v. Blundell, 19 Ves. 518; S. C. 1 Meriv. 220; The King v. Hopper, 1 Exche. Rep. 280; Brogden v. Walker, 2 H. & J. 294. Although by the law of some other countries, the lands as well as every other kind of property of the debtor are, as at this time in Maryland, alike liable for the payment of his debts, whether due by simple contract or otherwise; yet every where the personal or moveable estate of the debtor seems to have been considered as the primary fund, which was to be first applied in payment of debts, so far as it would go, in aid of the land or real estate of the debtor; Bowaman v. Reeve, Prec. Cha. 577; Anonymous, 9 Mod. 66; Vattel, b. 1, c. 7; Code Napol. by Barret, Introd. 328; 7 Petersdorff, Abr. 527, note.

 Knight v. Knight, 3 P. Will. 331; Kenyon v. Worthington, 2 Dick. 668 ; Galton v. Hancock, 2 Atk. 435; Ashurst v. Eyre, 3 Atk. 341; Madox v. Jackson, 3 Atk. 406; Fordham v. Rolfe, 5 Cond. Cha. Rep. 257; Tyler v. Bowie, 4 H. & J. 333; David v. Grahame, 2 H. & G. 97.

 1797, ch. 114; 1831, ch. 311, s. 10 and 11; Kilty v. Brown, ante 222.

 Wankford v. Wankford, 1 Salk. 304.

 Walley v. Walley, 1 Vern. 487; Cowslad v. Cely, Prec. Cha. 83; D, Aranda v. Whittingham Mosely, 85 ; Heath a. Percival, 1 P. Will. 684; Ashurst v. Eyre, 2 Atk. 51; Madox v. Jackson, 3 Atk. 406; Will. Exrs. 227.

 Deshon v. Buchanan, 1 February, 1819.

 Gregory v. Forrester, 1 McCord. 326; Riddle v. Mandeville, 5 Cran. 330.

 Bowsher v. Watkins, 4 Cond. Cha. Rep. 424; Holland v. Prior, 7 Cond. Cha. Rep. 22.

 Elmslie v. M’Auley, 3 Bro. C. C. 624; Doran v. Simpson, 4 Ves. 651; Álsager v. Rowley, 6 Ves. 749 ; Benfield v. Solomons, 9 Ves. 86.

 Burroughs v. Elton, 11 Ves. 29.

 1798, ch. 101, sub ch. 5, s. 6.

 1816, ch. 203, s. 3; Williams v. Williams, 9 Mod. 299; Holland v. Prior, 7 Cond. Cha. Rep. 22.

 McMechen v. Chase, 19th July, 1815, per Kilty, Chancellor, on demurrer for that cause.

—(g) 2 Harr. Pra. Cha. 322; Willis, Plea. Eq. 220.

 Neve v. Weston, 3 Atk. 557; Hardcastle v. Chettle, 4 Bro. 163; Good v. Blewitt, 19 Ves. 338.

 Finch v. Winchelsea, 1 P. Will. 281; Leigh v. Thomas, 2 Ves. 313; McMechen v. Chase, 1 Bland, 85, note; Williamson v. Wilson, 1 Bland, 433.

— (j) Baldwin v. Lawrence, 1 Cond. Cha. Rep. 331.

 Good v. Blewitt, 13 Ves. 397; Johnson v. Compton, 6 Cond. Cha. Rep. 20.

 Shepherd v. Kent, Prec. Cha. 190 ; S. C. 2 Vern.435 ; Martin v. Martin, 1 Ves. 214; Anonymous, 3 Atk. 572 ; Strike’s case, 1 Bland, 84; Williamson v. Wilson, 1 Bland, 430.

 Lingan v. Henderson, 1 Bland, 236; Tyson v. Hollingsworth, ante 327, note; Hindman v. Clayton, ante 337, note

 Beauraine v. Beauraine, 4 Eccle. Rep. 456; Boraine’s case, 16 Ves. 346.

 Co. Litt. 88, note 70, and 135; Taylor v. Atwood, 2 P. Will. 643, note 1; Snowden v. Snowden, 1 Bland, 552.

 Snowden v. Snowden, 1 Bland, 553.

 Quantock v. Bullen, 5 Mad. 81.—

 Richmond v. Taylour, 1 Dick. 38; Pearce v. Pearce, 9 Ves. 548; Ward v. Ward, 3 Meriv. 706; Russell v. Sharpe, 1 Jac. and Wal. 462; Gilb. His. Com. Pleas, 54.

 Tillotson v. Hargrave, 3 Mad. 494; Scarth v. Cotton, Ca. Tem. Tal. 198.

 Quantock v. Bullen, 5 Mad. 81.

 James v. Hatfield, 1 Stra. 548; Fraser v. Marsh, 3 Com. Law Rep. 235.

 Corrie v. Clarke, 1 Bland, 86, note.—

 Richmond v. Taylour, 1 Dick. 38 ; Wall v. Bushby, 1 Bro. C. C. 488.

 Leving v. Claverly, Prec. Cha. 229; Guernsey v. Rodbridges, Gilb. Rep. 4; Fountaine v. Caine, 1 P. Will. 504; Wrottesley v. Bendish, 3 P. Will. 236; Chaplin v. Chaplin, 3 P. Will. 367; Eggleston v. Speke, 3 Mod. 259 ; S. C. Carth. 79; Legard v. Sheffield, 2 Atk. 377; Strudwick v. Pargiter, Bunb. 338; Lucas v. Lucas, 13 Ves. 274; Lechmere v. Brasier, 2 Jac. and Wal. 290; Lock v. Foote, 6 Cond. Cha. Rep. 67; Kelsall v. Kelsall, 8 Cond. Cha. Rep. 58 ; Beasley v. Magrath, 2 Scho. and Lefr. 34; Savage v. Carroll, 1 Bal. and Bea. 553; 1 Fowl. Exch. Pra. 415; Bac. Abr. tit. Infancy and Age, L. 1,

 1773, ch. 7.

 Prutzman v. Pitesell, 3 H. and J. 80; Pue v. Dorsey, 1 Bland, 139, note. —

 1785, ch. 72, s. 5 ; Birch v. Glover, 4 Mad. 376.

 Kent v. Taneyhill, 6 G. and J. 3.

 Hill v. Binney, 6 Ves. 738; Burroughs v. Elton, 11 Ves. 36.

 But, in regard to this privilege of infants, it may he well to recollect, that, in some cases, it still exists; and that the parol may demur in all cases at common law and in equity, except where it has been otherwise provided by the above-mentioned acts of assembly; by those acts in relation to proceeding by publication, against absent infant defendants, and by the act which relates to infants who may be made parties to a suit which had abated by death. In Virginia, it has been declared that the parol shall not demur in any suit at law or in equity, by reason of the infancy of the plaintiifs or defendants, or either of them — 1798, ch. 240. In England, the giving of a day to shew cause after they come of age, and allowing the parol to demur, has, by a statute passed in the year 1830, been totally abolished. 1 W. 4, c. 47, s. 10; Kelsall v. Kelsall, 8 Cond. Cha. Rep. 61; Powys v. Mansfield, 9 Cond. Cha. Rep. 446. By the civil law, the estate of a minor might be sold by his guardian for the payment of any debts due by the ancestor or person from whom it was derived; or for any necessary purpose under the sanction of a decree of a court; yet it is said, that according to that law, if there be a suit or controversy on foot touching the estate of the minor, it should, in his favour, be postponed until the time of his puberty. Ayliffe Civ. Law. 218,219; Bac. Abr. tit. Infancy and Age, L. 1.
Bond v. Bond. — This creditor’s petition, filed on the 21st of October, 1783, stated, that the petitioners were creditors of the late Joshua Bond, who died intestate, seized of a considerable real estate, leaving a widow and several children, among others, John Bond, the only defendant, a minor, his eldest son and heir at law; that the intestate, at the time of his death, was indebted to the petitioners and divers persons in considerable sums of money, far exceeding the amount of his personal estate, which Ann, his widow, as administratrix, has paid away in discharge of his just debts. Prayer that the lands be sold, &e. The infant defendant and heir answered by his guardian ad litem,, &cc.
2d Jane, 1786. — Rogers, Chancellor. — This case standing ready for decision, and the petition, answer, and other proceedings, appearing as before recited and set forth, it is thereupon Decreed, with the assent of the said John Dodd as guardian of the said John Bond, that the said John Dodd who is hereby appointed trustee for that purpose, and the other purposes of this decree do set up and expose to sale at public vendue, upon twelve months credit, the several tracts and parcels of land in the petition mentioned, or such part or parts thereof as may be sufficient to pay and satisfy the petitioners their respective claims; that is to say, all that tract of land called Good Luck, lying in Baltimore county, and containing one hundred and twenty-five acres, more or less ; all that tract of land called Addition to Good Luck, lying in Baltimore county, and containing twenty-five acres, more or less; and also all that other tract of land, lying in Baltimore county, called Bound About Neighbours, and containing sixty-one acres, more or less; after giving six weeks notice thereof, in the Baltimore newspapers, of the time and place of such sale ; and the same several tracts of land when so sold; or so much thereof so disposed of as may be necessary for the purposes aforesaid, the said John Bond, by his guardian afore *354 said, do, and shall, effectually convey and assure to the purchaser or purchasers thereof, their heirs and assigns in fee, upon the payment of the purchase money thereof to the said John Dodd, as guardian aforesaid. And it is further Decreed, that the said trustee do, and shall, as soon as the sales are made, and upon hi3 receipt of the purchase money, pay and satisfy, according to the due course of administration, to the petitioners, the several sums of money due them, and each of them, on their seyeral claims exhibited to this court, with the petition aforesaid; and also the legal interest due, and which may become due, on the several bonds or obligations in the petition'mentioned. And it is further Decreed, that the said trustee do, and shall, as soon as the several parcels of land aforesaid, or so mueh thereof as may be necessary for the purposes aforesaid, are sold, for the confirmation of such sales, before any conveyance thereof, make and lodge in this court under his hand, and with his affidavit of the truth thereof thereto annexed, a just and accurate certificate or memorandum of the said sales, to Whom made, and when, and at what price, and upon what terms the same were disposed of; and also, as soon as may be, after his receipt of the purchase money thereof, render to this court a full, just, and true account, with his affidavit annexed, of his disbursements thereof, to whom made, and at what time or times. And it is further Decreed, that the said trustee do, and shall, before any sale or disposition is made of the premises aforesaid, or any part thereof, in pursuance of this decree, execute and file in this court his bond to the state, &c. faithfully to fulfil and perform the trust in him reposed by the decree, &c. —Chancery Proceedings, No. 2,fol. 608.
Mildred v. Neill. — This was a creditor’s petition, filed on the 25th of April, 1787, by Daniel Mildred and sundry others, against Isabella Neill, widow, Elizabeth Neill, Mary Neill, Alexander Neill, Callender Neill, and Isabella Neill, the younger infants, Hercules Courtney, Thomas Neill, and Joseph Donaldson. The petition states, that the plaintiffs were the creditors of William Neill, deceased, who departed this life some time in the year 1785, indebted to the plaintiffs, and sundry others, in divers large sums of money; that he devised his estate to his widow and five children, the defendants, some of whom are in a state of minority, and incapable of disposing of the real estate devised to them by their father for the payment of the plaintiffs’ claims; that the testator appointed the defendants, Isabella Neill, the widow, Hercules Courtney, Thomas Neill, and Joseph Donaldson, his executors, who took upon themselves the trust; that the personal estate had been fully administered, and that there were not personal assets to satisfy the plaintiffs’ claims. Whereupon it was prayed, that the executors might account for the personalty; and that the devisees might disclose of what the real estate of the deceased consisted; and also be compelled to sell the real estate for the payment of the claims of the plaintiffs and others, according to law.
Isabella, the widow, by her answer admitted the indebtedness of the deceased and his will; but alleged, that she had sued out a writ of dower, and had obtained judgment thereon to recover her dower. The other adult defendants and the infant defendants by their guardian ad litem, admitted the debts of the plaintiffs; and specified the real estate of which the testator died seized. The will of the testator, and the accounts of the executors settled with the Orphans Court, were exhibited as parcels of the pleadings.
26th February, 17S8. — Rogers, Chancellor. — This case standing ready for decision, and the bill, answers and other proceedings appearing as before set forth, it is *355 thereupom Decreed, with the assent of the said Hercules Courtney, as guardian of the said Elizabeth Neill, Mary Neill, Alexander Neill, Callender Neill, and Isabella Neill, that he the said Hercules Courtney, who is hereby appointed trustee for that purpose, do and shall, after the application of the personal estate of the said William Neill to the payment of his debts, set up and expose to sale, at public vendue, the several tracts and parcels of land and lots of ground in the proceedings mentioned, or such part or parts thereof as may be sufficient to pay and satisfy to the plaintiffs and others, creditors of the said William Neill, their several and respective claims; that is to say, all that tract of land, &c., (here the real estate is described, and then the decree proceeds,) after giving six weeks notice thereof, in the Annapolis and Baltimore newspapers, of the time and place of such sale, one-third of the purchase money, with interest, to be paid in twelve months, one-third thereof with interest in eighteen months, and the other third with interest in two years from the said sale ; and the same tracts and parcels of land when so sold, or so much thereof as may be necessary for the purposes aforesaid, the said trustee do, and shall effectually convey and assure to the purchaser or purchasers thereof, their heirs and assigns, in fee, upon payment of the purchase money thereof, and interest to the said Hercules Courtney, as trustee aforesaid. And it is further Decreed, that the said trustee do and shall, as soon as the sales aforesaid are made, and upon his receipt of the purchase money, pay in due course of administration the plaintiffs and others, the creditors of the said William Neill, the amount of their respective claims. And it is further Decreed, that the said trustee do and shall, as soon as the several’ tracts of land, or so much thereof as may be necessary for the purposes aforesaid, are sold, obtain from the purchaser or purchasers thereof, bonds, with good and sufficient surety, for the payment of the consideration money and interest, and make and lodge in this court, under his hand, and with his affidavit of the truth thereof thereto annexed, a just and accurate account of the said sales, to whom made, and when, and at what price the same were disposed of; and also as soon as may be after the receipt of the purchase money thereof, render to this court a full, just and true account of his payments and disbursements thereof, to whom made, and at what time or times. And it is farther Decreed, that the said trustee do and shall, before any sale is made of the premises, in pursuance of this decree, execute and file in this court his bond to the state, with good and sufficient surety, in the penalty of £ 20,000 current money, well and faithfully to fulfil and perform the trust in him reposed by this decree. And it is further Decreed, with the consent of all parties concerned, that one-third part of the several parcels of land, herein before described, be reserved for the aforesaid Isabella, who, since filing this petition, hath intermarried with a certain Thomas Mclntire, for and during her natural life, as, and for her dower in the said lands, in lieu and as a recompense for any bequest or provision, made or given to the said Isabella, by the said William Neill, in his last will and testament. And it is further Decreed, that, the aforesaid trustee be allowed a commission of seven and one-half per centum, for his trouble in selling and disposing of the lands aforesaid, and paying away the money arising from the sale or sales according to the tenor and directions of this decree. — Chancery Proceedings, lib. S. H. II. lett. B. fol. 201.
Flemming v. Castle. — This bill, filed on the 31st of December, 1787, by James Flemming and others, creditors of John Castle of Frederick county, deceased, against John Castle, set forth that the deceased’s personal estate was insufficient to pay his *356 debts; and that his real estate descended to the defendant, his infant son and heir. Whereupon it was prayed, that the real estate might be sold for the payment of th? debts of the deceased, according to the directions of the act of assembly, in such case made and provided.
Jacob Staley was appointed guardian to the infant defendant, who by his answer-admitted the facts stated in the bill.
29th April, 1788. — Rogers, Chancellor. — This case standing ready for decision, and the bill, answer, and other proceedings appearing as before set forth. It is thereupon Decreed, with the assent of Jacob Staley, as guardian of the said John Castle, the minor, that the said Jacob Staley, and the said Jacob Staley is hereby appointed trustee for that purpose, do set up and expose to sale, and sell at public vendue to the highest bidder, upon the following terms, to wit: one-third part of the purchase money to be paid at the expiration of six months from the sale, two other third parts thereof to he paid at the expiration of eighteen months from the said sale, the aforesaid part of a tract of land called the Resurvey on Stoney Level, &c. &c., (as in the next preceding case.)
Ewing v. Ennalls. — This creditor’s petition, filed on the 9th of May, 1789, by Ewing and others, against the executrix and heir of Thomas Ennalls, deceased, states, that the plaintiffs had recoveied judgments at law against the testator in his life-time; who by his will appointed the defendant Ann his executrix, who qualified as such, administered all the personal estate, and had not assets in hand to satisfy their judgments : and that the deceased left real estate, which descended to Henry Ennalls, his infant son and heir, which the plantiffs could not in any manner affect by their said judgments, during the minority of the said infant heir, but by the aid of this court. \Dac. Abr. tit. Infancy and Age, L. 1.] Whereupon it was prayed that the land be sold, ¡kc.
The adult defendant put in her answer, and the infant defendant answered by his guardian ad litem,. They admitted the truth of the facts set forth in the plaintiffs’ petition; but alleged, that the said lands were subject to several claims for dower.
24th December, 1789. — Hanson, Chancellor. — Decreed,,that the lands be sold, or so much thereof as shall be necessary to pay the debts herein mentioned, and the expense and commission, &c., subject to the right of dower of Ann Hodson, the mother of Thomas Ennalls, deceased, in two hundred and seven acres of Fork Neck; and the right of dower of the defendant Ann Ennalls, the widow of the said Thomas Ennalls, in the said land, ¡kc. And the trustee shall, out of the money arising from such sale, pay and satisfy the plaintiffs, ¡kc. their judgments, fkc. And do and shall lodge in this court with the register, the net proceeds of the residue of the money arising from the said sale, when received, subject to future order. Chancery Proceedings, lib. S. H. S. lett. C. fol. 583.
Sprigg v. Magruder. — This creditor’s petition, filed on the 16th of May, 1789, against the administrator and heir of the deceased debtor, stated, that the petitioner’s claims exceeded the amount of the inventory, of the personal estate of their deceased debtor, Edward Magruder, who died intestate, leaving a considerable real estate, which had descended to his infant daughter and heiress, the defendant Margaret S. Magruder; whereupon it was prayed that the realty might be sold, kc.
The administrator, Robert Wade, by his answer, admitted the facts as stated; and the infant defendant in her answer by her guardian ad litem, also admitted the truth of the facts set forth in the petition.
*357 6th February, 1790. — Hanson, Chancellor. — Decreed, with the consent and at the instance of Robert Wade, guardian of Margaret S. Magruder, that all the real estate of the said Margaret S. Magruder, he sold for the payment of the just debts of the said Edward Magruder, deceased, in and to the same, &c. that he first give six weeks notice, in the Annapolis and Baltimore newspapers, to the creditors of the said Edward Magruder to bring in’ to him, the said trustee, their respective claims legally proved ; and the like notice of the time, place, and terms of sale, &c. And shall produce and lodge in this court with the register, the net proceeds of the money thence arising, to be subject to the future order and distribution of this-court. — Chancery Proceedings, lib. S. H. H. lett. C. fol. 276.
McMullin v. Burris. — This bill, filed on the 22d of July, 1790, states that the-late Edward Burris died leaving real and personal estate; that two Of the plaintiffs, as his administrators, had fully administered the whole Of his personal estate, and had overpaid just debts; and that others of the plaintiffs were also creditors of the deceased; whereupon it was prayed that the real estate might be sold for the payment of the debts of the deceased.
The defendant’s infant heirs answering by their guardian ad litem, admitted the. facts as stated in the bill.
8th May, 1792. — Hanson, Chancellor'. — This Case standing ready for hearing on the bill and exhibits, and on the answer of the defendants by their gUSrdian Thomas McMuIlin, together with the other exhibits and proceedings in this cause, the same were read, and by the court considered; and it appearing to this court, by the admissions of the said defendants, by their guardian, in the answer aforesaid, and also by the exhibits aforesaid, that the personal estate of the said Edward Burris is insufficient'to pay his debts, and that he left real estate to descend to the said John Burris and James Burris, who were, at the time of his death, and still are, infants.
It is thereupon Decreed, that the real- estate of the said Edward Burris, consisting of a tract of land called Stoney Battery, containing one hundred and fourteen acres, lying in Cecil county, which has descended to the said John and James Burris, be sold for the payment of the debts of their said father Edward Burris; that Richard’ Thomas, of said county? be? and he is hereby appointed, trustee to sell the said real estate, and that the manner of his proceeding be as follows: he shall first give notice by advertisement, inserted four weeks successively in the newspaper of Goddard & Angel, and set up in the most public places in the county, to the creditors of the late Edward Burris, who have not already exhibited their claims in this court, to bring in their respective claims legally proved, and lodge the same with the register of this court. And the said trustee shall then, in like manner, give four weeks notice of the time, place and terms of sale of the said real estate, which shall be by auction, the purchaser or purchasers giving bonds, with approved surety, for the payment of the consideration money, with interest, at two eipial annual payments, reckoning from the time of sale. And the said trustee shall, if the purchaser or purchasers will thereto agree, divide the purchase money to be paid by the purchaser or purchasers into four or more parts, and take a separate Bond for each part, in order that the same may be assigned among the creditors, in case-they shall so elect, and' it shall hereafter appear to this court proper to be so done. And when the said real estate shall have been sold, and the confirmation, by the Chancellor, of the sale shall have been obtained, and the purchase money paid to the said-trustee? he shall, as *358 trustee aforesaid, effectually convey and secure the said real estate, and the whole right, title and interest in the same, of the said John Burris and James Burris, which hath descended to them as aforesaid, to the purchaser or purchasers thereof, in fee simple. And the said trustee shall, as soon as conveniently may he after the sale aforesaid, make and lodge in this court, under his hand, with an affidavit of the truth thereof annexed, a just and accurate account of the sale, specifying the purchaser or purchasers, the time of sale, and the price or prices at which the said real estate has been sold, and the bonds taken for the purchase money, and specifying the expense of the whole proceeding; and that he shall bring into this court the bonds by him taken on the sale, and the money arising from such sale, to be applied in satisfying the just claims against the said Edward Burris’ estate, after deducting all the legal costs of this suit, and a commission hereafter to be allowed. Provided that before any disposition shall be made of the said real estate in pursuance of this decree, by the said trustee, further than giving the notices aforesaid first directed, he shall execute and lodge in this court bis bond, with an approved surety or sureties, to the state, in the sum of £300, current money, well and truly to fulfil and perform the trust in him reposed by this decree, or to be reposed by any future decree in the premises, and in all things honestly and truly to observe and execute the same according to the directions and true meaning thereof.
In pursuance of this decree, the trustee executed and filed his bond, which was endorsed thus: ‘ Wm. Pinkney is well acquainted with the circumstances of Mr. Thomas, and begs leave to inform the Chancellor, that the within bond is ample security for the performance of his trustupon which, it was ‘ approved, A. C. Hanson, ch. 8, Octo. 1792.’ After which, on the 17th of October, 1792, the trustee reported that he had, on the 7th of September previous, sold the said estate. Upon which, an order of ratification nisi was passed on the 21st of October, 1792, which, as it would seem, was never published as directed.
27ih December, 1803. — Hanson, Chancellor. — Ordered, that the sale made by Richard S. Thomas, trustee for the 3ale of the real estate of Edward Burris, be absolutely ratified and confirmed, no cause being shewn, &c. although many years have elapsed. The trustee is allowed a commission of £ 12 10s. 0d. for his whole trouble and expense. — M. S.
Lansdale v. Clarke. — This bill was filed on the 9th of June, 1798, by a mortgagee against the heirs of the mortgagor for a foreclosure or sale, one of the heirs being of full age, and two others being infants.
29ih November, 1797. — Hanson, Chancellor. — The papers in this cause being submitted on the idea that it was ready for a decree on the bill and answers, the same were, by the Chancellor, read; and it appears that, although there is a regular answer of the infant defendants Eleanor and Samuel, by their guardian, admitting the facts stated in the bill, there is no regular answer on the part of the other defendants. However, that there may be as little further delay as possible, the Chancellor thinks proper to pass immediately that order which is required by law, before a mortgagee can obtain a decree for a sale against infant defendants, heirs of a mortgagor.
It is thereupon Ordered, that in case the aforesaid facts shall be admitted by the answers of all the defendants, or otherwise established to the Chancellor’s satisfaction, he will pass a decree for the sale of the mortgaged lands in the bill mentioned, for the payment of the mortgage debt; provided the complainant shall first file with *359 the register of this court a bond to the infant defendants Eleanor Clarke and Samuel Clarke, with good and sufficient surety, approved by the Chancellor, in the penalty of £400, with the following condition, &c. (This bond was required by 1785, ch. 72, s. 2, but it has been since declared that it shall not be necessary or required, 1837, ch. 292.)

 Corrie v. Clarke, 1 Bland, 85, note.

 Holme v. Stanley, 8 Ves. 1; Lloyd v. Johnes, 9 Ves. 65; Birch v. Glover, 4 Mad. 376; Kilty v. Brown, ante 222; Boucher v. Bradford, ante 222; Tyson v. Hollingsworth, ante 327; 1835, ch. 380, s. 1; Chamberlain v. Brown, ante 221.

 Mackubin v. Brown, 1 Bland, 415.—

 Giffard v. Hort, 1 Scho. & Lefr. 409.

 Strike’s Case, 1 Bland, 68; Mackubin v. Brown, 1 Bland, 414; Williamson v. Wilson, 1 Bland, 441; Chamberlain v. Brown, ante 221; Boucher v. Bradford, ante 222; Kilty v. Brown, ante 222.

 Shewn v. Vanderhorst, 4 Cond. Cha. Rep. 461; The Commonwealth v. Ragsdale, 2 Hen. & Mun. 8.

— (l) Williams’ Case, post, 3 vol.

 Casamajor v. Strode, 1 Cond. Cha. Rep. 195; Duvall v. Waters, 1 Bland, 576.

 Jones v. Pugh, 8 Ves. 71.

 April, 1787, ch. 30, s. 5.

 Iglehart v. Armiger, 1 Bland, 527; Andrews v. Scotton, post.

 Paxton v. Douglas, 8 Ves. 520; Gilpin v. Southampton, 18 Ves, 469.

 Douglas v. Clay, 1 Dick. 393; Hardcastle v. Chettle, 4 Bro. C. C. 163; Jackson v. Leaf, 1 Jac. & Wal. 231; Clarke v. Ormonde, 4 Cond. Cha. Rep. 54.—

 Brooks v. Reynolds, 1 Bro. C. C. 183; Kenyon v. Worthington, 2 Dick. 668 ; Goate v. Fryer, 2 Cox, 201; S. C. 3 Bro. C. C. 23; Hardcastle v. Chettle, 4 Bro. C. C. 163; Paxton v. Douglas, 8 Ves. 520; Terrewest v. Featherby, 2 Meriv. 480; *361 Clarke v. Ormonde, 4 Cond. Cha. Rep. 47; Lord v. Wormleighton, 4 Cond. Cha. Rep. 67; Fielden v. Fielden, 1 Cond. Cha. Rep. 128.; Drewry v. Thacker, 3 Swan. 529; Martin v. Martin, 1 Ves. 211; Farnham v. Burroughs, 1 Dick. 63.

 Douglas v. Clay, 1 Dick. 393; Perry v. Phelips, 10 Ves. 40.

 Sutton v. Mashiter, 2 Cond. Cha. Rep. 525.

 Rush v. Higgs, 4 Ves. 638.

 Brooks v. Reynolds, 1 Bro. C. C, 183.

 Jackson v. Leaf, 1 Jack. & Wal. 231.

 Clarke v. Ormonde, 4 Cond. Cha. Rep. 54.

 Brooks v. Reynolds, 1 Bro. C. C. 183.

 Terrewest w. Featherby, 2 Meriv. 482, n.

 Clarke v. Ormonde, 4 Cond. Cha. Rep. 54; Drewry v. Thacker, 3 Swan. 544.

 Drewry v. Thacker, 3 Swan. 544; Fielden v. Fielden, 1 Cond. Cha. Rep. 128 ; Price v. Evans, 6 Cond. Cha. Rep. 234; Kent v. Pickering, 7 Cond. Cha. Rep. 541.

 Terrewest v. Featherby, 2 Meriv. 480; Clarke v. Ormonde, 4 Cond. Cha. Rep. 54; Price v. Evans, 6 Cond. Cha. Rep. 234.

 Lord v. Wormleighton, 4 Cond. Cha. Rep. 67.

 Terrewest v. Featherby, 2 Meriv.480.

 Terrewest v. Featherby, 2 Meriv. 480; Drewry v. Thacker, 3 Swan, 529.

 Surrey v. Smalley, 1 Vern. 457; Drewry v. Thacker, 3 Swan. 429; Clarke v. Ormonde, 4 Cond. Cha. Rep. 54; Price v. Evans, 6 Cond. Cha. Rep. 234.

 Coysgarne v. Jones, Amb. 613; Law v. Rigby, 4 Bro. C. C. 60; Clarke v. Ormonde, 4 Cond. Cha. Rep. 47; Pickford v. Hunter, 6 Cond. Cha. Rep. 342; Calvert on Parties, 222.

 Paxton v. Douglas, 8 Ves. 520; Gilpin v. Southampton, 18 Ves. 469; Drewry v. Thacker, 3 Swan. 544; Clarke v. Ormonde, 4 Cond. Cha. Rep. 54.

 Creuze v. Hunter, 2 Ves. jun. 165 ; Sims v. Ridge, 3 Meriv. 458; Powell v. Wallworth, 2 Mad. Rep. 183; Edmunds v. Acland, 5 Mad. 31.

 Lashley v. Hogg, 11 Ves. 602; Dyott v. Anderton, 3 Ves. & Bea. 177; Handford v. Storie, 1 Cond. Cha. Rep. 414; Strike’s Case, 1 Bland, 85.

 1826, ch. 178.

 Giffard v. Hort, 1 Scho. and Lefr. 409; Lashley v. Hogg, 11 Ves. 602 ; Angell v. Haddon, 1 Mad. Rep. 529; David v. Frowd, 7 Cond. Cha. Rep. 8.
Fhazek Honywood, by hie will, gave £20,-000, upon trust, to'be distributed among such of his relations by consanguinity, who should not each he worth more than £2,000; and who should,- within two years after his death, apply to participate in the donation. And,-that they might be apprised of it, directed that notice should be given by advertisement in the London Gazette, and such other newspapers as his executors should think proper, once a month, for two years after his death. The testator died on the 28th of January, 1764; and the executors having advertised, as directed, applications were made within the two-years by four hundred and fifty-six persons who resided in different parts of the world, to wit: England, Scotland, Ireland, Spain, Portugal, Antigua, Jamaica, and South Carolina. After which, the case was heard, and a distribution made accordingly. Bennett u. Honywood, Amb. 70S. There have been several creditors’ suits in this court, within the last ten years, in which, on a notice of only four months, more than one hundred- and fifty ereditors have come in under the decree. Simmons v. Tongue, post.

 Hercy v. Dinwoody, 4 Bro. C. C. 268; Good v. Blewitt, 19 Ves. 337; Gillespie v. Alexander, 3 Cond. Cha. Rep. 330; Greig v. Sumerville, 4 Cond. Cha. Rep. 457; David v. Frowd, 7 Cond. Cha. Rep. 8; Mitf. Plea. 166; 2 Fow. Exch. Pra. 253, 279; Strike’s Case, 1 Bland, 86; Williamson v. Wilson, 1 Bland, 441; Dorsey v. Hammond, 1 Bland, 468.

 Lowthian v. Hasel, 4 Bro. C. C. 168; Hindman v. Clayton, ante 337; 1798, ch. 101, sub ch. 8, s. 13.

 Good v. Blewit, 19 Ves. 338; Waite v. Temple, 1 Cond. Cha. Rep. 162; Anonymous, 4 Exch. Rep. 72.

 Latouche v. Dunsany, 1 Scho. and Lefr. 149; Strike’s Case. 1 Bland, 85.

 1798, ch. 101, sub ch. 9.

 Fladong v. Winter, 19 Ves. 199.

 Putnam v. Bates, 3 Cond. Cha. Rep. 355; Dorsey v. Hammond, 1 Bland, 470.

 Shewen v. Vanderhorst, 4 Cond. Cha. Rep. 458; S. C. 6 Cond. Cha. Rep. 403; Strike’s Case, 1 Bland, 91.

 As to annuities, William’s Case, post. 3 vol.

 Bromley v. Goodere, 1 Atk. 75; Rowe v. Bant, 1 Dick. 150; Lloyd v. Williams, 2 Atk. 111; Ex parte Morris, 3 Bro. C. C. 79; Ex parte Champion, 3 Bro. C. C. 436; Ex parte Mills, 2 Ves. jun. 295; Ex parte Clarke, 4 Ves. 677; Ex parte Reeve, 9 Ves. *367 590; Butcher v. Churchill, 14 Ves. 573 ; Ex parte Kock, 1 Ves. & Bea. 344; Bertie v. Abingdon, 3 Meriv. 566; Turner v. Turner, 1 Jac. & Wal. 39; Ex parte Deey, 2 Ball & Bea. 77; Dickenson v. Harrison. 2 Exch. Rep. 105; Pow. Mortg. 291; Chase v. Manhardt, 1 Bland, 346. —

 Smith’s Wealth Nat. lib. 1, ch. 6, p. 72; 2 Fonb. 423

 Anderson v. Dwyer, 1 Scho. & Lefr. 303; Higgins v. Sargent, 9 Com. Law Rep. 101; Arnott v. Redfern, 13 Com, Law Rep. 1; Fruhling v. Shrœder, 29 Com. Law Rep. 260.

 4 Ann, ch. 16, s. 12, 13 ; Tidd Pra. 484.

 Robinson v. Bland, 2 Burr. 1085; Pierce v. Fothergill, 29 Com. Law Rep. 296.

 Blaney v. Hendrick, 3 Wils. 205 ; Gordon v. Swan, 12 East. 419 ; Marshall v. Poole, 13 East. 98; Calton v. Bragg, 15 East. 223.

 Bodily v. Bellamy, 2 Burr, 1095; Entwistle v. Shepherd, 2 T. R. 78; Creuze v. Hunter, 2 Ves. jun. 162, 167; Arnott v. Redfern, 13 Com. Law Rep. 1; Churcher v. Stringer, 22 Com. Law Rep. 183; Watkins v. Morgan, 25 Com. Law Rep. 584; Pierce v. Fothergill, 29 Com. Law Rep. 296; Petersdorff’s Abr. tit. Interest. —

 Francis v. Wilson, 21 Com. Law Rep. 391; Bann v. Dalzel, 14 Com. Law Rep. 356 ; S. C. 22 Com. Law Rep. 299; Newson v. Douglass,- 7 H. &. 453; Karthaus v. Owings, 2 G. & J. 445.

 Davis v. Walch, 2 H. & J. 344; Hannah K. Chase’s Case, 1 Bland 232; Ferrers v. Ferrers, Ca. Tem. Xalb. 2.

 Williams v. The Mayor of Annapolis, 6 H. & J. 529. —

 Karthaus v. Owings, 2 G. & J. 445.

 Cannell v. M’Clean, 6 H. & J. 300.

 Newson v. Douglass, 7 H. & J. 453.

 Contee v. Findley, 1 H. & J. 331 ; Bordley v. Eden, 3 H. & McH. 167.

 Damall v. Magruder, 1 H. & G. 439.

 4 Ann, ch. 16, s. 12, and 13; Kilty Rep. 246 ; Godfrey v. Watson, 3 Atk. 517; Creuze v. Hunter, 2 Ves. jun. 167.—

 1722, ch. 6. —

 Thelluson v. Fletcher, 1 Doug. 316; Shepherd v. Charter, 4 T. R. 275.

 1794, ch. 46; Wilmer v. Harris, 5 H. & J. 8; Hopewell v. Price, 2 H. & G. 275.

 2 Harris’ Ent. 87.

 Robinson v. Bland, 2 Burr. 1086.

 Creuze v. Hunter, 2 Ves. jun, 165; Millar v. Baker, 1 Bland, 148, note; Long v. Gorsuch, 1 Bland, 361, note; Parker v. Mackall, ante 62; Woodward v. Chapman, ante 68 ; Sloss v. McIlvane, ante 72; Craig v. Baker, ante 238.

 1785, ch. 80, s. 13.

 2 Harris’ Ent. 192.

 2 Harris’ Ent. 87, 97. —

 1809, ch. 153, s. 4; 1811, ch. 161, s. 5; Hawkins v. Jackson, 6 H. & J. 151.

 Parker v. Hutchinson, 3 Ves. 133; Upton v. Ferrers, 5 Ves. 803; Dornford v. Dornford, 12 Ves. 129; Lowndes v. Collens, 17 Ves. 28.

 Gwinn v. Whitaker, 1 H. & J. 754,

 Bacon v. Clerk, 1 P. Will. 480; Brown v. Barkbam, 1 P. Will. 653; Bickham v. Cross, 2 Ves. 471; Lloyd v. Williams, 2 Atk. 111; The Drapers’ Company v. Davis, 2 Atk. 211; Wainwright v. Healy, 2 Dick. 444; Creuze v. Lowth, 4 Bro. C. C. 157, 318; Creuze v. Hunter, 2 Ves. jun. 165; Bell v. Free, 1 Swan. 90; Guant v. Taylor, 9 Cond. Cha. Rep. 47; Lamott v. Sterett, 1 H. & J. 47.

 Kelly v. Lord Bellew, 1 Bro. P. C. 202; Bradshaw v. Astley, 1 Bro. P. C. 565; Lloyd v. Baldwyn, 1 Dick. 139; Bedford v. Coke, 1 Dick. 178; Pottenger v. Steuart, 3 H. & J. 356; Sloss v. McIlvane, ante 72; Craig v. Baker, ante 238 ; Tyson v. Hollingsworth, ante 333; Norwood v. Norwood, 9 June, 1800, post.
Atkinson v. Hall. — This bill was tiled on the 12th day of May, 1750, by George Atkinson surviving executor of Christopher Grindali, deceased, against John Hall. The bill stated, that the defendant being indebted to Grindali in the sum of £■263 0s. 4d. sterling, on the 15th of August, 1746, to secure the payment thereof with interest, on the first of June then next, mortgaged to him certain tracts of land therein described; that the day of payment had elapsed, and that no part of the debt had been paid. Whereupon it was prayed, that the defendant might be decreed to pay the debt and interest due, and to grow due with costs, by a short day to be appointed by the court; or else be absolutely foreclosed from all manner of equity and redemption of the mortgaged premises; and that the plaintiff might have such other relief in the premises, as was usual in cases of this nature.
The defendant put in his answer, in which he admitted the execution of the mortgage ; but alleged, that the lands were of much greater value than the debt and interest; that the mortgagee Grindali, in his life-time, committed great waste on the mortgaged premises, by cutting billets and handspikes, and destroying a warehouse of considerable value; and that the land was rented to several tenants, who were warned by the agent of Grindali, not to pay their rents to this defendant. And this defendant further alleged, that after being allowed for the waste committed and for the rents and profits, he was ready to submit to a decree, to bring the residue into court, &c.
To this answer the plaintiff put in a general replication; and a commission was issued to take testimony; which having been returned without any depositions being taken, it was afterwards ordered, by consent, that a commission be issued to audit accounts, relating to the matter in dispute between the parties. Whereupon *372 commissioners being named and struck, a commmission in the usual form, (1 Bland. 124, 465,) issued accordingly to James Maccubbin, Robert Swan, Thomas Sprigg, and William Chapman, who made the following report.
To his Excellency Horatio Sharpe, Esquire, Chancellor of Maryland. We humbly certify, that by virtue of a commission issued out of his Lordship’s High Court of Chancery to us, and Thomas Sprigg, and William Chapman directed, to state, Settle, audit, and adjust all accounts relating to the matter in dispute, in the said court, depending between George Atkinson, executor of Christopher Grindall, mariner, deceased, complainant, and John Hall defendant; we met at the house of Mrs. Catharine Jennings, in Annapolis, known by the sign of the Bunch of Grapes, on the 29th day of May instant; where the said John Hall, or any person for him, did not appear, although affidavit was legally made of his, the said John Hall’s having had due notice of the time and place of meeting. And thereupon, the said George Atkinson, in his capacity as aforesaid, produced unto us a mortgage deed from the said John Hall, the defendant, to Christopher Grindall, in his life-time, dated the loth day of August, 1746, which said mortgage appears to us to have been duly signed, acknowledged, and recorded, a copy whereof is hereunto annexed, whereby it appears to us, that there is now due on the same mortgage the principal sum of £263 Os. id. sterling, and for seven years and nine months interest to the date above mentioned, allowing the deduction for alteration of the style £ 122 5s. 9d. sterling, which, in the whole, amounts to £385 6s. Id. sterling. All which is humbly submitted to your Excellency by J. Maccubbin, Rob. Swan.
29th October, 1755. — Sharpe, Chancellor. — It appearing by a report made by commissioners appointed to state and settle the accounts between the parties in this cause, there was due to the complainant’s testator, on the twenty-ninth of May instant, the sum of £385 6s. Id. sterling, for principal and interest upon the sum advanced on the said mortgaged premises; and that from the said 29th day of May until the 29th day of October, being the day of passing this decree, there is due to the complainant’s testator the sum of £9 12s. 7d., being for five months interest on the aforementioned sum of £385 6s. Id.; which, in the whole, amounts to £394 18s. 8d. It is, therefore, Ordered, adj'udged, and decreed, that, in case the defendant doth not, on or before the 29th day of April next, pay unto the complainant the said sum of £394 18s. 8d. sterling, with lawful interest for the same, and also the costs expended by the complainant in this suit, the said defendant and all claiming by, from, or under him, shall be ever, and they are hereby from thenceforth, debarred and foreclosed of all manner of equity of redemption or reclaim, in and to the said mortgaged premises; and that the estate in the said premises be free and absolute of and from all redemption and equity, and power of redemption of, in, or by the said defendant, his heirs or assigns, or any person or persons claiming by, from, or under him or them. — Chancery Proceedings, lib. S. R. No. 5, fol. 1236.
Pattison v. Frazier. — This bill was filed on the 23d of April, 1791, by James Pattison, one of the creditors of Alexander Frazier, late of Calvert county, deceased, in behalf of himself and the other creditors, against John Alexander Frazier. It alleges, that Alexander Frazier, deceased, was indebted to the plaintiff in the quantity of 108,000 lbs. of crop tobacco, and in the sum of £350 15s. 3d.; for the payment of which, with interest, he gave his bond on the 3d of January, 1788 ; and also in the further quantity of 12,940 lbs. of crop tobacco, and in the sum of £341 5s. 9d., on open account. And being so indebted to this plaintiff and to several *373 others, he died in the month of June, 1790, intestate and without issue, leaving the defendant, an infant, to whom his real estate, consisting of a moiety of two adjoining parcels of land, containing about-acres, descended; which lands had been devised to him and this defendant, by their father, in the words following:
‘ I give and bequeath all the lands that I am possessed of to be equally divided between my two sons, Alexander and John Alexander, to them and their heirs for ever; but, if in case either of my said sons should die without any heir lawfully begotten of his body, or before he arrives at the age of twenty-one years, that then in such case his part to be the sole right and property of my surviving son, his heirs and assigns, for ever. My will and desire is, that my son Alexander do, out of his part Of my estate, expend so much money as will be sufficient to give my son John Alexander a good education. Whereas I have given all my land to my two sons, my will is, that the division.line shall begin at Kake’s Land, and so running towards Fishing Creek; my son Alexander to have the first choice of the land. The residue and remainder of my personal estate I give to be equally divided between my two sons, their heirs and assigns, for ever. I constitute and appoint my loving son Alexander Frazier whole and sole executor of this my last will and testament.’
The bill further states, that Alexander Frazier was above the age of twenty-one at the time of his death; and, in virtue of the election given to him by this devise, did in his life-time, elect to have the southermost moiety of the land so devised, which he improved by erecting houses thereon, and repairing those already built, at considerable expense; that the personal estate of the said Alexander Frazier amounted to no more than £850 13s. id. as appeared by the inventory returned by the defendant John A. Frazier, who took out letters of administration on the same, and was therefore insufficient for the payment of his debts. Whereupon it was prayed, that John A. Frazier, being an infant, a guardian might be appointed for him to make answer ; and that the real estate of Alexander Frazier, deceased, or so much thereof as might be necessary, might be sold for the payment of his debts.
The defendant John A. Frazier, on the 7th of May, 1792, filed his answer by his guardian ad litem, in which he admitted the death of his brother Alexander, as stated, and that the lands had been devised to him by their father, as set forth; but the interest which they thereby took, he submitted for decision; that by the will of their father, his brother was required to maintain and educate him; that his brother, after the death of their father, took possession of all his real and personal estate, and received the whole of the rents and profits thereof, which he applied to his own use ; and maintained, but did not educate this defendant. Wherefore this defendant claims to be considered as a creditor of his brother, with a preference over others to the value of one-half of the rents and profits of their estate, and also to the value of the expense of the education which he ought to have obtained; that his brother erected no new houses on the land, but repaired some, as stated; that he made, in his life-time, no election to take the southermost half of the land, as stated; that his personal estate was wholly insufficient to pay his debts; that his brother became indebted by bond, as stated; but that, as to the open accounts, they were very confused; and he denied that his brother owed to the plainüíf so much as he demanded, and put him to establish his claim, &c.
A commission was issued, under which, testimony was taken and returned on the 4th of May, 1795. After which, the parties, the defendant having attained his full age, by their solicitors, on the 30th of November, 1795, entered into and filed an agreement in the following words:
*374 ‘ This hill being filed for a sale of Alexander Frazier’s part of two tracts or parcels of land devised to him and his brother, the defendant, by the will of their father Alexander Frazier, by which said will Alexander Frazier, now deceased, had the right of election ; and it being doubtful whether any election was made by Alexander Frazier, the son, in his life-time; and it being also doubtful whether this court can determine the fact of election, for the prevention of future controversy, it is agreed that the Chancellor, with the consent of the parties, shall decree a sale of the whole of the lands on a credit of three years, interest to be annually paid, and the bonds taken for the proceeds of the land to be equally divided between the creditors of Alexander Frazier and the defendant, each one-half, to be subject to the opinion and decree of the Chancellor as to the other points respecting preference among the creditors arising in the cause. That two trustees be appointed by the Chancellor to make sale of the land together, or in parcels, as may appear most advantageous; that the expense of one trustee be borne by the creditors, and of the other by the defendant; that one trustee be appointed on the recommendation of the creditors, and the other on the recommendation of the defendant. The sale to be on the premises.’ Upon which, persons being recommended to be appointed trustees by the parties respectively, the case was submitted.
30th November, 1795. — Hanson, Chancellor. — This case standing ready for decision on the agreement filed, the same, together with all other proceedings, were read and considered. Whereupon it is Decreed, that in conformity to the said agreement, all the lands devised to the defendant and his deceased brother, by his father, be sold, and that Henry Ridgely, of Annapolis, and Joseph Sprigg, of Calvert county, be, and they are hereby appointed trustees for selling the said lands;. and that the course and manner of their proceedings be as follows: They shall lodge with the register of this court a bond or bonds, executed by themselves, and a surety or sureties approved by the Chancellor, in the penalty of £3,000, if one bond, or £1,500 each, if two bonds, conditioned for the faithful performance of the trust reposed in them, &c. They shall, at the same time, give the like notice to the creditors of Alexander Frazier, deceased, to exhibit the vouchers of their claims, &c. within six months from the time by them fixed for the sale, &c.
The trustees, on the 23d of May, 1796, reported that, after having given notice of the time and place of sale by publication in several newspapers, in the French and English languages, and by advertisement set up at several public places, they had, on the 12th of April, 1796, sold the whole land to Charles Williamson as the highest bidder, for £3 6s. per acre; and had taken his bonds, with Frisby Freeland and the defendant John A. Frazier as his sureties; which bonds they had returned as directed. This sale was afterwards absolutely confirmed.
*375 Sundry creditors of the deceased filed the vouchers of their claims, and, among others, the defendant, as the voucher of his claim, filed an account in the following words:
c Alexander Frazier, deceased, to John A. Frazier, Dr.
1. To one-half of the profits of the estate, from the 9th of May, 1779, to 9th June, 1790,11 years and 1 month, at £ 129 per year, £1,429 15s. Od.
2. To one-half of the price of timber sold by Alexander Frazier from the plantation, estimating the whole at £100, 50 0s. 0d.
3. To a charge on the estate for default of expending money in the education of John A. Frazier, as directed by the will of Alexander Frazier, deceased, say eight years at £40 per year, 320 0s. Od. £1,799 15s. Od.

Contra.

1. By maintenance eight years, estimated at £20 a year, £160 0s. Od.
2. By clothing 11 years at £10 per year, 110 0s. 0d-
By balance due, 1,529 15s. Od.
£ 1,799 15s. 0d.
To balance per contra, £1,529 15s. Od. to interest thereon 9th June, 1790.
E. E. Wa. Kri/rv, Solicitor for J. A. Frazier.
Explanation of the above account. The charge No. I arises from the will of Alexander Frazier, senior, leaving John A. Frazier the half of his estate ; and the amount estimated from the testimony in the cause, particularly that of John Frazier. The charge No. 2 is deduced from the testimony respecting the sale of the timber, that not being considered as a part of the usual profits of the land. The charge No 3 arises from the will of Alexander Frazier, senior, directing his son John A. Frazier to be educated out of Alexander Frazier’s part of the estate, and the time during which his education was neglected is stated to be eight years, from the testimony which proves that he was educated about three years. The credit No. 1 is fixed at eight years, as it appears that John A. Frazier was boarded out about three years, which expense fell on Alexander Frazier as a part of bis education. The credit No. 2 is given on an estimate formed from the testimony as to the manner in which John A. Frazier was clothed.’
After which, the case was brought before the court for further directions.
\8thMay, 1797. — Hanson, Chancellor. — Ordered, that the auditor state the claims of James Pattison against the said Alexander Frazier agreeably to the established principles of this court, and his own ideas, first giving notice to the defendant, or his solicitor, and to William Kilty, Esquire; and that having stated the said account he return it to this court, subject to be done with as to the Chancellor shall seem just.
In obedience to this order, the auditor reported, that from the exhibits filed by James Pattison, he had stated an account marked No 1, on which there was due £3,992 2s. 7d. including interest to the 12th of April, 1796, the day on which the land was sold. That from the books of James Pattison, he had stated account No. 2, wherein the defendant was charged with what he actually appeared to have received, without paying any regard to the settlement made by the parties, and the bond given by the defendant. The balance in this account is only £2,379 19s. 8d *376 including interest as aforesaid. That the difference in the accounts Nos. 1 and 2, arises from the complainant’s turning the account into tobacco, when tobacco was very low, and from some charges in the proved accounts, which do not appear in the bool£3 exhibited to the auditor, and from some other small mistakes in their settlements.
To this report of the auditor, Jacob Pattison, the executor of the original plaintiff, excepted; 1st, for that the auditor hath only allowed the price of 30s. current money, per cwt. for tobacco, when the current price of that article, at this time, is from £3 to £3 10s, current money, per hundred. And inasmuch as the debt is due, and payable in tobacco, the rules of justice require that a full equivalent in money should be allowed on the same being commuted and changed into money; 2d, for that the same is erroneous and incorrect in the following particulars: 1, for that the auditor hath paid no regard to the settlement between James Pattison and Alexander Frazier, deceased, which took place on the 3d January, 1788, when the said Frazier gave the said Pattison his bond, as stated in account No. 1, and which said bond was a final adjustment between them of all out-standing transactions, and the same ought not to be unravelled, unless for errors ; 2, for that the said auditor, in extending the tobacco, which is the real debt due, hath only allowed 30s. per hundred at this time, when the current price of tobacco is from £3 to £3 10s. per cwt.
28th November, 1797. — Hanson, Chancellor. — The Chancellor proceeded to consider the exceptions of James Pattison’s executors to the report of the auditor, relative to the said Pattison’s claim against the deceased.
The auditor has stated the account in two ways. In one he has charged the articles on each side, from the beginning, without regard to a bond for tobacco, given, as it is alleged, on a settlement of accounts between Pattison and Frazier, up to the date of the bond. In the other, he has begun with the said bond, and then added the subsequent articles.
It is material, perhaps, that no exception is taken on the part of the creditors in general, or of the heir. This being the case, and there being no allegation of fraud, or even error in taking the said bond, the Chancellor conceives that he cannot do otherwise than adopt that account in which Frazier is charged with the amount of the bond.
The exception relative to the price of tobacco appears to the Chancellor unreasonable. All sales, under decrees for the payment of debts, are directed to be made for money; and it has been the practice of this court to direct the auditor to state the claims of all creditors, exhibited to the Chancellor, up to the day of the sale of the property on credit, in order that the interest to be paid by the purchaser, and the interest due to the creditors, may run from the same day. There appeared to the Chancellor no other method of avoiding perplexity. Debts due in' tobacco have always been reduced to money at the price tobacco bore on that day. For, if the money to arise from the sale were already deposited in court for the benefit of the creditors, they would receive just so much as the tobacco due to them would be then worth; and it were better for them to receive the money at once, than receive the tobacco, and have the trouble, expense, and risk of converting it into cash'. Well, *377 but as the money is not deposited, the claims are to bear interest, which is discharged with the interest paid by the purchaser.
This practice appears to the Chancellor unexceptionable. It is a principle of this court, that the amount of a claim here liquidated shall bear interest from the time of its liquidation. Is it not proper, then, that there be one day for the liquidation of all the claims against one estate! What day can be so proper as that from which the purchasers are chargeable with interest? Can it be conceived, that a tobacco debt is never to be liquidated until the money is brought into court? If that were the case, it would be impossible to ascertain the dividends of an insolvent estate until the money should he actually brought in. Would not great inconvenience be the result? Can it be conceived right, on any ground, that the value of the tobacco debt, which must at last be discharged in money, be subject to fluctuation until the time of actual payment ? Is it not consistent with the spirit of this court, that one general rule should govern, so far as general rules can govern, all the cases of this kind, as well as of every other? And what general rule could be more just, with respect to tobacco claims, than the rule adopted, viz. that the day of sale shall he the day for adjusting the claims, the day to which interest shall be calculated, and on which the whole claim shall be consolidated with principal; the day on which the valué of the tobacco, wheat, or other article, due from the deceased shall be inquired into ? It is intimated that the commutation of money into tobacco is a fair speculation, &c. Suppose, then, that tobacco, since the day of sale, had fallen in price, would it appear just that the claim should he curtailed on that account, after it had been once ascertained ?
On the whole, it appears to the Chancellor that the account No. 1, returned by the auditor, and not excepted against by the creditors or heir, allows the aforesaid executors as much as they can in reason claim. It is, therefore, adjudged and Ordered, that the said account he admitted, and that the exceptions of the said executors be overruled.
After which, the case was again brought before the court for further directions as to the claim of John A. Frazier.
28th December, 1798. — Hanson, Chancellor. — Ordered, that the Chancellor will, on the first day of March next, decide on the claim of John A. Frazier against the estate of Alexander Frazier; and that depositions, taken before any judge or justice, on two days notice, shall be received as evidence on hearing of the said claim. The objections against the said claim being made by James Pattison’s executor, the parties to the dispute are considered to be Jacob Pattison, the said executor, and the said John A. Frazier.
Without talcing any testimony under this order, the claim was afterwards brought before the court upon the proceedings and proofs in the case.
13th jlugust, 1799. — Hanson, Chancellor. — This is an account drawn up by the claimant’s solicitor, and not sworn to by the claimant, as unquestionably it ought to have been, if it was expected to be passed. His death has now made it impossible to have such an oath, and the solicitor relies on the testimony obtained on a commission between James Pattison and the said claimant, which issued for a purpose very different from that of trying the justice of this claim. The Chancellor heretofore delayed his decision, in order that the persons interested against the claim might have an opportunity of obtaining proofs; but no evidence hath been since obtained *378 on either side, and he is called upon to determine on the papers which had before been filed.
With respect to the first charge in the account, viz: for the annual profits of the claimant’s part of the estate, the Chancellor does not perceive the proof by which the precise amount is ascertained. But supposing it ascertained; it is then to be considered, whether or not the annual profits of the six years, between the death of Alexander Frazier and the sale of the land, during which it was enjoyed by the claimant, may be charged against him.
The act which gives to this court authority to sell, &c., leaves the debts to be satisfied entirely to the discretion of the Chancellor. He has, indeed, established, that all just debts, except those which were a lien on the lands during the life of the deceased, shall be on an equal footing. But this does not prevent him from rejecting a claim, if any circumstance has taken place since the death of the deceased, which renders it unconscientious or unfair to prefer the claim. It is certain, that if John A. Frazier did not come in as a creditor, the other creditors would not be entitled to an account from him of the profits since his brother’s death; but when he prefers a claim against his brother’s estate, nothing appears more reasonable, than that he should give credit for the profits he has received from that estate. In short, it is the opinion of the Chancellor, that the claimant is entitled to an account of profits for only about three years; the difference between the time of Alexander’s holding John’s part, and the time of John’s holding Alexander’s part. It is worthy of remark, that the act for the amendment of the law, 1785, ch. 80, s. 7, obliges heirs to apply the real estate agreeably to the rules prescribed for executors and administrators. In a contest, then, between the creditors in general, as in the present case, and the heir of the deceased claiming as a creditor, how is it possible to say otherwise than that his just claim is no more than the balance remaining, after giving credit for the profits of that real estate ?
The second charge may be right. The third charge is for the deficiency of money expended in the claimant’s education. By the bye, if Alexander was chargeable with his education, he ought to have charged the full amount, and to have given credit for the actual expenditure, instead of charging only deficiency and giving credit besides. This charge is founded on the complainant’s construction of his father’s will.
Now, supposing it be the intent of the will to charge Alexander with his brother’s education and maintenance, the strangest words imaginable are used. It is not, ‘ I give Alexander one-half of my estate on condition, that he lays out the sum of-in the complete education and maintenance of his brother, at some approved school,’ or, ‘ I will, that the part of my estate devised to Alexander be charged with the expense of providing a good education to his brother, and likewise completely maintaining him at some approved school.’ No! it is, ‘ my will and desire is, that my son Alexander do, out of his part of the estate, expend so much money as will be sufficient to give my son John Alexander a good education.’ It is apparent, from the whole will, setting aside this disputed part, that the testator contemplated perfect equality between his two sons; except, that he gave Alexander, the eldest, choice of two equal parts, and makes him executor; which is just what was reasonable, 8tc. Now, by changing the disposition of the words, and putting ‘out of his part of the estate,’ at the end of the clause, it stands perfectly consistent with that intended equality; and it is well observed by the counsel, that transpositions are frequently made for the purpose of supporting a rational construction of the whole. *379 It may be observed, that there are few men, who, in speaking or writing, do not express themselves in such a manner that, if you understand them according to the strict rules of grammar, you make them speak contrary to their intention.
It is alleged, without proof, that Alexander was burthened with the education of his brother on account of his, the said Alexander’s, having already received a good education; and that by so charging him, equality was preserved. But it is not so. . In such a case, the eldest son would be educated at the charge of the whole estate, and the younger at the charge of the elder’s part. For illustration, suppose the whole estate to be £4,000; and that £500 had been expended in educating Alexander more than had been expended on John. To make them equal, it ought to be directed that £500 shall be expended on John, and the residue divided between them. In that case, they will have been educated at equal expense, and the share of each will be £1,750. But, according to the construction contended for, they will have been educated at equal expense, and John will get £500 more than his brother; that is, they each share £2,000 out of the £4,000. John has his part clear; but £500 is taken from Alexander to educate and maintain John. When the contemplation of equality is so apparent; when an easy, obvious transposition will support that equality; and when, without the transposition, such inequality takes place, it is impossible to admit the claimant’s construction of the will. ‘My will and desire is, that my son Alexander, out of his part of the estate, shall expend so much money,’ &.C., as already has been observed, is strange language to constitute a charge on Alexander’s part. ‘My will and desire,’ are words very significant; ‘to expend so much money,’ are equally so. In short, the meaning of the whole clause was, that Alexander, the executor, should be authorized to lay out as much of John’s part of the personal estate as would sutfice to give him a liberal education. Without this provision in the will, John’s education might be defective. The guardian, whom he might choose, or who might be appointed, without the provision, might not think proper to expend so much money as might suffice; particularly, if the annual profits should not correspond with the proofs in the cause, or might happen, in some years, to fall short.
In addition to all this; supposing us compelled to take his for Alexander’s, it may be asked whether good education must comprehend maintenance; or whether, to prevent the great inequality in favour of a younger son, education might not mean barely the price of tuition, books, &c. lodging, food, and clothing, must be had whether at school or at home; and, therefore, it might be said, that he who is charged with education is not, of course, charged with those articles of necessity. In construing a will, it is notorious, that the judges have never considered the question as a mere point of grammar. The question ever is, ‘what was the intent of the testator,’ to be collected from the whole of his words. Amongst grammarians, there is no doubt, that his is considered, in propriety, as referring to the antecedent, if there be one, and not to a subsequent. It may, indeed, in this case, be contended, that the testator was not aware of any antecedent, or any rule of grammar. It is probable, that he was no grammarian. Let it just be supposed, that he had appointed two executors; and had said ‘my will and desire is, that my executors, instead of saying my son Alexander, do, out of his part of my estate, expend, &c. &e. Is there even a rigid grammarian, who would say, that the testator violated the rules of grammar. *380 No t he would say ‘his’ refers the antecedent, if there be one; hut the word his may well be placed so as to refer to a subsequent, as in the case of Mr. Frazier's direct, ing his two executors out of his part of the estate, to educate his son John Alexander. From the proofs in the cause, and from reasonable suppositions, the account may stand as follows:
£. Frazier, deceased, to John A. Frazier, Dr.
To one-half of the gross profits of the estate, from 9th May, 1779, to June 1790, 11 years 1 month, at £129 per ann. . . . £1,429 15s. Od.
To timber from my part, or one-half of the timber sold, . . 50 Os. Od.
£1,479 15s. Od.

Oontra.

By one-half of the gross profits of the estate for 6 years, at the rate aforesaid,..........£774 Os. Od.
By one-half of taxes, medicines, repairs, &c. &c. for 5 years, 1 month; that being the difference between the time of Alexander’s holding the estate, and John’s holding the estate, the repairs, being made chiefly by Alexander, at £24 per ann. . . 122 Os. Od.
By board, clothing, education, pocket money, physic, &c. for 8 years, at £45 per ann......... 360 Os. Od.
By one-half of the gross profits of the estate, from the arrival at age of John to Alexander’s death. It is not to be supposed, that if Alexander held the estate, after his brother’s full age, he had less than one-half. The defect of proof must again be remarked. But say only £75 per ann. for 3 years, after John arrived at age, and was entitled to his estate,....... 225 Os. Od.
£1,481 Os. Od.
By balance in favour of Alexander,.......1 5s. Od.
On the whole, from the fullest investigation of this case ; and on full deliberation, it does not appear to the Chancellor, that John A. Frazier’s legal representatives have any just claim against the estate of Alexander Frazier The Chancellor hath declared himself thus fully; because the grounds of his decision could not be obvious ; and because he wishes, on every occasion, if possible, to reconcile to the losing party his determinations. There are, indeed, circumstances in this case, which required that he should explain himself; in order that one principle, at least, should be known to be established; (3 H. & J. 144, note.)
On the 2d of October, 1799, the auditor reported, that he had stated the claims exhibited against the estate of Alexander Frazier, deceased, amounting, on the 12th day of April, 1796, to £5,274 18s. Od. including the claims of James Pattison, as heretofore stated and returned as account No. 1. And on those claims, he remarks, that Nos. 11, 13 and 15, are not proved; that Nos. 16 and 17 are proved, with an exception to allow any account standing against them on the deceased’s books; that No. 12 is only a copy of a receipt exhibited as money paid to the said Alexander Frazier as attorney; but not proved by the claimant; and that No. 14 is a note of hand, given to Richard Ward, and proved by Zachariah Ward, who does not even state, that he is executor or administrator of Richard; the probate is also deficient.
The purchaser, Charles Williamson, by his petition, stated, that, under a persua *381 sion that John A. Frazier was entitled to half the purchase money, he had accordingly paid him that amount, and obtained his receipt; whereupon, he prayed that he might be allowed a credit for so much upon his bond.
After which, and upon all the foregoing matters, the case was again brought before the Chancellor for further and general directions.
23d May, 1800. — Hanson, Chancellor. — Let the auditor, at the request of the purchaser, state the proportion of each creditor, reserving the amount of claims not established. The Chancellor, on application, at any time after the 10th of July next, Will decide on any claim against the estate of Alexander Frazier, which has not yet been passed; provided a copy of this order be inserted in the Maryland Gazette three times before the 15th of June next. Depositions taken before a single magistrate will be received as evidence of any of the claims aforesaid. The rules prescribed by the Orphans Court, with respect to claims against deceased persons, are adopted in the Chancery Court; claims passed by an Orphans Court are generally passed by the Chancellor, unless the same are disputed.
In obedience to this order, the auditor, on the 4th of November, 1SOO, reported that he had stated the claims exhibited against the estate of Alexander Frazier, deceased, and the dividend on each claim, amounting to ¿£1,405 12s. 3d. the one-half of the purchase money due them on the 12th day of April, 1796; that No. 11 was not proved; No. 12 was a copy of receipts, and not proved, only as being true copies of the receipts; No. 13 was not proved; No. 14 was a note to Richard Ward, proved by Zachariah Ward, who said he had not received any part, but had not said that he was either the executor or administrator; and No. 16 was proved, with an exception to allow any account against it on the deceased’s books. Upon which the case was again submitted to the Chancellor.
2d December, 1800. — Hanson, Chancellor. — The Chancellor has examined the auditor’s last statement of claims, and the dividends by him struck. He is of opinion that the auditor has done right in rejecting claims Nos. 11,12,13,14, and 16. But as there is a probability, that the said claims, or some of them, may be hereafter established, he will not absolutely dismiss them without notice to the claimants to produce further vouchers.
Ordered, therefore, that the Chancellor will, on application of any person concerned, proceed immediately to decide on any of the following claims against the estate of the said Alexander Frazier, viz. William Campbell’s, Robert Ward’s executor, Walter Roe’s, Richard Ward’s, and Robert McCoy’s; provided it shall be proved to his satisfaction, if a copy of this order hath been served on the claimant fifteen days before such application.
Ordered, further, that of the money to arise from the sale of the said Frazier’s real estate, there be paid, agreeably to the auditor’s statement, as follows:
To the trustees, for commissions, . . . . ¿6 90 0s. (Id..
For costs of suit as taxed, . . . . . 20 8 6
To the auditor, for fees, . . . . . 8 15 0
John A. Frazier’s representatives, .... 1,405 12 3
James Pattison’s representative, .... 1,067 19 5$
Richard Frazier, •• . . . . . 17 8 0
*382 George Mann’s representative, ..... ¿634 19s. 3d.
Benjamin Harwood, . . . . , 31 Í8 3
Ditto,.........91 16 64
Ditto, . . . . ... . 387
William Sinclair, . . . . . , 20 3 8
Daniel Ross, . . . . . „ 9 7 3
Wallace & Muir, . . . . . . 5 7 6£
James, . . . . . . . 34 5 8
James Murray, . . . . . . . 2 10
Ordered, further, for the accommodation of all parties concerned, that the receipt in writing of any person, entitled as aforesaid, filed in this court for so much money as is due to the said person, shall be admitted, and considered as so much money brought into court, agreeably to the directions of the decree in this cause ;• provided the said receipt be filed by the trustees, or either of them.
N. B. It is not the Chancellor’s meaning, that the whole of this order be served on those claimants whose claims are doubtful. It will be sufficient to serve onlythe clause relating immediately to them, and the preceding part. The Chancellor has been often embarrassed, and great delay and trouble in the settlement of cades like the present, has resulted from the neglect of claimants to exhibit, in the first instance, proper vouchers; and from his own unwillingness to reject claims which the parties probably have it in their power to establish; and from the obvious impossibility of his distinguishing, in the beginning, between inattention, ignorance, and sheer speculation. The present case has been long delayed on account of such claimants. Should any of the aforesaid doubtful claims be finally rejected, there will be another dividend to be struck. That a final settlement may be had as soon as possible, he recommends the immediate service of the order as aforesaid. — M. S.

 3 Hen. 7, ch. 10; 19 Hen. 7, ch. 20; Kilty Rep. 228, 229; 1809, ch. 153, s. 4; 1811, ch. 161, s. 5; Welford v. Davidson; 4 Burr. 2127; Shepherd v. Mackreth, 2 H. Blac. 284; Frith v. Leroux, 2 T. R. 58; Furlonge v. Rueker, 4 Taunt. 250; Middleton v. Gill, 4 Taunt. 298; Gwyn v. Godby, 4 Taunt. 346; Anonymous, 4 Taunt. 876; Mitchel v. Miniken, 1 Com. Law Rep. 331; - v. Edmunds, 1 Com. Law Rep. 411; Burn v. Carvalho, 28 Com. Law Rep. 232; De Tastet v. Rucker, 4 Exch. Rep. 156; Tidd Pra. 1131; Howard v. Warfield, 4 H. & McH. 38; Contee v. Findley, 1 H. & J. 331; Butcher v. Norwood, 1 H. & J. 485; Gwynn v. Whitaker, 1 H. & J. 754; Pottenger v. Steuart, 3 H. &. J. 360.

 Bodily v. Billamy, 2 Burr. 1094; Bickham v. Cross, 2 Ves. 471; De Tastet v. Rucker, 4 Exch. Rep. 156.

 14 Vin. Abr. 458; Gordon v. Trail, 3 Exch. Rep. 391.

 Brown v. Wallace, 29th February, 1816, post.

 Chambers v. Goldwin, 9 Ves. 271; May, 1781, ch. 17, s. 2 and 3.

 ) Neal v. The Attorney-General, Mosely 247; Bosanquett v. Dashwood, Ca. Tem. Tal. 40 ; Chambers v. Goldwin, 9 Ves. 271; Howard v. Harris, 1 Vern. 194; Sackett v. Bassett, 4 Mad. 64.

 Shepherd v. Mackreth, 2 H. Blac. 284; Bickham v. Cross, 2 Ves. 471; Creuze v. Lowth, 4 Bro. C. C. 318, 158.

 Bickham v. Cross, 2 Ves. 471; Harris v. Harris, 3 Atk. 722; Creuze v. Hunter, 2 Ves. jun. 158; Atkinson a. Hall, ante 371.

 Powel Mortg. 903, 905; 2 Fonb. 438.

 Ossulston v. Yarmouth, 2 Salk. 449; Perkyns v. Baynton, 1 Bro. C. C. 574; Ex parte Bevan, 9 Ves. 224; Chambers v. Goldwin, 9 Ves. 271; Caliot v. Walker, 2 Anstr. 495 ; Eaton v. Bell, 7 Com. Law Rep. 14.

 Butler v. Duncomb, 1 P. Will. 453; Bickham v. Cross, 2 Ves. 471; Perkyns v. Baynton, 1 Bro. C. C. 574; Creuze v. Lowth, 4 Bro. C. C. 158, 318; Turner v. Turner, 1 Jac. & Walk. 47; Parker v. Mackall, ante 68; Woodward v. Chapman, ante 71; Sloss v. McIlvane, ante 73; Craig v. Baker, ante 238.—

 Frazier v. Hyland, 1 H. & J. 98; Gwinn v. Whitaker, 1 H. & J. 754.

 Ex parte Bennet, 2 Atk. 527.

 Jacob v. Suffolk, Mosely 27; Neal v. The Attorney-General, Mosely 247 ; Corrie v. Clarke, 1 Bland, 86, note ; Dorsey v. Hammond, 1 Bland, 468; Tyson v. Hollingworth, ante 333; Pattison v. Frazier, ante 372.

 Sheppard v. Kent, 2 Vern. 485; The case of Sir Charles Cox, 3 P. Will. 344, n.; Shiphard v. Lutwidge, 8 Ves. 29 ; Jennings v. Elster, 7 Cond. Cha. Rep. 115.

 Tooke v. Hartley, 2 Bro. C. C. 126; Shiphard v. Lutwidge, 8 Ves. 29.

 Lowthian v. Hasel, 4 Bro. C. C. 168.

 Loomes v. Stotherd, 1 Cond, Cha. Rep. 235; Nunn v. Barlow, 1 Cond. Cha. Rep. 301.

 1798, ch. 101; sub ch. 8, s. 19.

 1785, ch. 80, s. 7.

 Player v. Foxhall, 1 Russ. 538 ; Winter v. Hicks, 5 Cond. Cha. Rep. 490,

 Will.Exrs. 660.—

 1785. ch. 80, s. 7.

 Tyson v. Hollingsworth, ante 333; Pattison v. Frazier, ante 372—

 2 Fonb. 403; Silk v. Prime, 1 Bro. C. C. 139.

 Loomes v. Stotherd, 1 Cond. Cha. Rep. 236; White v. Peterborough, 4 Cond. Cha. Rep. 185; Dorsey v. Hammond, 1 Bland, 468.

 White v. Casanave, 1 H. & J. 106.

 1825, ch. 50.

 7 Geo. 2, C. 7.

 Powel Mortg.281,010.—

 Martin v. Martin, 1 Ves. 214; Chalmer v. Bradley, 1 Jac. & Wal. 59.

 Hindman v. Clayton, ante 337.

 Francklyn v. Fern, Barnard. Rep. 30; Brooks v. Reynolds, 1 Bro. C. C. 183; Perry v. Phelips, 10 Ves. 39; Greig v. Somerville, 4 Cond. Cha. Rep. 453; Shewn v.
Vanderhorst, 4 Cond. Cha. Rep. 458.
Anderson a>. Anderson. — This bill, filed on the 20th of November, 1788, states that the late Rebecca Anderson, by her will, gave to the plaintiffs certain legacies, and charged the payment of them upon her real estate, which she devised to James Anderson; that the testatrix was indebted by bond to Alexander Christie, and jointly bound with Ann Ogle to pay a composition of 6s. 8d. in the pound to the creditors of the said James Anderson, the devisee; that one of the legatees was dead, to whose legacy the plaintiffs were entitled as next of kin; that another legatee was dead, who, by his will, had given his legacy to one of these plaintiffs, and that a third legatee having married and died without issue, letters of administration had been granted to one of these plaintiffs; that the testatrix Rebecca Anderson left no personal estate, and that the devisee James Anderson had died leaving a daughter, the infant defendant, his sole heir. Whereupon it was prayed that the real estate so devised, might be sold, in the first place, to satisfy the debts of the testatrix Rebecca ; and in the next place, the legacies given by her, and also the debts due by James Anderson, deceased, the devisee.
The infant defendant answered by her guardian ad litem, admitting the allegations of the bill, and alleged that Ann Ogle had paid the composition to the creditors of James Anderson, and having obtained an assignment of their claims against the estate of the testatrix, she, Ann Ogle, claimed contribution.
17tk April, 1789. — Rogers, Chancellar. — Decreed, that the real estate of Rebecca Anderson he sold, &c.; that James Hindman, the trustee, shall, on his receipt of the purchase money, first pay and satisfy to the said Alexander Christie, the said sum of ¿£300 sterling, and interest of five per centum thereon from the date of the said bond, in current money, at sixty-six and two-thirds per cent, exchange. And to the said Ann Ogle one moiety of the said composition of 6s. 8d. in the pound of the debts of the said James Anderson, due and owing in London, and now assigned to the said Ann Ogle, the said moiety amounting to the sum of ¿£2,464 15s. 4l¡d. sterling, with interest thereon of .five per centum from the 8th day of August, in the year of our Lord one thousand seven hundred and seventy-four, in current money, at sixty-six and two-thirds per cent, exchange; and out of the residue of the money arising from such sale, pay the said legacies to the aforesaid persons respectively entitled to receive the same devised by the last will and testament of the said Rebecca Anderson to her daughter, and Harriet Rebecca, and her son William Anderson, with interest on the same of five per cent, respectively, from the first day of February, in the year seventeen hundred and seventy-six, in current money, at sixty-six and two-thirds per cent, exchange; and the surplus of the money arising from such sale, to pay and apply to the satisfaction and discharge of the debts due and owing from the said James Anderson, deceased, which there shall not be personal assets of the said James Anderson, in the hands of the said trustee, as his administrator, to discharge; a commission of four per,cent, allowed to the trustee. The personal estate to be first applied before any of the said proceeds of sale, &c. — Chancery Proceedings, lib. S. H. H. lett. B.fol. 620.

 Jones v. Jones, 1 Bland, 452.

 Sumner v. Kelly, 2 Scho. & Lefr. 398.

 Kenebel v. Scrafton, 13 Ves. 370; Bluett v. Jessop, 4 Cond. Cha. Rep. 112; Winter v. Hicks, 5 Cond, Cha. Rep. 490.

 Abell v. Screech, 10 Ves. 356; Watkins v. Maule, 4 Cond. Cha. Rep. 45; Young v. Everest, 4 Cond. Cha. Rep. 499; Rowland v. Tucker, 4 Cond. Cha. Rep. 591.

 Barrett v. Blake, 2 Ball. & Bea. 354.

 Greenwood v. Taylor, 4 Cond Cha. Rep. 381; 2 Mad. Chan. 657; Millar v. Baker, 1 Bland, 147, note.

 Pue v. Dorsey, 1 Bland, 139, note.

 Howard v. Harris, 1 Vern. 193; Antrobus v. Davidson, 3 Merival, 570; Arthur v. The Attorney General, ante 246.

 Harris v. Ingledew, 3 P. Will. 98.